# EXHIBIT A

*Oct 1*
*Response due Nov. 1    6-138381 RSO*
*6-138424 Return 8*
RECEIVED

OCT 16 2007

RESRE LEGAL

## CHARDON LAW OFFICES

101 TREMONT STREET SUITE #614
BOSTON, MASSACHUSETTS 02108
TELEPHONE: (617) 451-3200
FACSIMILE: (617) 451-3555
WWW.CHARDONLAW.COM

Jonathan D. Plaut
Attorney-at-Law
jdplaut@chardonlaw.com

BY CERTIFIED MAIL

October 1, 2007

Freemont Investment and Loan
5404 Cypress Center Drive, Suite 300
Tampa, FL 33609

Re:    Smith, et al. v. Jenkins, et al.
       Suffolk Superior Court Civil Action No. 07-4301-C

Dear Freemont Investment and Loan:

        This is to inform you that you are being served as a Defendant in the above
entitled action pursuant to M.G.L. Chapter 223A, Section 3.  Please find enclosed the
following documents:

- A Summons and Order of Notice,
- A copy of a summons,
- A Civil Action Cover Sheet,
- An Allowed Motion for Special Process Server,
- A Statement of Damages,
- A Complaint,
- A Motion for Temporary Restraining Order / Preliminary Injunction, and
- A Proposed Order

You may wish to consult with an attorney regarding your rights and obligations in
relation thereto.

Sincerely,

Jonathan D. Plaut

Enclosures

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 07-4301-C

_Robert Smith, et al._ , Plaintiff(s)

v.

_Dwight Jenkins, et al._ , Defendant(s)

## SUMMONS

To the above-named Defendant: _Freemont Investment and Loan_

You are hereby summoned and required to serve upon _Jonathan D. Plaut_

plaintiff's attorney, whose address is _101 Tremont St. Ste 614, Boston, MA 02108_ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the _first_ day of _October_ , in the year of our Lord two thousand _seven_ .

_Michael Joseph Donovan_

Clerk/Magistrate

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1·3rd Rev.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 07-4301C | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

| PLAINTIFF(S) Robert Smith, et Al | DEFENDANT(S) Dwight Jenkins, ET AL. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
Chardon Law Offices 101 Tremont St #614, Boston, MA 02109 Jonathan Plaus, ESQ.
Board of Bar Overseers number: 617-451-7200 : 638344 | ATTORNEY (if known) |
|---|---|

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Tort, Contract | (F) | (✓) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
  2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
  3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
  4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
  5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
                                                                          Subtotal $. . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
F. Other documented items of damages (describe)
                                                                                   $. . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Please see complaint - Real estate fraud scheme          Above $25,001

                                                                   TOTAL $. . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Please see complaint - Real estate fraud scheme          Above $25,000

                                                                   TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____          DATE: 10/1/07

OTC-6 mlc005-11/99
.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUFFOLK SUPERIOR COURT
DOCKET NO. _____

)
ROBERT SMITH and MARIA DASILVA,                          )
)
     Plaintiffs                                          )
)
v.                                                       )
)
DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH,             )
ROBERT E. KELLEY, RKELLEY-LAW, P.C., LOUIS G. BERTUCCI,  )
EB REAL ESTATE GROUP, INC., NEW ENGLAND MERCHANTS        )
CORP, UNION CAPITAL MORTGAGE BUSINESS TRUST,             )
MID CITY MORTGAGE, LLC, FREEMONT INVESTMENT AND          )
LOAN and MERITAGE MORTGAGE CORPORATION,                  )
)
     Defendants                                          )

## PLAINTIFFS' MOTION FOR SPECIAL PROCESS SERVER

NOW COME the plaintiffs in the above-referenced action, and hereby move that QuickServ

be appointed as special process server in this action pursuant to Rule 4C.

Respectfully submitted,

ROBERT SMITH and MARIA DASILVA

By their attorneys:

Jonathan D. Plaut
BBO#: 638344
CHARDON LAW OFFICES
101 Tremont Street Suite 614
Boston, MA 02108
(617) 451-3200

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUFFOLK SUPERIOR COURT
DOCKET NO. _____

)
ROBERT SMITH and MARIA DASILVA,                    )
                                                   )
        Plaintiffs                                 )
                                                   )
                                                   )
v.                                                 )
                                                   )
DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH,       )
ROBERT E. KELLEY, RKELLEY-LAW, P.C., LOUIS G. BERTUCCI, )
EB REAL ESTATE GROUP, INC., DORCHESTER REAL ESTATE, )
INC., NEW ENGLAND MERCHANTS CORP, UNION CAPITAL    )
MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC,   )
FREEMONT INVESTMENT AND LOAN and                   )
MERITAGE MORTGAGE CORPORATION,                     )
                                                   )
        Defendants                                 )

## STATEMENT OF DAMAGES

NOW COME the plaintiffs in the above-referenced action and hereby state that their

damages exceed $25,000.

Respectfully submitted,

ROBERT SMITH and MARIA DASILVA

By their attorneys:

Jonathan D. Plaut
BBO#: 638344
CHARDON LAW OFFICES
101 Tremont Street Suite 614
Boston, MA 02108
(617) 451-3200

Dated: October 1, 2007

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUFFOLK SUPERIOR COURT
DOCKET NO._____

ROBERT SMITH and MARIA DASILVA,      )
                                     )
        Plaintiffs                   )
                                     )
v.                                   )
                                     )
DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH,   )
ROBERT E. KELLEY, RKELLEY-LAW, P.C., LOUIS G. BERTUCCI,   )
EB REAL ESTATE GROUP, INC., DORCHESTER REAL ESTATE,   )
INC., NEW ENGLAND MERCHANTS CORP, UNION CAPITAL   )
MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC,   )
FREEMONT INVESTMENT AND LOAN and   )
MERITAGE MORTGAGE CORPORATION,   )
                                     )
        Defendants                   )

## COMPLAINT

## PARTIES

1.    Plaintiff Robert Smith ("Smith") is a natural person who lives in Boston,

Massachusetts.

2.    Plaintiff Maria Dasilva ("Dasilva") is a natural person who lives in Braintree,

Massachusetts.

3.    Defendant Attorney Robert E. Kelley, Esq. ("Kelley") is an attorney licensed to

practice law in Massachusetts with a business address of Braintree Hill Office Park, 1 Rockdale

Street Suite 200, Braintree, Massachusetts 02184.

4.    Defendant RKELLEY-LAW, P.C. is, upon information and belief, a professional

corporation through which Attorney Robert E. Kelley does business. (Hereinafter, Kelley and

RKELLEY-LAW, P.C. shall be collectively referred to as "Attorney Kelley").

1

5.    Defendant Louis G. Bertucci is an attorney who, at all relevant times hereto, was an employee of Attorney Kelley. Attorney Bertucci has a principal place of business at 1245 Hancock Street, Suite #2, Quincy, Massachusetts.

6.    Defendant EB Real Estate Group, Inc. is a Massachusetts Corporation doing business as RE/MAX Real Estate Specialists at 1532 Dorchester Avenue, Dorchester, Massachusetts ("RE/MAX").

7.    Dorchester Real Estate, Inc. is a Massachusetts corporation doing business as C21 Dorchester Associates at 1544 Dorchester Avenue, Dorchester, MA 02122 ("Century 21").

8.    Defendant Dwight Jenkins ("Jenkins") is a natural person who lives at 50 Stacy Street, Randolph, Massachusetts. Jenkins does business as a variety of non-incorporated entities including "Liquid Markets", "One World One Link", "One World One Link Car Wholesalers", "One World One Link d/b/a Liquid Markets", and "The Great Western Capital Corporation of the Americas". Dwight Jenkins was convicted in federal court several years ago arising out of a bank fraud scheme.

9.    Defendant Dorea Smith ("Smith") is a resident of Stoughton, Massachusetts.

10.    Defendant Cherry Jenkins is a resident of Dorchester, Suffolk County, Massachusetts.

11.    Defendant New England Merchants Corp ("New England Merchants") is a mortgage brokerage firm with a principal place of business at 1173 Massachusetts Avenue, Arlington Heights, Massachusetts.

12.    Union Capital Mortgage Business Trust d/b/a Union Capital Mortgage ("Union") is a mortgage broker licensed in the Commonwealth of Massachusetts with a principal place of business at 45 Braintree Hill Park, Suite 400, Braintree, Massachusetts 02184.

13.    Defendant Mid City Mortgage, LLC is a mortgage broker with a principal place of business at 15 Joanne Road, Stoughton, Massachusetts 02072.

2

14.     Defendant Freemont Investment and Loan is a lending institution with a principal place of business at 5404 Cypress Center Drive, Suite 300, Tampa, Florida.

15.     Defendant Meritage Mortgage Corporation is a lending institution with a principal place of business at 7215 Financial Way, Jacksonville, Florida, 32256.

## FACTS

## ALLEGATIONS REGARDING ROBERT SMITH

16.     Plaintiff Robert Smith was the victim of a real estate scheme as set forth herein. Certain defendants in this case agreed, conspired and schemed with each other to prey upon Mr. Smith – a Marine Corps veteran who has limited reading and comprehension skills – by having him borrow hundreds of thousands of dollars to buy two houses without his knowledge. In the process, those defendants were able to take for themselves approximately $120,000 from Mr. Smith's two purchases in hidden fees, broker's commissions and closing costs.

17.     Robert Smith is a United States Marine Corps veteran who until recently was living at the New England Shelter for Homeless Veterans in Boston, Massachusetts. He suffers from mental illness and learning disabilities, and does not read or write at the level and proficiency of an average, normal adult.

18.     In January, 2005 Mr. Smith was working as a trash collector for Waste Management Corporation. One day in January, 2005 he was collecting trash at Fields Corner in Dorchester when a woman standing on the corner introduced herself to him Laurice Taylor. She said she worked for RE/MAX out of its offices located at 1532 Dorchester Avenue in Dorchester, Massachusetts.

19.     Ms. Taylor told Mr. Smith that RE/MAX was offering a special investment program, and she asked if he were interested. He said he did not have any money to invest. She said that he did not need any money to invest through RE/MAX. He said he did not have any experience in investments or in real estate. She said that RE/MAX was expert in real estate and that he would not have to make any decisions in order to participate.

3

20.    Mr. Smith told her that it sounded good but he had to return to work. She gave him her business card and a RE/MAX advertisement, which stated: "Let us show you HOW TO, and LEARN ABOUT:" Invest, Rent to own, commercial properties, rehabs, repair credit, find home, buy a home, legal insurance, land ownership, construction, home repair "and more!!!". She invited him to call her.

21.    Several days later Mr. Smith called Ms. Taylor and she told him to come down to RE/MAX. He went to the RE/MAX office in Dorchester and met with Ms. Taylor. She again stated that RE/MAX was offering investment opportunities to people who qualified, and that he would not have to put in any money. She said that if he participated he would receive $10,000 for each investment he made with RE/MAX. He said again that he did not know anything about real estate investment. She said that did not matter, and that "RE/MAX would take care of everything" concerning the investments. She said that RE/MAX does a lot of work with veterans such as Mr. Smith.

22.    Ms. Taylor said that in order to see if he qualified he would need to give her copies of his latest W-2 tax document and two recent pay stubs. She gave him a document from New England Merchants Corp that listed the required documents. After the meeting, Mr. Smith obtained copies of his latest W-2 form and several pay stubs and brought them to RE/MAX. Several days later RE/MAX called Mr. Smith back and told him to come in again. When he arrived, RE/MAX said that he qualified to participate in the investment program.

23.    RE/MAX said they would select the investment, that the investment would last one year, and that during that year Mr. Smith did not have to do anything or be actively involved in any way. Mr. Smith would receive his $10,000 upon entering into the investment.

24.    Ms. Taylor was not the only representative from RE/MAX Mr. Smith spoke with. He met with Starr Mosely, who introduced herself as a RE/MAX employee who also finds investors and makes them money. Mr. Smith was also introduced to an Asian man in the RE/MAX office

4

whom Mr. Smith was told was the manager of the office. The man asked Mr. Smith what he did for work, and Mr. Smith said he worked for Waste Management. The RE/MAX manager said, "Oh, we just did an investment with someone else who works for Waste Management". Everyone in the office who worked for RE/MAX encouraged Mr. Smith to get involved.

25.    Mr. Smith stated to the RE/MAX representatives that the investment sounded like a good idea. Soon thereafter, in February, 2005 Ms. Taylor called Mr. Smith and told him he would have to go to Attorney Kelley's law office in Braintree on February 7, 2005 to sign some papers for the investment. Mr. Smith went to the lawyer's office at the scheduled time. Ms. Taylor was there. The lawyer introduced himself to Mr. Smith and said he was the lawyer who was handling the paperwork for the investment.

26.    Another man was introduced to Mr. Smith as Dwight Jenkins. Mr. Smith was told that Dwight Jenkins worked with RE/MAX, that he was experienced in real estate investments, and that he, together with RE/MAX and all of RE/MAX's support team would be managing the investment. The RE/MAX representative and Mr. Jenkins said that they were working together on the investment and that they would take good care of Mr. Smith's interests. A representative from Century 21 was there as well.

27.    The attorney then had Mr. Smith sit at a table and he put a stack of documents in front of him. The attorney told Mr. Smith to sign them. The attorney discouraged Mr. Smith from reading the documents, and the attorney did not read or explain the documents to him. Mr. Smith did not understand what the documents meant or what they were for. Everybody there -- the attorney, Ms. Taylor and Mr. Jenkins and others -- led Mr. Smith to believe that this was a good investment, that he could put his trust in the fact that RE/MAX, an attorney and a man experienced in real estate were all involved in the deal, that they would manage the investments and they would "take care of everything", and that he would get $20,000 if he signed the documents.

5

28.    Mr. Smith put his trust and confidence and trust in RE/MAX, the attorney, Dwight Jenkins and the reputation of the companies involved, and thus signed the documents without understanding what he was signing. The lawyer then shook his hand. Mr. Smith was told he would get his $10,000 in a few days.

29.    Several days later RE/MAX called Mr. Smith and had him come down to the office to pick up the $10,000. When he arrived, prior to giving him $10,000 RE/MAX told him to sign a document which RE/MAX said was necessary so that they could take care of the investment. He signed the paper because he trusted RE/MAX. RE/MAX then gave him the $10,000 check.

30.    Several days later, Mr. Smith was invited to go back to Attorney Kelley's office again on February 28, 2005 to make another "investment" for another $20,000. At this second meeting, a woman who introduced herself to Mr. Smith as Ivana Foley and stated that she was a representative from Century 21, and that she would be working with Dwight Jenkins and RE/MAX in managing the investment. At this second meeting, the attorney told Mr. Smith said because this was his second time it would go even quicker. The same process occurred: the attorney put a number of documents in front of Mr. Smith and told him to sign them. The attorney did not read the documents to Mr. Smith, he did not explain them to him, and he discouraged Mr. Smith from reading them. This time it took less than 30 minutes.

31.    Unbeknownst to Mr. Smith, the documents Ms. Smith signed at Attorney Kelley's office were real estate closing documents, promissory notes, mortgage agreements and loan applications. The first time Mr. Smith went to Attorney Kelley's office on or about February 7, 2005 the documents Mr. Smith signed were the closing documents for Mr. Smith's purchase of 2715 Winfield Lane, Dighton, Massachusetts 02715 (the "Dighton Property"). At the closing on the Dighton property, Mr. Smith -- without his knowledge -- borrowed $411,964.24 by means of two mortgages from Fremont Investment and Loan. Thousands of dollars of fees were taken by the

6

defendants, including $42,000 of which was borrowed to pay a so-called "contract release" fee to Mr. Jenkins.

32.     The mortgage broker for the closing on the Dighton Property was New England Merchant Corp. New England Merchants Corp falsely stated that the application was taken by "face-to-face interview". That was false because Mr. Smith was never interviewed for a mortgage face to face or even over the telephone. New England Merchants Corp falsely listed his base monthly income as $7,500, or $90,000 per year. Mr. Smith was a garbage collector, he did not earn $90,000 per year, and he never stated that he earned that amount. New England Merchants Corp also stated that Mr. Smith completed 14 years of school, rented his last home for 5 years, and spent 4 years and 6 months at his current place of employment, and that his net worth was $397,037. These were all false.

33.     New England Merchant Corporation acted for its own benefit and on behalf of the ultimate lender in this transaction, Freemont Investment and Loan. All of the wrongful acts and practices of New England Merchant Corporation as set forth herein are imputable to Freemont Investment and Loan under a principal-agent relationship. Freemont Investment and Loan is vicariously liable for those wrongful acts and omissions of New England Merchant Corporation under agency principles.

34.     The second time Mr. Smith went to Attorney Kelley's office (on or about February 28, 2005), the documents Mr. Smith signed were the closing documents for Mr. Smith's purchase of 27 West Cottage Street, Boston, Massachusetts 02125 (the "Boston Property"). At the closing on the Boston property, Mr. Smith -- without his knowledge -- borrowed $437,198.13 by means of two mortgages from Meritage Mortgage Corporation. Thousands of dollars of fees were taken by the defendants, including $41,500 of which was used to pay another so-called "contract release" fee to Mr. Jenkins, and $18,950 was used to pay a commission to Century 21.

35.    Mr. Smith never received a copy of the documents which related to the closing on the Boston property.   Nonetheless, upon information and belief Union Capital Mortgage completed the Uniform Residential Loan Application for Mr. Smith's purchase of the Boston Property.  On that application, Mr. Smith is reported to have completed 16 years of school, rented his last home for 2 years, and spent 20 years with his employer. These are all false.  The Dighton Property loans are not listed among his assets and liabilities.  Further, on that application it is again falsely stated that the application was taken by "face-to-face interview". Finally, Mr. Smith's monthly income (including salary and rental income) is listed as $8,516, or $102,912, which is completely false and fabricated. Meritage Mortgage Corporation is liable for the wrongful conduct of the mortgage broker under agency principles.

36.    Nobody explained to Mr. Smith the nature or consequences of any of the documents he signed. None of the persons at Attorney Kelley's office informed Mr. Smith that he was buying houses in his own name, that he was borrowing money which he would be personally obligated to pay back, or that he was borrowing money which was being used to pay Dwight Jenkins, Attorney Kelley, RE/MAX, Century 21 and the mortgage brokers.

37.    At all times relevant to this matter Louis G. Bertucci was, upon information and belief, an attorney working at the law offices of RKELLEY-LAW, P.C. under the supervision, direction and control of Attorney Robert Kelley.  Upon information and belief it was within the scope of Mr. Bertucci's duties at RKELLEY-LAW, P.C. to handle real estate closings, and RKELLEY-LAW, P.C. earned legal fees arising out of the facts set forth herein.  Upon information and belief, Attorney Bertucci was the attorney who, at the direction and instruction of Attorney Kelley, presided over the two closings referenced above.  Accordingly, all actions of Attorney Bertucci as set forth herein are imputed to Attorney Kelly and RKELLEY-LAW, P.C.

38.    A few months after the closings, Mr. Smith started to receive phone calls from banks he had borrowed from regarding unpaid mortgage bills, and calls from tenants complaining of

utility bills not getting paid. He called RE/MAX, Jenkins and Taylor and they said they would take care of it. However, the problems continued. The banks continued to call but the payments were not being made. Eventually, both of the properties were foreclosed upon.

39.    As a result of the forgoing, the two houses Mr. Smith purchased have been foreclosed upon, he is liable for enormous liabilities to the banks, and his credit has been substantially harmed. Any rents collected by the defendants from the tenants at the properties were never paid to Mr. Smith or used to pay down the mortgages, and he has not received the amounts for which he contracted. In addition, Mr. Smith has had depression, stomach problems and high blood pressure among other ailments as a result of the facts set forth above.

## ALLEGATIONS REGARDING MARIA DASILVA

40.    Plaintiff Maria Dasilva was also the victim of a similar real estate scheme. Ms. Dasilva was approached by Dwight Jenkins who asked her if she was interested in making some money with him in real estate investments. Mr. Jenkins stated that if she partnered with him in real estate ventures they could make money and it would also build up her credit. Mr. Jenkins stated that she would receive $20,000 for each property she bought, $10,000 when she purchased it and $10,000 when it was sold. Mr. Jenkins stated that he would select the best properties for her to buy and that he would arrange for financing. After purchase, Jenkins would collect rents from the tenants in the properties, he would pay the mortgages, he would do all necessary repairs, maintenance and upkeep on the properties, he would find buyers for the properties, and he would handle all of the paperwork, financing and documentation necessary for the transactions.

41.    Mr. Jenkins informed Ms. Dasilva that he was an experienced professional in real estate financing, investment and property management, and that she should trust him because he would "take care of everything". Mr. Jenkins also informed Ms. Dasilva that she could trust him because everything he did was run by a lawyer, and that both Jenkins and the lawyer would be

9

present at the closing to ensure that all documents would be prepared and executed in the proper way.

42.    Jenkins informed Ms. Dasilva that he had found a good piece of property for her to purchase known as and located at 10-12 Palm Place, Brockton, Massachusetts (the "Brockton Property"). On or about December 30, 2004 Ms. Dasilva went to Attorney Kelley's office to sign documents regarding her purchase. The attorney had Ms. Dasilva sit at a table and he put a stack of documents in front of her. Neither the attorney nor Dwight Jenkins explained the documents to her or encouraged her to read them. They told her to sign the documents. Ms. Dasilva did not understand what the documents meant. Ms. Dasilva trusted the attorney and Mr. Jenkins and thus signed the documents.

43.    Ms. Dasilva did not understand that at the closing, she was borrowing money to pay $15,954.30 to Mr. Jenkins. Ms. Dasilva also did not know that she had qualified for 100% financing on the strength of a false mortgage application. The mortgage application stated Ms. Dasilva's income to be $9,529 per month, which is $114,348 per year. This was grossly exaggerated.

44.    Approximately one week later, Jenkins informed Ms. Dasilva that he had found another piece of property which would be good for her to purchase known as and located at 316 Raynor Avenue, Whitman, Massachusetts (the "Whitman Property"). On or about January 7, 2005 Ms. Dasilva went to another lawyer's office at Mr. Jenkins' instruction to sign documents regarding her purchase. Ms. Dasilva was instructed by Jenkins and the lawyer to sign the closing papers. Neither the attorney nor Dwight Jenkins explained the documents to her or encouraged her to read them, and she did not understand what the documents meant. Ms. Dasilva was asked to trust the attorney and Mr. Jenkins, and she did.

45.    Ms. Dasilva did not understand that at the closing, she was borrowing money to pay $24,500 to Mr. Jenkins through a business he owns called One World One Link. Ms. Dasilva also

did not know that she had qualified for 100% financing on the strength of a false mortgage application. The mortgage application stated Ms. Dasilva's income to be $7,900 per month, which is $94,800 per year. This was grossly exaggerated.

46.     After the closings on these properties, however, Mr. Jenkins failed to collect and/or use rent money to pay the mortgages, and he failed to upkeep or manage the properties. None of the tenants had hot water in the Brockton property. The tenants in the third floor said that they were Dwight's friends and that Jenkins said they did not have to pay rent. A few months after the closings, Ms. Dasilva started to receive phone calls from banks she had borrowed from regarding unpaid mortgage bills. Eventually, both of the properties were foreclosed upon. Ms. Dasilva is still obligated to pay back the banks all the amounts she borrowed, and her credit has been substantially harmed. She also never received the amounts Jenkins contracted to pay her. In addition, she has suffered emotional distress as a result of the forgoing.

47.     Jenkins has admitted (in the Macharia suit, *supra*) that his wife, Defendant Dorea Smith, and his sister, Cherry Jenkins, knowingly allowed him to use checking accounts in their names for his benefit and in furtherance of his real estate "investments". Jenkins still retains constructive control over all such money held in the names of his sister and his wife. Jenkins has admitted that his sister, Cherry Jenkins, is the signatory on the One World One Link bank account which was one of his business entities through which he conducted his real estate business, into which he deposited money and from which he received money. Jenkins has further admitted (in the Macharia suit, supra) that Dorea Smith was the signatory on a bank account from which he tendered checks and made deposits. Jenkins signed Ms. Smith's name on checks that were issued to certain of the "investors" in his schemes, and Smith allowed a bank account in her name (Bank of America Account No. 011000138 004604166809) to be used in conjunction with their deals. Further, on at least one occasion Jenkins signed Dorea Smith's name on closing and/or real estate conveyancing documentation in furtherance of his schemes.

11

48.    Accordingly, Dorea Smith and Cherry Jenkins are co-conspirators in Jenkins' real estate fraud schemes and are vicariously liable for the conduct of Dwight Jenkins, they knowingly have aided and abetted him in furthering his schemes, and they are jointly and severally liable for all of his actions as set forth herein.

## OTHER VICTIMS

49.    Several of the Defendants herein are either defendants, witnesses or otherwise involved in other lawsuits alleging similar schemes to exploit and defraud lower income people, mainly from the Dorchester and Roxbury neighborhoods of Boston, who were inexperienced in real estate and mortgage lending practices and who had good credit.

### The Attorney General Suit

50.    The Attorney General of Massachusetts has filed suit against New England Merchants Corp and others regarding a variety of illegal money lending practices and has obtained Temporary Restraining Orders against them regarding same. See Commonwealth of Massachusetts v. Zeus Funding, et al., Suffolk Superior Court Civil Action No. 06-3657-B. The Attorney General sought and received a Temporary Restraining Order from the Massachusetts Superior Court against New England Merchants Corp and others arising out of the conduct set forth in said lawsuit.

### The Montrond v. RE/MAX et al. Suit

51.    Four individuals have sued RE/MAX, Dwight Jenkins and others in a case entitled Montrond, et al. v. Jenkins, et al., Suffolk Superior Court Civil Action No. 06-2460 (the "Montrond suit"), through the office of the undersigned, which is still pending. In that case suit, the plaintiffs sought an obtained an injunction against Dwight Jenkins restraining $592,465 arising out of the defendants' conduct alleged in that suit, which was subsequently increased to $642,845.21.

### The Macharia v. Jenkins et al. Suit

52.    In another similar case filed against Jenkins and others by undersigned counsel on behalf of two other plaintiffs, entitled Macharia et al. v. Jenkins, et al., Suffolk Superior Court Civil

Action No. 06-2460 (the "Macharia suit"), the Court (Lu, J.), after two hearings at which the defendants were represented by counsel and had an opportunity to be heard, enjoined Dwight Jenkins and several of his co-defendants in that suit from dissipating assets in the amount of $455,000. In that case, Attorney Kelley served as settlement agent for plaintiff Meredith Macharia's three property purchases in which Dwight Jenkins received hundreds of thousands of dollars for unspecified services. On plaintiff Macharia's purchase of 125 Bridge Street, Newton, Massachusetts alone on or about July 20, 2005, Dwight Jenkins received $148,338.38.

## COUNTS

## COUNT I

## FRAUD

## (AGAINST ALL DEFENDANTS)

53.    All allegations set forth above are restated and realleged as if set forth in full herein.

54.    As set forth above, each defendant defrauded either Mr. Smith, Ms. Dasilva, or both. The plaintiffs have been substantially harmed thereby. In compliance with the requirements of Mass. R. Civ. P. 9(b), plaintiffs incorporate by reference herein all allegations above.

55.    Each defendant, either directly or indirectly: (i) made material misrepresentations to one or both of the plaintiffs (as set forth in detail above) in order to encourage said plaintiffs into using their services in conjunction with the purchase and/or financing of real estate; (ii) steered the plaintiffs toward homes they could not qualify for or afford; (iii) pressured the plaintiffs to sign mortgage loan documents which contained false and misleading information in order to "qualify" them for substantial loans they could not afford; and (iv) pressured plaintiffs to close on these transactions and mortgage contracts by making material misstatements of fact and false promises, and by discouraging them from seeking counsel and legal advice.

56.    The defendants each made representations, directly or indirectly, which they knew were false and misleading, and they made such statements with the knowledge of their falsity and

13

with the intention that the plaintiffs would rely thereupon. Plaintiffs did, in fact, rely upon such false representations and have been harmed as a result.

57.    Each defendant received payments in the schemes. Upon information and belief, each defendant received compensation and/or other benefits based on the quantity of loans, the interest rate of the loans and/or the dollar value of the loans they closed, and the sale of the properties in question.

58.    In addition to the above, the fraud regarding Dwight Jenkins, Cherry Jenkins, Dorea Smith, Robert E. Kelley, RKELLEY-Law, P.C., Louis G. Bertucci, EB Real Estate Group, Inc., Dorchester Real Estate, Inc., New England Merchants Corp, and Union Capital Mortgage Business Trust is as follows: Said defendants, all acting individually, in concert and together, directly or indirectly leveraged the good reputations of RE/MAX, Century 21, licensed mortgage brokers and a licensed Massachusetts attorney to deceive Mr. Smith into purchasing two properties without his knowledge. They did this in order to garner and split over $83,500 in bogus "contract release fees" and other transactional costs at the closings of these properties. Said defendants knew that Mr. Smith was a street-level garbage collector with no experience in buying real estate. Nonetheless, they falsified Mr. Smith's income information without his knowledge in order to bind and commit him to huge mortgage loans he could not afford to repay and that he did not even know he was receiving. The information contained in the Uniform Residential Loan Applications for Mr. Smith's purchases of the two properties was knowingly false. The Defendants induced Mr. Smith to borrow money on the basis of knowing misrepresentations of his income and assets on Uniform Residential Loan Applications.

59.    The Defendants deceived Mr. Smith into purchasing the two properties without his knowledge by couching such purchases as "hands-off" investments that RE/MAX, Mr. Jenkins and Century 21 (regarding the Dorchester property) would take care of completely and for which Mr. Smith did not need any experience. The Defendants did not tell Mr. Smith that he was borrowing

14

large amounts of money that he would be obligated to repay, or any of the important terms, concepts and obligations involved therewith. The Defendants, moreover, knew that Mr. Smith could not learn these facts on his own, as Mr. Smith cannot read well.

60.    Said defendants failed to explain any of the terms of the deals to Mr. Smith and they hid the true nature of the deals. The defendants falsely induced Mr. Smith to believe that they were looking out for his best interests, when in fact the opposite was true. The Defendants encouraged Mr. Smith to put his trust in them and assured him that they would act in his best interest, when in fact they Defendants had no intention at any point of acting in his best interests.

61.    The closing attorney informed Mr. Smith that the documents he had prepared for Mr. Smith's signature were standard legal documents and that Mr. Smith did not need to read them himself. The defendants failed to provide accurate truth in lending disclosures to Mr. Smith on a timely basis in any meaningful way as mandated by both state and federal law, they failed to give Mr. Smith a genuine opportunity to review the documentation that the lenders required prior to the signing of the same, also in violation of state and federal law, and they violated the consumer credit disclosures mandated by G.L. c. 140D. The Defendants' actions are also clearly violative of G.L. c 93A.

62.    The defendants pressured the plaintiffs to sign closing documents at the attorneys' offices without any genuine understanding as to the true nature of the transactions. They omitted crucial information about the terms of the documents they were signing, they did not advise plaintiffs to seek their own legal advice, and they made false promises regarding what they would do for the plaintiffs after the documents were signed.

63.    Once the properties were bought, none of the promises were fulfilled. The properties were managed very poorly or were not managed at all. Rents were either not collected or were not used to pay down the mortgages. Because the mortgages were not being paid, the lenders commenced foreclosure proceedings.

64.   In addition to the above, the fraud regarding Freemont Investment And Loan and Meritage Mortgage Corporation is as follows: Regarding the Dighton property, New England Merchant Corp acted for its own benefit and on behalf of the ultimate lender in this transaction, Freemont Investment and Loan. All of the wrongful acts and practices of New England Merchant Corp as set forth herein are imputable to Freemont Investment and Loan under a principal-agent relationship. Freemont Investment and Loan is vicariously liable for those wrongful acts and omissions of New England Merchant Corp under agency principles.

65.   Similarly, regarding the Boston property, Union Capital Mortgage acted for its own benefit and on behalf of the ultimate lender, Meritage Mortgage Corporation. All of the wrongful acts and practices of Union Capital Mortgage are imputable to Meritage Mortgage Corporation under a principal-agent relationship. Meritage Mortgage Corporation is vicariously liable for those wrongful acts and omissions of Union Capital Mortgage under agency principles.

66.   Said banks by and through their agents knew that Smith did not understand the nature of the transactions he was engaging in, but they lent him money anyway. The banks are vicariously liable for the falsification of the loan applications. They are liable under a theory of fraud for their complete failure to inform the borrower of the nature of the transactions he was entering into. The banks violated the state and federal truth and lending laws because Smith did not understand the nature or meaning of the documents he signed and the transaction he entered into.

67.   Said defendants dissuaded the plaintiffs from taking seriously the disclosures required to be made pursuant to: (a) the Federal Truth in Lending Act, 15 U.S.C. § 1601, et. seq.; (b) the Massachusetts counterpart, known as the Consumer Credit Cost Disclosure Act, G.L. c. 140D (which require, among other things, that a lender accurately and timely disclose the costs of a mortgage loan to a borrower); (c) the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et. seq.; and (d) the Massachusetts counterpart, G.L. c. 184, §17D (requiring that a lender provide advanced disclosures about the costs of a mortgage loan). Under these circumstances, if in

16

fact these advance disclosures had been adequately provided, the plaintiffs would not have proceeded with these "investments" as they would have understood that to do so would not be in their best interests.

68.    The same grounds and analyses apply to the Defendants which are referenced in the allegations concerning Maria Dasilva above. Such Defendants, all acting individually, in concert and together, deceived Ms. Dasilva into borrowing money to unknowingly pay the defendants fees and costs at the closing of the properties.

69.    Mid City Mortgage, LLC engaged in the same fraud to Maria Dasilva in the same manner as the mortgage brokers in the Smith allegations, set forth in detail *supra*.

70.    Plaintiffs have been harmed thereby.

**COUNT II**

**NEGLIGENCE**

**(AGAINST ALL DEFENDANTS)**

71.    All allegations set forth above are restated and realleged as if set forth in full herein.

72.    Each defendant failed to comply with the standard of care with respect to the plaintiffs, in their respective transactions. The lenders failed to underwrite their loans to Mr. Smith consistent with good and sound lending practices, they failed to adhere to the standard of care to a borrower in the circumstances of the Smith transactions. The defendants failed to engage in any proper procedures with respect to both lending practices and to closing and settlement procedures. The mortgage lenders are also liable for the wrongful conduct of the mortgage brokers under agency principles. The mortgage lenders were also negligent to Mr. Smith by failing to adequately oversee and monitor the actions of the respective mortgage brokers. They were negligent in their failure to ensure that Smith, as a borrower, understood the nature of the transactions he was entering into and agreed to the terms.

17

73.    Regarding Mr. Smith, Jenkins, RE/MAX and Century 21 (regarding the Boston property only) had the duties and obligations to manage and maintain the investments, to collect rents, deal with tenants, pay all of the operating bills and mortgages and all other expenses, and to sell them. They owed Smith a duty to fulfill these obligations in a good, professional and businesslike manner but failed to do so. Jenkins individually had such obligations to Ms. Dasilva.

74.    Further, Attorney Kelley, directly and through Attorney Bertucci or other employees or agents, engaged in malpractice against the plaintiffs by engaging in substandard and inadequate closing practices to borrowers by giving legal advice which was wrong and/or incomplete, to wit: Attorney Kelley, directly and through Attorney Bertucci, advised both Mr. Smith and Ms. Dasilva (regarding Ms. Dasilva's Brockton property) to sign legal documents without explaining such documents to them; Attorney Kelley actively concealed the true meaning and nature of those documents from the plaintiffs; Attorney Kelley failed to disclose his own self-interest and the interests of his co-defendants in plaintiffs' signing of such legal documents; Attorney Kelley failed to actively dissuade plaintiffs from signing legal documents without understanding them first; and Mr. Kelley drafted -- and failed to actively dissuade plaintiffs from signing -- legal documents which were obviously not in their best interests. If Robert Kelley, Esq. was not, in person, at the closing of the properties, the negligence of the lawyer at the closings was an employee of Attorney Kelley and such negligence and malpractice is imputed to Attorney Kelley and his law office.

75.    Plaintiffs have been harmed as a proximate cause of such negligence.

### COUNT III

### VIOLATION OF G.L. c. 93A

### (AGAINST ALL DEFENDANTS)

76.    All allegations set forth above are restated and realleged as if set forth in full herein.

77.    All of the defendants are engaged in trade or commerce. Each defendant has engaged in knowing and willful unfair and deceptive business acts and practices in violation of the

18

Massachusetts Consumer Protection Act, G.L. c. 93A.  Plaintiffs seek three times their damages suffered, including attorney's fees, costs and interest.

## COUNT IV

### BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (AGAINST DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH, EB REAL ESTATE GROUP, INC., DORCHESTER REAL ESTATE GROUP, INC., MERITAGE MORTGAGE CORPORATION AND FREEMONT INVESTMENT AND LOAN)

78.    All allegations set forth above are restated and realleged as if set forth in full herein.

79.    Jenkins, RE/MAX and Century 21 breached their contracts with Mr. Smith by failing to pay him the amounts they promised to pay, and by failing to collect the rents, pay the mortgages, manage the properties and sell the properties.  Regarding Ms. Dasilva, Jenkins breached his contract with her in the same manner.  Cherry Jenkins and Dorea Smith are liable for the breaches of contract by Dwight Jenkins because they knowingly participated in and were co-conspirators with Dwight Jenkins in his contracts with the plaintiffs.  Plaintiffs have been harmed thereby.

80.    Regarding Meritage Mortgage Corporation and Freemont Investment and Loan, said lenders breached their statutory obligations in their loan contracts and related lending documents with Smith and breached the covenants of good faith and fair dealing imputed in said loan contracts.

## COUNT V

## CONVERSION

### (AGAINST DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH)

81.    All allegations set forth above are restated and realleged as if set forth in full herein.

82.    Dwight Jenkins, Cherry Jenkins and Dorea Smith benefited from the fraudulent schemes as set forth above, and each received payment from funds the plaintiffs were fraudulently induced to borrow.  Both plaintiffs have been harmed thereby.

## COUNT VI

## UNJUST ENRICHMENT

### (AGAINST DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH, ROBERT E. KELLEY, RKELLEY-LAW, P.C., LOUIS G. BERTUCCI, EB REAL ESTATE GROUP, INC., DORCHESTER REAL ESTATE, INC., NEW ENGLAND MERCHANTS CORP, UNION CAPITAL MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC)

83.   All allegations set forth above are restated and realleged as if set forth in full herein.

84.   Each defendant referenced immediately above has been unjustly enriched by the funds which the plaintiffs were fraudulently induced to borrow and remit to each such defendant. Jenkins and RE/MAX were further unjustly enriched by any rents they collected but for which they failed to remit to the plaintiffs or use to pay down the mortgages.  Both plaintiffs have been harmed thereby.

## COUNT VII

## BREACH OF FIDUCIARY DUTY

### (AGAINST DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH, ROBERT E. KELLEY, RKELLEY-LAW, P.C., LOUIS G. BERTUCCI, EB REAL ESTATE GROUP, INC.)

85.   All allegations set forth above are restated and realleged as if set forth in full herein.

86.   The defendants referenced immediately above breached their fiduciary duties to the plaintiffs by seeking and gaining their trust and confidence but then failing to act in the plaintiffs' best interests, failing to advise them of the fraudulent nature or any of the details of the transactions, failing to advise them that it was not in their best interests to enter into the transactions, and failing to advise them of their own interests in the transactions.  Mr. Jenkins and RE/MAX failed to collect rents and/or failed to apply those rents to plaintiffs' mortgages, they failed to adequately manage the properties, they failed to pay the mortgages and allowed the properties to slip into disrepair, and they acted wholly in their own self interests and with complete disregard for the best interests of the plaintiffs.

20

87.    Further, Attorney Robert E. Kelley and RKELLEY-LAW, P.C., directly and through Attorney Bertucci, breached their fiduciary duties to the plaintiffs by engaging in malpractice against them as set forth in detail in Count II above.

88.    Further, the mortgage brokers violated their fiduciary duties to the plaintiffs by violating 209 CMR §§32.00 et seq. and by submitting knowingly false mortgage applications on their behalves and therefore exposing them to very large mortgages which they could not repay. For further detail, see Count I, *supra*. None of this was in the plaintiffs' best interests. Plaintiffs have been harmed thereby.

**COUNT VIII**

**CIVIL CONSPIRACY**

**(AGAINST DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH, EB REAL ESTATE GROUP, INC., NEW ENGLAND MERCHANTS CORP, UNION CAPITAL MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC)**

89.    All allegations set forth above are restated and realleged as if set forth in full herein.

90.    The defendants referenced immediately above each knowingly schemed together so as to form a conspiracy for the unlawful purpose of defrauding the plaintiffs in the manner set forth above. Said defendants conspired to accomplish an unlawful purpose, and all acted in concert to achieve such purpose. The liability in tort of each defendant is imputed to each other defendant because they each provided substantial assistance to the other with the knowledge that such assistance was contributing to a common tortious plan. See Restatement (Second) of Torts § 876 (1979); Kurker v. Hill, 689 N.E.2d 833, 44 Mass.App.Ct. 184 (Mass. App. Ct., 1998). Under the Restatement (Second) of Torts § 876(b) (1977), a person may be liable in tort if he "knows that the ... conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"; see Nelson v. Nason, 343 Mass. 220, 222, 177 N.E.2d 887 (1961) (recovery allowed under concerted action theory of § 876(b)). For further

21

evidence of a conspiracy, see the allegations in the following Count. Plaintiffs have been harmed thereby.

## COUNT IX

### VIOLATION OF 18 U.S.C. §§ 1961 ET. SEQ., THE RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT ("RICO") (AGAINST DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH AND EB REAL ESTATE GROUP, INC., NEW ENGLAND MERCHANTS CORP, UNION CAPITAL MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC)

91.    All allegations set forth above are restated and realleged as if set forth in full herein.

92.    The Defendants referenced immediately above routinely, systematically and as part of their usual business operations induced persons similarly situated to the plaintiffs with good credit to enter into real estate transactions similar to the transactions described above, and to unjustly take large fees at the closings. Other instances exist where said defendants have similarly preyed upon other unsuspecting victims. Said defendants have engaged in an open-ended violation of the RICO Statute, and there is a high probability that this pattern will continue to repeat itself.

93.    By using the U.S. mails and telephone wires in engaging in such pattern of fraud and deceit, said defendants have routinely, pervasively and systematically engaged in mail and wire fraud for the purpose of defrauding the plaintiffs and others similarly situated out of money at closing and rent money in violation of 18 U.S.C. §1341 and 1343. This activity constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. §1961.

94.    This pattern of conduct, together with the use of interstate mails, the telephone lines, and delivery by private carrier over interstate lines in a pattern of conduct violative of RICO, constitutes a pattern of knowing and willful fraud in violation of the RICO Act, under which the plaintiffs have a private right of action. Plaintiffs are entitled to the damages, including punitive damages, and attorney's fees, as are afforded under the statute.

## COUNT X

## VIOLATION OF THE MORTGAGE BROKER REGULATIONS:

## 209 CMR §§32.00 et. seq.; 15 U.S.C. §1602 et seq. and 12 C.F.R. §§226.00 et seq.

## (AGAINST UNION CAPITAL MORTGAGE BUSINESS TRUST, NEW ENGLAND MERCHANTS AND MID CITY MORTGAGE ONLY)

95.    All allegations set forth above are restated and realleged as if set forth in full herein.

96.    The Commonwealth of Massachusetts has promulgated certain regulations, codified at 209 CMR §§32.00 et seq., that govern the conduct and licensing requirements of mortgage brokers. Those regulations require that anyone who is engaged in the placement of mortgage loans to be truthful, honest and to abide by the regulations which govern the conduct of mortgage brokers. The regulations provide, *inter alia*, that a broker must fully and fairly disclose the terms of any transaction to the borrower or consumer.  The regulations further provide that it is a violation of the licensing requirements, specifically, 209 CMR §§42.07, to engage in any conduct which is violative of G.L. c. 93A and 140D and any federal law that is similar, such as 15 U.S.C. §1602 et seq., and any regulations promulgated thereunder, such as 12 C.F.R. §§226.00 et seq.

97.    The conduct of the above-named defendants violated those regulations.  As a result, the plaintiffs have been harmed.

## COUNT XI

## VIOLATION OF 15 U.S.C. §§1602 et. seq., THE TRUTH-IN-LENDING DISCLOSURES

## (AGAINST FREEMONT INVESTMENT AND LOAN AND MERITAGE MORTGAGE CORPORATION)

98.    All allegations set forth above are restated and realleged as if set forth in full herein.

99.    Freemont Investment and Loan and Meritage Mortgage Corporation have violated the Federal Truth in Lending Disclosure Act, 15 U.S.C.§§ 1602 et. seq. That act imposes a mandatory scheme of disclosure on lenders as to all material terms of credit prior to a loan closing transaction, so that the consumer may make an informed decision about the cost of credit. Freemont Investment and Loan and Meritage Mortgage Corporation failed to comply with the provisions of

23

said act regarding Mr. Smith's purchases. Mr. Smith had no meaningful idea of the nature of the documents that he was signing, or even that he was engaging in number of credit relationships and borrowing money to purchase homes.

## COUNT XII

## VIOLATION OF REGULATION Z, 12 C.F.R. §§ 226.1 et. seq., TRUTH-IN-LENDING DISCLOSURES
## (AGAINST FREEMONT INVESTMENT AND LOAN AND MERITAGE MORTGAGE CORPORATION)

100.    All allegations set forth above are restated and realleged as if set forth in full herein.

101.    In addition to the statute regulating the Truth-In-Lending disclosures, there exists a scheme of federal regulations, codified at 12 C.F.R. §§ 226.1 et seq., which further regulates the duties and obligations of certain lending. Freemont Investment and Loan and Meritage Mortgage Corporation failed to comply with those regulations regarding Mr. Smith. Mr. Smith has been harmed thereby.

## COUNT XIII

## VIOLATION OF G.L. c. 140D §1 et. seq., and 209 CMR (AGAINST FREEMONT INVESTMENT AND LOAN AND MERITAGE MORTGAGE CORPORATION)

102.    All allegations set forth above are restated and realleged as if set forth in full herein.

103.    In addition to the federal law, there exists Massachusetts law which governs lending and disclosure requirements codified at G.L. c. 140D, and the regulations promulgated thereunder set forth at 209 CMR. These statutes and regulations are for the benefit of the consumer and obligate the lender to make a disclosure of all of the material terms of the cost of credit prior to the closing of the transaction so as to afford the consumer/borrower the opportunity to make an informed decision concerning the terms of such credit. Freemont Investment and Loan and Meritage Mortgage Corporation failed to comply with said law. Mr. Smith has been harmed thereby.

24

## COUNT XIV

## DECLARATORY JUDGMENT

104.    All allegations set forth above are restated and realleged as if set forth in full herein.

105.    Plaintiffs seek a determination by this Court of the rights and obligations of all parties named herein. Plaintiffs further seek a declaratory judgment pursuant to G.L. c. 231A, §§ 1 *et seq.* that all of the terms of the transactions complained of herein are in violation of the statutes and regulations of the Commonwealth of Massachusetts and the regulations cited herein, that the loan transactions are declared to be void and/or unenforceable, and that the defendants and their agents, successors and assigns are prohibited from further collection actions on the loans described above.

## COUNT XV

## INJUNCTIVE RELIEF

106.    All allegations set forth above are restated and realleged as if set forth in full herein. appropriate injunctive relief

107.    Plaintiffs seek injunctive relief enjoining Dwight Jenkins, Cherry Jenkins, Dorea Smith, Robert E. Kelley, Louis G. Bertucci, Dorchester Real Estate, Inc., EB Real Estate Group, Inc., New England Merchants Corp, Union Capital Mortgage Business Trust, and Mid City Mortgage, LLC., as well as their agents, representatives, successors, and assigns, and all persons acting in concert with them from transferring, disbursing, hypothecating, conveying, selling, pledging, secreting, dissipating, alienating or encumbering any assets, either legal or equitable, until further order of this Court.

25

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs pray for the following relief:

1) An award of damages to compensate plaintiffs for their harms as set forth above;

2) An award of any statutory damages or other civil penalties available pursuant to the Racketeering Influenced Corrupt Organizations Act against those defendants who have violated said statute, and any statutory grant of attorney's fees, costs and other damages which may be available thereunder;

3) An order that the Defendants be ordered to disgorge their ill-gotten gains to the plaintiffs, and to be disgorged of the amounts by which they were unjustly enriched;

4) Any statutory remedies, damages, punitive damages and other relief pursuant to any state and/or federal law, plus emotional distress damages;

5) An award of damages, including punitive damages of not less than two and not more than three times actual damages, and attorney's fees, costs, and interest all in accordance with G.L. c. 93A;

6) An award of reasonable attorney's fees and costs;

7) The entry of a Preliminary Injunction enjoining Dwight Jenkins, Cherry Jenkins, Dorea Smith, Robert E. Kelley, Louis G. Bertucci, Dorchester Real Estate, Inc., EB Real Estate Group, Inc., New England Merchants Corp, Union Capital Mortgage Business Trust, and Mid City Mortgage, LLC., as well as their agents, representatives, successors, and assigns, and all persons acting in concert with them from transferring, disbursing, hypothecating, conveying, selling, pledging, secreting, dissipating, alienating or encumbering any assets, either legal or equitable, until further order of this Court;

8) The entry of an order setting aside the mortgages Plaintiff entered into;

9) An award of any statutory damages or other civil penalties determined pursuant to any of the federal truth in lending statutes, including, but not limited to 12 CFR §§226.1 et seq.; 15 U.S.C. §§ 1602 et. seq.;

10) An award of damages, civil penalties, and a rescission and restitution of any finance charges the Plaintiffs may have paid pursuant to G.L. c 140 D and the regulations promulgated thereunder;

11) A declaration of the parties' respective rights and obligations as set forth above; and

12) Any other legal or equitable relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

ROBERT SMITH and MARIA DASILVA

By their attorneys:

Jonathan D. Plaut
BBO#: 638344
CHARDON LAW OFFICES
101 Tremont Street Suite 614
Boston, MA 02108
(617) 451-3200

Jeffrey S. Baker
BBO#544929
101 Tremont Street Suite 614
Boston, MA 02108
(617) 357-9505
BBO#544929

Dated: October 1, 2007

27