UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT SMITH and MARIA DASILVA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV. ACT. NO. 07-12067-RGS |
| DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH, ROBERT E. KELLEY, RKELLEY-LAW, P.C., LOUIS G. BERTUCCI, EB REAL ESTATE GROUP, INC., NEW ENGLAND MERCHANTS CORP., UNION CAPITAL MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC, FREMONT INVESTMENT & LOAN and MERITAGE MORTGAGE CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MID CITY MORTGAGE, LLC'S MOTION FOR SUMMARY JUDGMENT**

In December 2004, Plaintiff Maria DaSilva ("DaSilva") entered into a "straw buyer" scheme with Defendant Dwight Jenkins ("Jenkins"), pursuant to which she agreed to take out home loans and acquire residential properties for Jenkins in exchange for payments of $20,000 for each property, including $10,000 at each closing and another $10,000 when Jenkins sold a property. DaSilva bought two properties for Jenkins under this scheme, one in Brockton and the other in Whitman. In connection with each purchase, she signed multiple loan applications, among other documents, and obtained home loans. Jenkins, in turn, paid DaSilva for her participation in the scheme. The scheme went sour, however, when Jenkins stopped making DaSilva's mortgage payments, resulting in foreclosure of both properties.

Defendant Mid City Mortgage, LLC ("Mid City") provided mortgage brokerage services to DaSilva in connection only with her purchase of the Whitman property. Mid City was not aware of the agreement between DaSilva and Jenkins, and Mid City did not know that information concerning DaSilva that it included in DaSilva's loan applications, all of which DaSilva signed, was false. Mid City did not learn about the DaSilva-Jenkins scheme or false information in DaSilva's loan applications until plaintiffs brought this suit.

Because DaSilva can point to no evidence that Mid City engaged in any wrongdoing or that Mid City did anything other than provide routine mortgage brokerage services, Mid City is entitled to summary judgment on all of the remaining claims in this action asserted against Mid City.

## I. FACTUAL BACKGROUND

*Mid City Mortgage, LLC*

Mid City was a mortgage brokerage company that was formed in 2003 and had a principal place of business in Stoughton, Massachusetts. Defendant Mid City Mortgage, LLC's Statement of Material Facts As To Which There Is No Dispute ("Statement of Facts"), ¶ 1. Mid City filed a Certificate of Cancellation with the Secretary of the Commonwealth on or about July 20, 2009. Id., ¶ 2.

Mid City hired Lucio Avila ("Avila") as a mortgage originator or loan officer in 2003. Avila worked at Mid City until April 2007 when he began his own mortgage brokerage company. Id., ¶ 3.

*The DaSilva – Jenkins Agreement*

DaSilva first met Jenkins in November 2004. Id., ¶ 4. At their first meeting, which lasted approximately an hour, Jenkins and DaSilva discussed a money-making opportunity, wherein,

acting as a straw buyer for Jenkins, DaSilva would purchase a residential property identified by Jenkins, in exchange for which Jenkins would pay DaSilva $10,000 at the closing of the purchase and another $10,000 when Jenkins sold the property. Jenkins further promised that in exchange for DaSilva's purchase of a property, he would make mortgage, insurance and tax payments, maintain the property and collect rents. Id., ¶ 5.

*The Brockton Property*

DaSilva did nothing to investigate Jenkins. Id., ¶ 6. Jenkins did not provide her with a business card, indicate he was a licensed real estate broker, give her any references, or invite her to come to his place of business. Id., ¶ 7. Nonetheless, DaSilva accepted Jenkins' proposal, and as little as a week after their first meeting, DaSilva agreed to purchase a property located at 10-12 Palm Place in Brockton, Massachusetts (the "Brockton Property"). Id., ¶ 8. In connection with that purchase, DaSilva signed at least one Uniform Residential Loan Application, dated December 3, 2004. Id., ¶ 9. DaSilva did not read the application before she signed it. Id., ¶ 10. On December 30, 2004, DaSilva attended the closing of her purchase of the Brockton Property, after which Jenkins paid her $5,000. Id., ¶¶ 11-12. Subsequently, Jenkins paid DaSilva an additional $5,000. Id., ¶ 13.

Mid City did not provide mortgage brokerage services to DaSilva in connection with her purchase of the Brockton Property or have any other involvement in DaSilva's purchase of the Brockton Property. Id., ¶ 14.

*The Whitman Property*

Also in December 2004, and again pursuant to her agreement with Jenkins, DaSilva agreed to purchase a second property, located at 316 Raynor Avenue in Whitman, Massachusetts (the "Whitman Property"). Id., ¶ 15. Once again, in exchange for DaSilva's purchase of the

property, Jenkins agreed to be responsible for the mortgage payments, insurance and taxes and to pay DaSilva $10,000 at the closing and $10,000 when he sold the property. Id., ¶ 16.

DaSilva executed a Purchase and Sale Agreement for the Whitman Property, dated December 3, 2004 (the "Purchase and Sale Agreement"), wherein she agreed to purchase the Whitman property for $345,000. Id., ¶ 17. DaSilva did not read the Purchase and Sale Agreement before she signed it. Id., ¶ 18.

DaSilva gave Jenkins information concerning her income, employment and assets, purportedly to provide to a mortgage broker for the purpose of preparing a home loan application. Id., ¶ 19. However, Mid City never had any communications with Jenkins concerning DaSilva, DaSilva's applications for home loans or DaSilva's purchase of the Whitman Property. Id., ¶ 20.

In December 2004, James Adamos ("Adamos"), a real estate salesman working for Century 21 Dorchester Associates, contacted Avila about providing mortgage brokerage services to DaSilva in connection with her planned purchase of the Whitman Property. Id., ¶¶ 21-22. Adamos provided Avila with information concerning DaSilva that Avila needed to complete her Uniform Residential Loan Applications (the "Loan Applications") Among other things, Adamos told Avila that DaSilva was employed by OneWorld OneLink Car Wholesalers as an Operations Manager and that she had held this job for 3 years, that DaSilva's monthly income was $7,000, exclusive of the rent from the subject property, and that she intended to occupy the Whitman property. Id., ¶ 24. In fact, (a) DaSilva was not and had never been employed by OneWorld OneLink Car Wholesalers; (b) DaSilva did not have a monthly income of $7,000, exclusive of the rent from the Whitman Property, but rather earned approximately $1,600 per month; and (c) DaSilva did not intend to occupy the Whitman Property. Id., ¶¶ 25-27. Neither Avila nor

4

anyone at Mid City knew that any of the information about DaSilva provided by Adamos was false. Id., ¶ 28. Moreover, neither Avila nor anyone at Mid City knew about the agreement between DaSilva and Jenkins concerning the purchase of the Whitman Property. Id., ¶ 29.

Based on information provided to him by Adamos, Avila ran a credit check on DaSilva. Id., ¶ 30. Additionally, and again based on information provided by Adamos, Avila contacted One World One Link Car Wholesalers and verified that DaSilva was employed there. Id., ¶ 31. Avila then entered the information about DaSilva provided to him by Adamos and generated two (2) Loan Applications. The first application was for a loan in the amount of $276,000, and the second application was for a loan in the amount of $69,000. Id., ¶ 32. Neither Avila nor anyone at Mid City knew that any information contained in DaSilva's Loan Applications was false. Id., ¶ 33.

Avila then sent the two Loan Applications, along with several other documents, to Adamos for DaSilva to review and sign. Id., ¶ 34. DaSilva signed each of the two Loan Applications. Id., ¶ 35. DaSilva did not read the Loan Applications before she signed them. Id., ¶ 36. The Loan Applications are dated December 21, 2004. Id., ¶ 37. Each of the two Loan Applications signed by DaSilva contains the following "Acknowledgment and Agreement" just above DaSilva's signature:

> Each of the undersigned . . . agrees and acknowledges that . . . the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentations that I have made on this application, and/or in criminal penalties including but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.

Id., ¶ 38.

In connection with the two Loan Applications, DaSilva also signed agreements with Mid City, each of which is dated December 21, 2004, including two Loan Origination and Compensation Agreements (the "Loan Origination Agreements"), two Brokerage Agreements (the "Brokerage Agreements") and two Mortgage Loan Origination Agreements (the "Mortgage Loan Origination Agreement"). Id., ¶ 39.

None of the agreements between Mid City and DaSilva dated December 21, 2004 contain language obligating Mid City to verify the information contained in DaSilva's Loan Applications. In particular, the Brokerage Agreements, which set forth the services that Mid City "acting in a brokerage capacity, may provide," make no reference to verifying the information contained in loan applications. In fact, the Brokerage Agreements contain the following provision: "[Mid City] is not responsible for any false information given by the applicant; the application then becomes null and void." Id., ¶¶ 40-42.

Mid City submitted DaSilva's Loan Applications to potential lenders for consideration. People's Choice Home Loan, Inc. ("People's Choice") accepted DaSilva's applications and offered to make two loans to her. Id., ¶¶ 43-44. The People's Choice loans for which DaSilva was approved were "stated-income" loans. That is, the lender did not require DaSilva to document the income stated in her application. For this reason, People's Choice did not require Mid City to verify or to collect documentation from DaSilva verifying the income stated on her Loan Applications. Id., ¶ 45.

The closing for DaSilva's purchase of the Whitman Property took place on January 7, 2005 at the office of Attorney Carl Leppo in Brockton, Massachusetts ("the Closing"). Id., ¶ 46. At the Closing, DaSilva again signed, in addition to other typical closing documents, two Loan

6

Applications, as well as two Loan Origination Agreements and two Brokerage Agreements with Mid City. Id., ¶ 47.

At the Closing, DaSilva also signed an Occupancy Affidavit and Financial Status wherein she represented that she would occupy the Whitman Property by February 6, 2005. The Occupancy Affidavit and Financial Status also contains the following language: "We are aware of and understand that if we fail to move into the property by the specified time that we are subject to prosecution under Section 1010, Title 18, United States Code, Federal House Administration Transactions, and that we are liable to be fined not more than $5,000, or imprisoned not more than two years, or both." In the same document, DaSilva also represented that "our loan application to . . . [a] conventional lender reflects our current financial position." Id., ¶¶ 48-50.

Subsequent to the Closing, Jenkins met DaSilva in the parking lot of a Shaw's grocery store in Brockton where Jenkins gave DaSilva about $5,000 in cash. Id., ¶ 51. Jenkins did not make any additional payments to DaSilva in connection with her purchase of the Whitman Property. Id., ¶ 52. In her 2004 tax returns, DaSilva did not report the income that she received from Jenkins. Id., ¶ 53.

*The Foreclosures*

After making some of DaSilva's payments on the home loans that she took out in connection with her purchase of the Brockton and Whitman Properties, Jenkins stopped making any payments. Id., ¶ 54. On November 21, 2005, as a result of nonpayment, the holder of the first mortgage on the Brockton Property foreclosed and sold the property at a public auction. Id., ¶ 55. On December 16, 2005, as a result of nonpayment, the holder of the first mortgage on the Whitman Property foreclosed and sold the property at a public auction. Id., ¶ 56.

## II. LEGAL ARGUMENT

Summary judgment is appropriate if "any pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment "is not precluded by just any factual quibble: the evidence manifesting the dispute must be 'substantial,' going beyond the allegations and defenses in the pleadings." Dykes v. DePuy, Inc., 140 F.3d 31, 36 (1st Cir. 1998) (citation omitted). To defeat a properly supported motion for summary judgment, the non-moving party must establish the existence of a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the non-moving party." Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116 (1st Cir. 1993), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[I]f the nonmovant fails to make 'a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' summary judgment must enter against it." Mulloy v. Achusnet Co., Civil Action No. 03-11077-DPW, 2005 U.S. Dist. LEXIS 12778 at *8 (D.Mass. June 20, 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### A. THE COURT SHOULD ENTER SUMMARY JUDGMENT ON DASILVA'S FRAUD CLAIMS BECAUSE SHE CANNOT PROVE THAT MID CITY KNEW HER LOAN APPLICATIONS CONTAINED FALSE STATEMENTS, THAT SHE REASONABLY RELIED ON THOSE FALSE STATEMENTS OR THAT SHE SUFFERED DAMAGES ATTRIBUTABLE TO THE FALSE STATEMENTS.

Mid City is entitled to summary judgment on DaSilva's fraud claim (Count I) because (a) the evidence is undisputed that Mid City did not know that information in DaSilva's Loan Applications was false; (b) DaSilva's purported reliance on the false information in her Loan Applications was unreasonable because she was in the best position to know the information was

8

false; and (c) DaSilva has no evidence that she qualified for her home loans because of the false information in her Loan Applications or that she suffered harm because of the false information.

In order to succeed on her fraud claim, DaSilva must prove that the Mid City made a false representation of a material fact with knowledge of its falsity for the purpose of inducing DaSilva to act thereon, and that she reasonably relied upon the representation as true and acted upon it to her detriment. Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 69 (1st Cir. 2005) (quoting Russell v. Cooley Dickinson Hospital, Inc., 437 Mass. 443 (2002)). The sole basis of DaSilva's fraud claim is the allegation that Mid City inserted false information about her in her Loan Applications. However, the evidence is undisputed that Mid City did not know that information contained in DaSilva's Loan Applications was false. Thus, DaSilva cannot prove an essential element of her fraud claim, namely that Mid City made a false representation of fact *with knowledge of its falsity*. Accordingly, Mid City is entitled to summary judgment on that claim. Cummings v. HPG Intern'l, Inc., 244 F.3d 16, 22-23 (1st Cir. 2001) (affirming summary judgment in favor of defendant on deceit claim where plaintiff had no evidence that defendant knew its representations to plaintiff were false when made).

Mid City also is entitled to summary judgment because DaSilva's purported reliance on false information in her Loan Applications was unreasonable given that DaSilva was in the best position to know that information was inaccurate. See Delphi Corp. v. Litex, Inc., 394 F. Supp. 2d 331, 348 (D. Mass. 2005) (court granted summary judgment on fraud claim where any reliance by plaintiff on defendant's allegedly false statements was unreasonable because plaintiff had knowledge that the statements were false); Collins v. Huculak, 57 Mass.App. Ct. 387, 392 (2003) (plaintiffs' reliance on defendant's representations regarding a document they signed was unreasonable because a cursory examination of the document would have revealed its true

nature). In Macharia v. Jenkins, Civ. Act. No. 06-2460-H, an action nearly identical to this action in substance, the court entered summary judgment in favor of mortgage broker Union Capital Mortgage Business Trust on exactly these grounds, namely that the plaintiff-borrowers should have noticed that their loan applications contained false information:

> In the present case, it should have been obvious to Plaintiffs that the mortgage applications contained significant discrepancies. The alleged discrepancies were not subtle, but significantly inflate Plaintiffs' income and assets. Union [the mortgage broker] allegedly submitted that Macharia [the borrower-plaintiff] had $24,700 in a Wainright Bank account that she did not actually hold, that Macharia had $28,675 in an ING account when she actually had only $1,000, and that Macharia's total liquid assets were $53,375 when in reality they were only $10,112. Plaintiffs also maintain that Union stated Mbaya's monthly income as $9,931 when it was actually only $5,000. Any reliance on the alleged misstatements cannot be reasonable because Plaintiffs should be aware of their own income, assets and financial status and should have noticed such large and significant discrepancies. Because Plaintiffs' reliance on the alleged misstatements could not have been reasonable, on Plaintiffs' fraud claim, summary judgment in favor of Union is appropriate.

Macharia, slip. op. at 6-7. A copy of the Court's decision is attached to the Statement of Facts as Exhibit 29. Here, as well, DaSilva should have noticed that her Loan Applications indicated that her monthly income was $7,000, when her actual income was approximately $1,600. She should have noticed that her Loan Applications indicated that she was employed by OneWorld OneLink when, in fact, she had never heard of the company. And she should have noticed that the Loan Applications indicated that she intended to reside in the Whitman property, when, in fact, she did not. Accordingly, DaSilva's purported reliance on the false statements in her Loan Applications was not reasonable, and therefore DaSilva cannot prove an essential element of her fraud claim.

Finally, Mid City also is entitled to summary judgment because DaSilva cannot demonstrate that she relied on the information in her Loan Applications *to her detriment.* "Proof of damages flowing from misrepresentations is essential to recovery." Poly v. Moylan, 423 Mass. 141, 149 (1996) (citing Cardullo v. Landau, 329 Mass. 5, 7 (1952)). "'Where a plaintiff

10

does not prove that he is worse off than if there had been no misrepresentation he has not made out a case of deceit.'" Id., quoting Connelly v. Bartlett, 286 Mass. 311, 315 (1934). DaSilva's alleged detriment is that she obtained the home loans for which she applied. Accordingly, DaSilva must prove that she obtained the home loans because the Loan Applications contained false information. To satisfy that burden, DaSilva must produce some evidence, such as testimony from People's Choice, that she would not have received the two loans if the Loan Applications had correctly represented her employer, income and intention not to reside at the Whitman Property.[1] However, DaSilva can point to no evidence that People's Choice approved her applications because of the false information they contained. That is, DaSilva cannot demonstrate that the damages she alleges, obtaining the home loans, flowed from the misrepresentations contained in her applications. See id. (vacating damages award where plaintiff's purported damages, namely the payment of a court filing fee, did not relate to the plaintiff's deceitful acts).

DaSilva also alleges that as a consequence of the foreclosure on the Whitman property on December 16, 2005, she suffered "diminution of [her] credit rating." Plaintiffs' Automatic Disclosures Pursuant to Fed.R.Civ.P. 26(a)(1), § (C)(v). A copy of Plaintiffs' Automatic Disclosures is attached to the Statement of Facts as Exhibit 28. DaSilva's argument fails for three reasons. First, DaSilva has no admissible evidence that her credit rating declined after the foreclosure of the Whitman Property or at any other time. Second, the Whitman foreclosure, which DaSilva alleges caused her credit rating to decline, did not result from the false information in DaSilva's Loan Applications, but from the failure to make her mortgage payments. Third, foreclosure on the Whitman Property did not occur until almost a month after

---

[1] It could be that People's Choice would not have made loans to DaSilva if her Loan Applications contained accurate information concerning, for example, her income. However, the burden of proving this point lies with DaSilva and she has not satisfied that burden.

foreclosure on the Brockton Property. DaSilva cannot set forth any evidence that the credit rating decline that she alleges was the result of the foreclosure on the Whitman Property and not the result of the earlier foreclosure on the Brockton Property. Accordingly, DaSilva cannot show that she suffered any detriment as a result of the false statements contained in her mortgage applications. For this additional reason, Mid City is entitled to summary judgment on DaSilva's fraud claim.

> **B.** **MID CITY IS ENTITLED TO SUMMARY JUDGMENT ON DASILVA'S NEGLIGENCE CLAIM ON MULTIPLE GROUNDS.**

The Court should enter summary judgment in favor of Mid City on DaSilva's negligence claim (Count VII) because (a) the claim is barred by the economic loss doctrine, (b) Mid City did not owe a duty to DaSilva to verify the information in her mortgage applications, (c) DaSilva's negligence bars her recovery, and (d) DaSilva cannot prove that she suffered any damages attributable to the false information in her mortgage applications.

DaSilva's negligence claim against Mid City is barred by the economic loss doctrine. "Massachusetts, which is not alone, holds that 'purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.'" In Re: TJX Companies Retail Security Breach Litigation, Nos. 07-2828 08-1075, 08-1076, 2009 U.S. App. LEXIS 6636 (1st Cir. March 30, 2009) (quoting Aldrich v. ADD Inc., 437 Mass. 213, 222 (2002)). See also Cumis Ins. Society, Inc. v. BJ's Wholesale Club, 455 Mass. 458, 469 (2009) ("the economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage"). DaSilva does not allege property damage and the only physical harm or personal injury she alleges is "emotional distress." Plaintiffs' Automatic Disclosures, § (C)(xii). However DaSilva has no evidence of emotional distress or "physical harm manifested by objective

symptomology." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 51 (D. Mass. 2000) (citing Payton v. Abbott Labs, 386 Mass. 540, 557 (1982)). "On motions for summary judgment, 'plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that they present a sufficient likelihood of genuineness to go to trial.'" Smith v. City of Boston, Civ. Act. No. 03-10062-DPW, 2004 U.S. Dist. LEXIS 13062, *32-33 (D. Mass. July 13, 2004) (quoting Sullivan v. Boston Gas Co., 414 Mass. 129, 137-38 (1993)).

DaSilva has never seen a doctor for any sort of emotional distress and has never reported to her primary care physician that she had any sort of emotional distress related to her real estate transactions. Statement of Facts, ¶ 57. In addition, DaSilva has no medical records or other documents demonstrating "physical harm manifested by objective symptomology." Hence, DaSilva has no evidence of either emotional distress or "physical harm manifested by objective symptomology," and therefore her negligence claim is barred by the economic loss doctrine. See In Re: TJX Companies Retail Security Breach Litigation, 2009 U.S. App. LEXIS at *20-21 (affirming dismissal of credit unions' negligence claim where credit unions alleged only economic losses); Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. at 469-70 (credit unions' negligence claims barred by economic loss doctrine because damages suffered by credit unions were economic losses).

Additionally, Mid City is entitled to summary judgment because it did not owe DaSilva a duty to verify the information in her Loan Applications. To prevail on her negligence claim, DaSilva must prove: (1) a legal duty owed by Mid City to DaSilva, (2) a breach of that duty, (3) proximate or legal cause, and (4) actual damage or injury. Jorgensen v. Mass. Port. Authority, 905 F.2d 515, 522 (1st Cir. 1990). DaSilva can point to no facts that permit an inference that Mid City owed her a duty to verify the information in her Loan Applications. The Mid City

Brokerage Agreements that DaSilva signed unequivocally provide that "Mid City Mortgage is not responsible for any false information given by the applicants." Rather, the duty to provide accurate information in her Loan Applications was DaSilva's. In fact, when she signed the Loan Applications, DaSilva attested, subject to fine and imprisonment pursuant to the 18 U.S.C. 1001 et seq., that the information contained therein was "true and accurate." Accordingly, DaSilva cannot demonstrate that Mid City owed her a duty to verify the information in her Applications.

Additionally, DaSilva's negligence claim is barred by her negligence. See Lussier v. Louisville Ladder Co., 938 F.2d 299, 300 (1st Cir. 1991) (court affirmed summary judgment for defendant on plaintiff's negligent claim because plaintiff's own negligence barred recovery). DaSilva alleges that Mid City negligently included false information in her Loan Applications. However, DaSilva failed to read or review her Loan Applications before she signed them. DaSilva testified that she did not review the Loan Applications or other documents related to her purchase of the Whitman Property because she trusted Jenkins, whom she did not know and never investigated.[2] DaSilva's failure to even causally review her applications -- which plainly would have revealed the inaccurate information -- was, at a minimum, negligent. See New Bedford Inst'n for Savings v. Gildroy, 36 Mass.App.Ct. 647, 657-58 (1994) (trial court properly ruled that party's failure to even casually examine note before signing constituted negligence); see also Brown v. Carlson, Civ. Act. No. 07-1624, 2009 Mass.Super. LEXIS 227, *11-19 (Mass.Super.Ct. Sept. 1, 2009) (rejecting plaintiff's fraud in the factum claim where plaintiff failed to read deed before signing because she relied on representations of mortgage originator

---

[2] DaSilva conceded that she bears responsibility for the purported damages she suffered as a result of her business transactions with Jenkins:
    Q.    Do you take any responsibility for entering into these transactions with Mr. Jenkins without looking carefully at the documents you were signing and understanding the nature of the deal?
    A.    I will take responsibility for trusting Dwight [Jenkins] and the lawyers where I didn't read it because I put all my faith into them . . . .
DaSilva Tr. 239:2-8.

whom she did not otherwise know). In light of DaSilva's negligence in failing to even casually review her Loan Applications, DaSilva's negligence claim is barred. See Lussier v. Louisville Ladder Co., 938 F.2d at 300.

Moreover, DaSilva cannot show that Mid City's alleged failure to verify the information on DaSilva's applications proximately caused her to suffer damages. "Massachusetts courts have articulated at least two elements as constituting part of the actual causation inquiry. Plaintiffs must show that defendant's conduct was a but-for cause of their injury . . . and that defendant's conduct was a 'substantial legal factor' in bringing about the alleged harm to the plaintiff." Jorgensen v. Mass. Port Auth., 905 F.2d at 524 (citations omitted). DaSilva has no proof that she would not have received her home loans but for the false information contained in her applications. Moreover, DaSilva cannot demonstrate that the foreclosure on the Whitman Property caused any harm to her credit rating, or caused her harm in any other way beyond what she suffered as a consequence of the earlier foreclosure on the Brockton Property. In short, DaSilva cannot demonstrate that she suffered any damage or injury caused by the false information in her Loan Applications.[3]

---

[3] For the same reasons that Mid City is entitled to summary judgment on DaSilva's negligence claim, Mid City also is entitled to summary judgment on her claim for negligent infliction of emotional distress (Count XVI). In order to succeed on her claim of negligent infliction of emotional distress, DaSilva must prove "(1) negligence, (2) emotional distress, (3) causation, (4) physical harm manifested by objective symptomology, and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d at 51 (citing Payton v. Abbott Labs, 386 Mass. 540, 557 (1982)). As set forth above, DaSilva can proffer no evidence that Mid City was negligent and no evidence of "physical harm manifested by objective symptomology." Accordingly, the Court should enter summary judgment in favor of Mid City on DaSilva's claim for negligent infliction of emotional distress. Id. (court granted summary judgment on plaintiff's negligent infliction of emotional distress claim for, among other reasons, failing to proffer evidence of negligence); Smith v. City of Boston, 2004 U.S. Dist. LEXIS 13062 at *32-33 (court granted summary judgment on plaintiff's negligent infliction of emotional distress claim where plaintiff failed to provide objective evidence of harm, such as medical records or sworn affidavits from treating physicians).

**C. MID CITY IS ENTITLED TO SUMMARY JUDGMENT ON DASILVA'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BECAUSE DASILVA HAS NO EVIDENCE THAT MID CITY ENGAGED IN EXTREME OR OUTRAGEOUS CONDUCT OR THAT SHE SUFFRED SEVERE EMOTIONAL DISTRESS.**

Mid City is entitled to DaSilva's claim for intentional infliction of emotional distress (Count XV) because (a) Mid City's provision of routine mortgage brokerage services to DaSilva, unaware of the scheme in which she and Jenkins were engaged, did not constitute extreme or outrageous conduct, and (b) DaSilva did not suffer severe emotional distress. To prevail on an intentional infliction of emotional distress claim, a plaintiff must prove: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' and (3) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure.'" Ball v. Wal-Mart, Inc., 102 F.Supp.2d at 53 (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976)).

"In a case alleging intentional infliction of emotional distress a two-prong test must be applied. First, the judge must determine whether the conduct may reasonably be viewed as extreme and outrageous. Second, the jury must determine whether the conduct was, in fact, extreme or dangerous." Id. (citing Boyle v. Wenk, 378 Mass. 592, 598 n. 11 (1979)). "If the first prong is decided in the defendant's favor there is no need to reach the second." Id. (citing Redgrave v. Boston Symphony Orchestra, Inc., 557 F. Supp. 230, 236 (D.Mass., 1983)).

Here, there is no evidence that Mid City defrauded DaSilva or engaged in any wrongful or tortious conduct. Rather, the evidence is undisputed that Mid City simply provided routine mortgage brokerage services to DaSilva. Moreover, the evidence is undisputed that Mid City

was not aware that DaSilva and Jenkins had entered into a straw buyer agreement or that DaSilva's Loan Applications contained false information. Accordingly, DaSilva cannot prove that Mid City knew or should have known that emotional distress was the likely result of assisting DaSilva in obtaining home loans, or that Mid City's provision of mortgage brokerage services to DaSilva constituted "extreme and outrageous" conduct. Id. at 52-54 (summary judgment in favor of defendant where plaintiff produced no evidence that would raise a genuine issue of material fact whether defendant's conduct could be viewed as extreme or outrageous).

Additionally, there is no evidence that the emotional distress sustained by DaSilva was "severe and of a nature that no reasonable man could be expected to endure."[4] DaSilva testified only that she was "stressed" about the transactions. DaSilva Tr. 235:5 – 237:24. DaSilva has never seen a doctor for any sort of emotional distress and has never reported to her primary care physician that she had any sort of emotional distress related to her real estate transactions. DaSilva's testimony is simply insufficient to create a triable issue of fact, and the Court should enter summary judgment in favor of Mid City. See Jones v. City of Boston, 738 F. Supp. 604, 607 (D.Mass. 1990)(plaintiff's distress not severe enough to withstand defendants' motion for summary judgment).

### D. MID CITY IS ENTITLED TO SUMMARY JUDGMENT ON DASILVA'S CIVIL CONSPIRACY CLAIM BECAUSE SHE HAS NO EVIDENCE OF A COMMON DESIGN OR AGREEMENT BETWEEN MID CITY AND JENKINS AND NO EVIDENCE THAT MID CITY COMMITTED A TORTIOUS ACT.

DaSilva also has alleged that Mid City conspired with Jenkins to defraud her. Mid City is entitled to summary judgment on DaSilva's civil conspiracy claim (Count XII) because (a)

---

[4] "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." Caputo v. Boston Edison Co., 924 F.2d 11, 14 (1st Cir. 1991) (quoting Comment j, Restatement (Second) of Torts (1965) at § 46).

there is no evidence of a common design or agreement between Mid City and Jenkins and (b) there is no evidence that Mid City defrauded DaSilva or committed any tortious act.

To succeed on her civil conspiracy claim, DaSilva must prove "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act, and second, proof of some tortious act in furtherance of the agreement." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 131 (1st Cir. 2006) (quoting Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994)).

DaSilva cannot prove a common design or agreement between Jenkins and Mid City. Prior to the filing of this suit, Mid City was unaware of DaSilva's agreement to act as a straw buyer on behalf of Jenkins in exchange for payment, and unaware that DaSilva's Loan Applications contained any false information. In fact, DaSilva can point to no evidence of any communications between Jenkins and Mid City concerning DaSilva and certainly no evidence that Jenkins and Mid City conspired to harm DaSilva. Accordingly, Mid City is entitled to summary judgment. Adrion v. Knight, Civ. Act. No. 07-11277, 2009 U.S. Dist. LEXIS 98089, *52-53 (D.Mass. Sept. 9, 2009)(Magistrate Judge recommended allowing motion for summary judgment in favor of defendant where plaintiff presented no evidence that defendant participated in common design with co-defendant).[5] See also Macharria slip op. at 7 (summary judgment in favor of defendant mortgage broker Union Capital because plaintiffs had not "adequately described the existence of an agreement between Union . . . and Jenkins wherein they conspired to injure Plaintiffs").

Additionally, DaSilva can point to no evidence that Mid City engaged in any tortious conduct in furtherance of a purported agreement with Jenkins. As demonstrated above, DaSilva

---

[5] The Court adopted the Magistrate Judge's Recommendation. See Adrion v. Knight, 2009 U.S. Dist. LEXIS 91968 (D. Mass. Sept. 9, 2009).

has no evidence that Mid City defrauded her, and DaSilva has not alleged any other tortious conduct. Accordingly, Mid City is entitled to summary judgment on DaSilva's civil conspiracy claim. See Adrion v. Knight, 2009 U.S. Dist. LEXIS 98089 at *51-52 (Magistrate Judge recommended allowing motion for summary judgment in favor of defendant where there was no evidence of underlying tortious activity). See also Macharria slip op. at 7 (summary judgment in favor of defendant mortgage broker Union Capital where court concluded that there was no underlying tortious activity).

> E. **THE COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF MID CITY ON DASILVA'S UNJUST ENRICHMENT CLAIM BECAUSE MID CITY WAS ENTITLED TO THE COMPENSATION IT RECEIVED.**

As this Court has stated: "Unjust enrichment is a theory of equitable recovery, not a separate cause of action." Smith v. Jenkins, 626 F. Supp. 2d 155, 170 (D. Mass. 2009) (citing Lopes v. Commonwealth, 442 Mass. 170, 179 (2004)). To recover under this theory, DaSilva must prove: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification and (5) the absence of a remedy provided by law." Id. (quotation marks and citation omitted). The Court should enter summary judgment in favor of Mid City on DaSilva's Unjust Enrichment count (Count X) because Mid City was entitled to the compensation that it received for providing mortgage brokerage services to DaSilva. DaSilva engaged Mid City to assist her in obtaining a home loan for the purchase of the Whitman Property and that is just what Mid City did. See Jefferson Ins. Co. v. Roberts, 349 F. Supp. 2d 101, 108 (D.Mass. 2002) (after granting insurer's summary judgment motion in coverage dispute, court also entered summary judgment in favor of insurer on insured's unjust enrichment counterclaim, noting that while insurer "received a premium for . . . the . . . contracts of insurance," the insured, "as consideration therefor, received precisely that for which

he bargained. There was no unjust enrichment."). Accordingly, Mid City is entitled to summary judgment on DaSilva's "claim" for unjust enrichment.

## III. CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Mid City on all claims asserted against it in this action that the Court did not previously dismiss.

Respectfully submitted,

**MID CITY MORTGAGE, LLC**

By its attorneys,

/s/ John R. Bauer
John R. Bauer (BBO #630742)
Amie R. Pelletier (BBO #654044)
Claire Newton (BBO #669598)
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108-4404
(617) 557-5900

Dated: February 1, 2010

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.2(b), I, John R. Bauer, hereby certify that this document filed through the ECF system on February 1, 2010 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ John R. Bauer
John R. Bauer