

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SMITH and ) | |
| MARIA DASILVA, ) | |
|     Plaintiffs ) | |
| ) | **CASE NO. 1:07-CV-12067** |
| vs. ) | |
| ) | |
| DWIGHT JENKINS, CHERRY JENKINS, ) | |
| DOREA SMITH, ROBERT E. KELLEY, ) | |
| RKELLEY-LAW, P.C., LOUIS G. BERTUCCI, ) | |
| EB REAL ESTATE GROUP, INC., ) | |
| DORCHESTER REAL ESTATE, INC., NEW ) | |
| ENGLAND MERCHANTS CORP., UNION ) | |
| CAPITAL MORTGAGE BUSINESS TRUST, ) | |
| MID CITY MORTGAGE, LLC, FREMONT ) | |
| INVESTMENT AND LOAN and MERITAGE ) | |
| MORTGAGE CORPORATION ) | |
|     Defendants ) | |

**REPLY MEMORANDUM OF DEFENDANT, UNION CAPITAL MORTGAGE
BUSINESS TRUST, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
(LEAVE TO FILE GRANTED ON MARCH 16, 2010)**

**I.       INTRODUCTION**

Pursuant to leave granted to all defendants by this Court on March 17, 2010, the defendant, Union Capital Mortgage Business Trust ("Union Capital") submits its Reply Memorandum in support of its Motion for Summary Judgment. The defendant notes that it has also filed a Motion to Strike various exhibits filed with the plaintiffs' Memorandum in Opposition to Summary Judgment. The motion to strike concerns a number of exhibits and "subexhibits" submitted by the plaintiffs but not referenced in their Memorandum in Opposition, as well as Plaintiffs' Exhibit 12 and Exhibit 44.

This reply concerns the following issues: (1) the plaintiffs' failure to present evidence of fraud or civil conspiracy, including the Opposition's use of unsupported factual assertions, the re-assertion of the allegations in their pleadings, the use of statements made on "information and



belief," the use of nonspecific references to entire deposition transcripts as support for factual assertions, and the citation to exhibits that do not support the factual assertions made; (2) the plaintiffs' failure to present evidence demonstrating justifiable reliance in support of their fraud claims; (3) the plaintiffs' factual and legal arguments regarding the effect of a claimed fiduciary duty on their fraud claims; (4) the plaintiffs' legal arguments regarding the economic loss doctrine; and (5) the plaintiffs' failure to present evidence to satisfy their claims of negligent infliction of emotional distress.

## II.    ARGUMENT

### A.    The Plaintiffs Have Failed to Present Evidence to Support the Elements of Fraud or Civil Conspiracy.

The plaintiffs' Memorandum in Opposition first seeks to defend the claims of a civil conspiracy. (Memorandum in Opposition, pp. 9-20). The next section asserts the plaintiffs' evidence of fraud. (Memorandum in Opposition, pp. 20-30). The evidence presented includes numerous general citations to lengthy exhibits without any page citations, including multiple general references to Maria DaSilva's deposition transcripts on two dates (Plaintiffs' Exhibits 32 and 33), Robert Smith's deposition transcripts on two dates (Plaintiffs' Exhibits 37 and 38), Ms. DaSilva's interrogatory answers (Plaintiffs' Exhibits 42 and 43), and the plaintiffs' Supplemental Answers to Interrogatories (Plaintiffs' Exhibit 44). As noted, Plaintiffs' Exhibit 44 is the subject of a motion to strike, as the plaintiffs have cited its statement of witnesses' expected testimony as support for their factual assertions. The exhibit is inadmissible hearsay. See Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir.1990) (statement of expert's expected testimony in interrogatory answer inadmissible in summary judgment proceedings); Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998) ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment."); Flesner v. Technical



Communications Corp., 410 Mass. 805, 817 (1991) (hearsay statements in deposition testimony inadmissible in summary judgment proceeding).

In addition to citing inadmissible hearsay and making nonspecific citation to entire deposition transcripts and other exhibits as support for their claims of conspiracy and fraud, the plaintiffs' Opposition makes factual assertions based upon "information and belief" (Memorandum in Opposition, pp. 8-9). Such allegations are inappropriate at the summary judgment stage. The plaintiffs also make factual assertions that repeat the allegations in their pleadings, with citations that do not support the allegations made. In particular, the plaintiffs make a number of assertions regarding Union Capital's knowledge of false information on loan applications, but the exhibits cited lack any support for the claims. (Memorandum in Opposition, p. 28). As noted, any citation to Exhibit 44 is inadmissible. The citation to Plaintiffs' Exhibit 64, a 215 page deposition transcript of Dwight Jenkins taken in a different action on November 16, 2009, does not contain any page citation indicating testimony that evidences Union Capital's knowledge regarding false information on the loan applications. Similarly, Plaintiffs' Exhibits 23 and 24 are deposition transcripts of Dwight Jenkins taken on April 5, 2007 and February 7, 2007, respectively. There are no specific page references to either transcript (the two combined total 553 pages) in the plaintiffs' Memorandum in Opposition. (Memorandum in Opposition, p. 28). Plaintiffs' Exhibit 56 makes no mention of Union Capital.

In other portions of the Opposition, the plaintiffs' attempts at specific citations to deposition transcripts do not support the factual assertions alleged. The plaintiffs' assertion that Union Capital's former employee Linda Bryant oversaw all of the activities of Philip Goodwin is either made without citation to evidence or is not supported by the deposition testimony cited.



(Memorandum in Opposition, p. 16,[1] citing Plaintiff's Exhibit 30, p. 44; Memorandum in Opposition, p. 63, citing Plaintiffs' Exhibit 30, pp. 93-94). The plaintiffs assert that Ms. Bryant processed and approved each of Mr. Goodwin's loans in this case, but that assertion is not supported by the cited testimony. (Memorandum in Opposition, p. 63, citing Plaintiffs' Exhibit 30, pp. 30-36). The remainder of the plaintiffs' statements regarding Ms. Bryant's deposition mischaracterize her testimony, but nevertheless fail to assert any evidence probative of fraud or civil conspiracy.

Similarly, the plaintiffs' assertions regarding Mr. Goodwin's claimed ascent from "loan originator" to "loan officer" are not supported by the cited deposition testimony. (Memorandum in Opposition, p. 63, citing Plaintiffs' Exhibit 26, pp. 18-25, 27). In fact, the cited testimony indicates that the terms loan officer and loan originator are synonymous, as the testimony indicates that Mr. Goodwin signed a "loan officer fraud form" at the time he was hired as a "loan originator." (Plaintiffs' Exhibit 26, pp. 24-27). In any event, the plaintiffs' legal contentions regarding Mr. Goodwin's status as an "officer" lack merit because there is no evidence that Mr. Goodwin was a **corporate** officer, as discussed and understood in Lentz v. Metropolitan Prop. and Cas. Ins. Co., 437 Mass. 23, 26-27 (2002). As discussed in the defendant's Memorandum in support of summary judgment, the factors used to determine whether a non-party's assertion of privilege can support a negative inference against his former employer weigh against the allowance of such an inference, as Mr. Goodwin was represented by separate counsel, he is not under Union Capital's control, and his assertion of privilege was made to protect his personal interest rather than that of Union Capital.

---

[1] The argument is repeated at pp. 62-63 of the Memorandum in Opposition.



5

B.   **The Plaintiffs Have Failed to Present Evidence Demonstrating Their Justifiable Reliance in Failing to Read Documents and to Verify Their Personal Information.**

The plaintiffs' Responses to Union Capital's Statement of Material Facts also provide no evidence of Union Capital's alleged fraud or participation in a conspiracy.  Mr. Smith's responses repeatedly allege that "Jenkins and the other co-conspirators lulled [him] into trusting them" and that "[h]e therefore did not read or otherwise try to understand the documents put before him at the closings."  (Plaintiff's Responses to Union Capital's Statement of Material Facts, pp. 18-21, ¶¶ 16-31, citing Plaintiffs' Exhibit 37, p. 48).  However, the only factual citation in support of this statement makes no reference to Union Capital  (See Plaintiffs' Exhibit 37, p. 48).  Similarly, Ms. DaSilva's responses repeatedly state that "Jenkins and Union Capital used their superior, more knowledgeable, position to convince DaSilva to trust them" and that therefore "she took no steps to read the documents presented to her because of this trust."  (Plaintiff's Responses to Union Capital's Statement of Material Facts, pp. 22-27, ¶¶ 39-46, 50-51, 53-61, 63-68, citing Plaintiffs' Exhibit 32, pp. 32-56, 239).  Again, however, nothing within the cited pages refers to any conduct of Union Capital.  (See Plaintiffs' Exhibit 32, pp. 32-56, 239).

C.   **The Plaintiffs' Legal Theories Regarding the Existence of A Fiduciary Duty Are Incorrect and Do Not Alter the Analysis of the Fraud Claims.**

Union Capital has argued, among other things, that the plaintiffs' fraud claims fail because there is no evidence that it or any of its employees expected the plaintiffs to sign documents without reading them, and that the plaintiffs' cannot claim reasonable reliance when they signed documents containing false personal information that they should have recognized. (See Union Capital's Memorandum in Support of Summary Judgment, pp. 10-11, citing *Kuwaiti*



Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 468 (2003), and Collins v. Huculak, 57 Mass. App. Ct. 387, 392 (2003)). The plaintiffs' Memorandum in Opposition appears to focus heavily on claims that both Mr. Smith and Ms. DaSilva were "lulled" by their trust of the people they met into entering these transactions without reading or reviewing any of the documents they signed. The Memorandum in Opposition continues to include some argument asserting that the plaintiffs lacked understanding of the transactions, but these arguments are muted by the facts demonstrating that each plaintiff understood that that he or she was participating in real estate transactions, as well as the Plaintiffs' Responses to Union Capital's Statement of Material Facts, which repeatedly assert that both plaintiffs did not read the documents they signed because of the trust they placed in the defendants, rather than because they failed to understand that the documents might have some significance.

The law regarding one who "lulls" another into forgoing investigation, however, concerns matters that would require some investigation in order to discover the truth; where the false information requires nothing more than reading a document, one cannot claim to have been deceived in this way. See Kuwaiti Danish Computer Co., 438 Mass. at 467-468 (discussing Yorke v. Taylor, 332 Mass. 368 (1955), and noting distinction between reliance on matters that require some investigation and matters of readily apparent or "obvious" falsity). The plaintiffs did not need to perform any investigation to discover the false personal information in their loan applications, as they could have identified solely by reading the documents presented to them.

In an apparent attempt to bolster their claims of trust and to prevent summary judgment, the plaintiffs have asserted that each mortgage broker assumed a fiduciary duty to the plaintiffs. The plaintiffs' Amended Complaint does not allege a claim for breach of fiduciary duty against Union Capital, and thus the sole purpose for the claim appears to be as support for the plaintiffs'



fraud claims. However, even if such a relationship existed, and even if it could be asserted now after not having been pleaded, the plaintiffs have not asserted that the elements necessary for proof of fraud are altered by the existence of a fiduciary duty. There is still no evidence that Union Capital was aware that the plaintiffs' personal information was false, and no evidence that Union Capital should have expected that the plaintiffs would sign documents without reading them and verifying their personal information. Although the plaintiffs argue that Union Capital, by virtue of a fiduciary duty, had an obligation to disclose material facts, the plaintiffs have not presented any facts indicating a failure to disclose by Union Capital, nor have they presented any legal authority indicating that, as a fiduciary, Union Capital would have a duty to ensure that the plaintiffs read documents before signing them.

Moreover, the plaintiffs' assertion of a fiduciary duty is not sound in this case. The existence of a fiduciary relationship requires evidence that one party reposed trust and confidence in another, and that the alleged fiduciary was aware of and accepted the other's dependence. Davidson v. Gen. Motors Corp., 57 Mass.App.Ct. 637, 643 (2003); Broomfield v. Kosow, 349 Mass. 749, 755 (1965). The plaintiffs were not dependent upon Union Capital to provide accurate personal information in their loan applications, as such matters were within their own knowledge. Nor have the plaintiffs presented any evidence that Union Capital knew or accepted that the plaintiffs would rely on them for such purposes. The plaintiffs' general citation to 209 CMR 42.00 et seq. also fails. Nothing within those regulations imposes a fiduciary duty upon a mortgage broker, either expressly or impliedly. See 209 CMR 42.16 (copy attached hereto) (setting forth required terms of loan origination agreement, which include broker's disclaimer of agency).



The plaintiffs' argument also fails to establish that Union Capital made representations based upon broker disclosure documents that the plaintiffs signed, but did not read. Although Union Capital undertook to assist the plaintiffs in making their loan applications, nothing in the documents indicates that the plaintiffs would be absolved from ensuring that the applications they signed were accurate with regard to their personal information. In addition, the documents relied on by the plaintiffs for this purpose include the documents required by 209 CMR 42.16, which include Union Capital's statement that it was not acting as the applicant's agent. (Memorandum in Opposition, pp. 65-66, citing Plaintiffs' Exhibit 28, subexhibit 3; Plaintiffs' Exhibit 30, subexhibits 13 and 14).

**D.     The Plaintiffs' Argument Regarding the Economic Loss Doctrine Fails.**

The plaintiffs have argued that their negligence claims are not barred by the economic loss doctrine because the alleged injury to their credit ratings constitutes harm to reputation. However, the authority cited, <u>Jorgensen v. Mass. Port Authority</u>, 905 F.2d 515 (1st Cir. 1990), does not support the assertion of such a claim. (Memorandum in Opposition, p. 36). The <u>Jorgensen</u> opinion does not support an assertion that the plaintiffs' damages here are reputational, nor does it support a claim that economic harm can be remedied in negligence when the claim for damages is solely for economic loss. In <u>Jorgensen</u>, The First Circuit Court of Appeals ruled that it was possible that Massachusetts courts might recognize economic harm to reputation as a component of damages in a negligence claim, and therefore it affirmed the trial court judgment on alternative grounds. <u>Jorgensen</u>, 905 F.2d at 522. Importantly, the claim for lost earning capacity due to reputational damages in Jorgensen was accompanied by claims of property loss and physical injury. <u>Id</u>. at 517. The economic loss doctrine bars claims in


negligence where the damages alleged are solely economic.  Aldrich v. ADD, Inc., 437 Mass. 213, 222 (2002).

      **E.    The Plaintiffs Have Failed to Present Evidence of Physical Manifestation of Emotional Distress.**

The plaintiffs have failed to provide evidence demonstrating physical manifestations of emotional distress sufficient to sustain any claim for negligent infliction of emotional distress.  Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993); Ball v. Wal-Mart, Inc., 102 F. Supp.2d 44, 52 (D.Mass.2000).  In particular, Mr. Smith has not identified any medical evidence or expert opinion to support his claims.  As discussed previously, the plaintiffs' reliance on expected testimony of a treating physician is inadmissible hearsay.  (Memorandum in Opposition, p. 35, citing Exhibit 44).

**III.    CONCLUSION**

Wherefore, for the foregoing reasons and those discussed in the original Memorandum in Support of this Motion, the defendant, Union Capital Mortgage Business Trust, respectfully requests that this Honorable Court grant Summary Judgment to Union Capital regarding all claims of both plaintiff Smith and plaintiff DaSilva.

                                              Respectfully submitted,

                                              /s/ Anthony R. Brighton  
                                              Douglas A. Robertson, B.B.O. No. 552315  
                                              Anthony R. Brighton, B.B.O. No. 660193  
                                              Attorneys for Defendant, Union Capital Mortgage Business Trust  
                                              MARTIN, MAGNUSON, MCCARTHY & KENNEY  
                                              101 Merrimac Street  
                                              Boston, MA  02114  
                                              (617) 227-3240



## CERTIFICATE OF SERVICE

      I, Anthony R. Brighton, attorney for Union Capital Mortgage Business Trust, hereby certify that on the 19th day of March, 2010, I served a copy of the above document to all counsel of record via electronic filing:

      /s/ Anthony R. Brighton _____
Douglas A. Robertson, B.B.O. No. 552315
Anthony R. Brighton, B.B.O. No. 660193
Attorneys for Defendant, Union Capital Mortgage Business Trust
MARTIN, MAGNUSON, MCCARTHY & KENNEY
101 Merrimac Street
Boston, MA  02114
(617) 227-3240