# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SMITH and MARIA DASILVA, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>DWIGHT JENKINS, CHERRY JENKINS, )<br>DOREA SMITH, ROBERT E. KELLEY, )<br>RKELLEY-LAW, P.C., LOUIS G. )<br>BERTUCCI, EB REAL ESTATE GROUP, )<br>INC., NEW ENGLAND MERCHANTS )<br>CORP., UNION CAPITAL MORTGAGE )<br>BUSINESS TRUST, MID CITY )<br>MORTGAGE, LLC, FREMONT )<br>INVESTMENT & LOAN and MERITAGE )<br>MORTGAGE CORPORATION, )<br>)<br>Defendants. ) | Civil Action No. 07-12067-RGS<br><br>**LEAVE TO FILE GRANTED<br>ON 03/16/2010** |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## BY DEFENDANT FREMONT REORGANIZING CORPORATION

Defendant Fremont Reorganizing Corporation f/k/a Fremont Investment & Loan ("Fremont") submits this reply brief in support of its Motion for Summary Judgment and supporting papers (the "Motion"; Docket Nos. 219-21). Plaintiff Robert Smith (the "Plaintiff" or "Mr. Smith") has failed to raise a genuine issue of material fact such that this Court should deny Fremont's Motion. As set forth in more detail below, there are no genuine issues of disputed fact concerning the remaining claims asserted against Fremont, and Fremont is entitled to judgment as a matter of law. This Court should grant Fremont's Motion and dismiss it from this action.

**I.	Mailing A Chapter 93A Demand Letter To The Wrong Address For Fremont Does Not Create A Dispute Of Material Fact That Should Be Sent To The Jury.**

The Plaintiff first contends that Fremont should not be awarded summary judgment on his M.G.L. c. 93A, § 9 ("Chapter 93A"), claim because his mailing of a demand letter to Fremont provides "prima facie" evidence that it was received by Fremont. See Plaintiffs' Consolidated Opposition to the Motions for Summary Judgment (the "Opposition Brief"; Docket No. 228) at 38. The Opposition Brief does not dispute that, as a matter of law, Section 9 of Chapter 93A requires the demand letter actually to be received by the addressee. Rather, the Plaintiff argues only that he is entitled to a presumption that the demand letter was received by Fremont merely because a letter was mailed. See id.

This argument is an attempt to invoke the benefits of the so-called "mailbox" rule, without directly arguing so.[1] In any event, the Plaintiff here is not entitled to an inference that the Chapter 93A demand letter was received by Fremont because the "mailbox" rule has a specific requirement that the letter must be <u>properly addressed</u>. Thus, in order for the "mailbox" rule to apply, a letter or other document must be properly addressed and deposited into the United States mail in order to be deemed received by the addressee. See University Emergency Medicine Found. v. Rapier Invests., Ltd., 197 F.3d 18, 23 (1st Cir. 1999) ("If, however, [mailbox rule proponent] directed its otherwise timely notice of termination to the *wrong address* and there was no delivery, [it] would lose the benefit of the mailbox rule.") (emphasis in original); Hoefs v. CACV of Colorado, LLC, 365 F. Supp. 2d 69, 72-73 (D. Mass. 2005); Tobin v. Taintor, 229 Mass. 174, 176 (1918) ("The depositing in the mail . . . of a letter <u>properly addressed</u>, with the postage prepaid, is prima facie evidence that the defendant received it. It is a presumption of

---

[1] Indeed, the two decisions that the Opposition Brief seeks to rely upon for the "mailbox" rule are either incorrect or incomplete in their citation form; thus, Fremont's counsel was unable to locate any published court decisions with those citations or party names.

fact grounded on the probability that the officers of the government will do their duty.") (emphasis added).

Here, it is absolutely undisputed that Plaintiff's Chapter 93A demand letter was not properly addressed when it was mailed to Fremont. See Ex. 11 to Opposition Brief at Ex. A, p. 1 (Docket No. 228-12; copy of Plaintiff's demand letter addressed to Fremont and other recipients); Affidavit of Peggy Cansdale (the "Cansdale Aff."), Ex. F to the Concise Statement of Undisputed Facts in Support of Motion of Fremont for Summary Judgment ("Fremont's Fact Statement"), at ¶ 2 (Docket No. 221-7). Indeed, the street address for Fremont to which the letter was addressed and mailed by the Plaintiff was approximately 2,500 numbers different than the correct street address for Fremont at the time. See id. (Fremont's correct street address was "2727" East Imperial Highway, while Plaintiff's demand letter was mailed to "272" East Imperial Highway). Moreover, Fremont's employee in charge of reviewing the files related to the Plaintiff's mortgage loans has testified, unrebutted, that its files do not contain a copy of the demand letter. See Cansdale Aff., Ex. F to Fremont's Fact Statement, at ¶ 3 (Docket No. 221-7). Finally, if the demand letter had been received by Fremont's mail room, even with the incorrect street address on the envelope, it would have been accepted by Fremont and routed to the proper department for review and response. See Affidavit of Angel Juarez, Ex. G to Fremont's Fact Statement, at ¶ 3 (Docket No. 221-8).

Thus, because Mr. Smith's demand letter was not properly addressed to Fremont at its correct street address when it was mailed, the Plaintiff is not entitled to a presumption of receipt from application of the "mailbox" rule. See University Emergency, 197 F.3d at 23; Hoefs, 365 F. Supp.2d at 73 (when applicable, the "mailbox" rule provides only a rebuttable presumption of receipt). In short, an improperly addressed letter, such as the one at issue here, is not entitled to a

presumption of receipt under the "mailbox" rule -- or any presumption of receipt has been rebutted by Fremont. It is therefore undisputed, and not necessary for a jury determination, that Fremont never received Plaintiff's Chapter 93A demand letter.

The Plaintiff thus cannot establish a necessary element of his Chapter 93A claim asserted against Fremont in this case, namely the sending and receipt of a properly addressed Chapter 93A demand letter at least thirty days before filing suit. See M.G.L. c. 93A, § 9. Summary judgment should be granted to Fremont on Plaintiff's Chapter 93A claim.

II.     **There Is No Genuine Issue Of Material Fact As To Whether The Plaintiff Actually Received Fremont's Required Lender TILA Disclosures At The Mortgage Closing.**

In a particularly weak argument to revive his dying claim asserted against Fremont under the federal Truth-in-Lending Act, 15 U.S.C. § 1602 et seq. ("TILA") and its state counterpart, the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, § 1 et seq. (the "MCCCDA"),[2] the Plaintiff contends only that the mortgage closing was so "rushed" that a jury could find that he did not have sufficient time or opportunity to review Fremont's required lender TILA disclosures. See Opposition Brief at 90-91. It is particularly notable that in his Opposition Brief Mr. Smith does not dispute (1) that Fremont actually made all the required lender disclosures in connection with the purchase money mortgage loans he received; and (2) that Fremont's lender disclosures as filed in the summary judgment record are complete and complied with all legal requirements under TILA, the MCCCDA, and their implementing regulations. See id. at 90-92.

---

[2] The applicable provisions of TILA, the MCCCDA, and their implementing regulations are virtually identical, and the MCCCDA should be construed in accordance with federal law. In re Cohen, 1994 Bankr. LEXIS 2149, at *11 (Bankr. D. Mass. 1994) (citing Mayo v. Fin. Servs., Inc., 2 Mass. L. Rep. 269 (1994)). References and citations throughout this reply brief are made explicitly to TILA, and implicitly to MCCCDA, unless their corresponding provisions are materially different.

Rather, the sole basis upon which the Plaintiff seeks to have this Court deny Fremont's summary judgment motion on the TILA claim is that he may not have had a meaningful opportunity at the closing to review them at all -- and that he relied upon others that he trusted, specifically the closing attorney and real estate brokers, to ensure that his interests would be protected.  See id. at 91-92.  Not surprisingly, the Plaintiff does not cite to the governing statutes (TILA and the MCCCDA), their implementing regulations, or even a single published decision in which a court has held that a violation of TILA can be established under such circumstances.[3]

The reason that the Plaintiff cites no authority for his novel argument is that there is none.  There simply is no legally cognizable obligation on the part of a mortgage lender to take steps at the closing of its loan to ensure that the borrower actually takes the time to read and understand all the disclosures that are being made in connection with the mortgage loan.

Indeed, having a court impose such an implied obligation on the part of a lender such as Fremont would be directly contrary to TILA law as it has developed in the U.S. Court of Appeals for the First Circuit.  First Circuit and District of Massachusetts case law emphasizes that TILA disclosures must be evaluated using an objective, reasonable person standard -- not a subjective test.  See, e.g., Melfi, 568 F.3d at 312 ("Our test is whether any reasonable person, in reading the form provided in this case, would so understand it."); Bonney v. Washington Mutual Bank, 596 F. Supp.2d 173, 174 (D. Mass. 2009) ("The law in this district is consistent that merely technical violations of TILA that would not confuse a reasonably alert buyer cannot form the basis for a cause of action."); McKenna v. First Horizon Home Loan Corp., 537 F. Supp.2d 284, 290 (D. Mass. 2008) (evaluating TILA mortgage disclosures under "an objective standard"); Carye v.

---

[3] The only case cited in this argument section of the Opposition Brief, Melfi v. WMC Mortgage Corp., 568 F.2d 309 (1st Cir. 2009), does not provide any support for such an implied duty on the part of the lender to ensure that the borrower actually has or takes a sufficient time at the mortgage closing to fully read and understand all the lender's TILA disclosures.  Indeed, the court in Melfi upheld the entry of summary judgment for the lender that no TILA violation had occurred in the circumstances of that case.  Id. at 311-13.

Long Beach Mortgage Co., 470 F. Supp.2d 3, 9 & n.5 (D. Mass. 2007) ("An objective standard applies in evaluating TILA claims.").

Plaintiff's argument that his <u>subjective</u> reliance upon others at the mortgage closing because he did not have the capacity or attention span to ensure that the lender's TILA disclosures were sufficient -- in an attempt to create a jury question -- simply cannot succeed. Such a contention would require the jury to be charged with an instruction that it could consider the Plaintiff's subjective capacity, his reading level and/or his actual understanding of the TILA disclosures made by Fremont at and before the mortgage closing. Such a jury charge would be contrary to TILA law in the First Circuit, and would be grounds for reversal of any verdict for the Plaintiff on his TILA claim. Fremont is thus entitled to entry of summary judgment on the TILA claim.

**III.   There Is No Genuine Issue Of Material Fact As To Whether Fremont Breached Any Contractual Obligation Or Implied Covenant Of Good Faith Owed To Mr. Smith.**

In his final pages-long argument that more closely mirrors a diatribe than a legal brief, the Plaintiff contends that Fremont is not entitled to summary judgment on his breach of contract/implied covenant of good faith and fair dealing claim because it had an improper motive for making the mortgage loans to Mr. Smith -- that motive being its allegedly "inappropriately close" relationship with mortgage broker/defendant New England Merchants Corp. ("NEMCO") -- rather than basing approval of the mortgage loans on the Plaintiff's ability to repay. See Opposition Brief at 92-98. How any "inappropriately close" relationship between Fremont and one of the mortgage brokers that referred loans to it, even if such a label were factually correct, breached a contractual or implied covenant obligation to the Plaintiff is left unexplained.

Plaintiff's argument is based upon some implied fiduciary duty by Fremont owed to Mr. Smith in connection with the mortgage loan transaction. However, there is no fiduciary

6

relationship between a bank and a borrower.  See Famm Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 102 (1st Cir. 2009) ("the relationship between a lender and a borrower, without more, does not establish a fiduciary relationship"); Superior Glass Co. v. First Bristol County Nat'l Bank, 380 Mass. 829, 832-33 (1980); Broomfield v. Kosow, 349 Mass. 749, 755 (1965).  The relationship between Mr. Smith and Fremont was solely one of borrower/debtor and lender/creditor.

The flaw with Plaintiff's argument is that it skips many steps in trying to create some contractual obligations by Fremont to ensure that Mr. Smith actually got to enjoy the benefits of home ownership -- such as living in the house that he purchased.  That was never Fremont's obligation.  Tellingly, the Opposition Brief contains absolutely no citation or reference to the loan documents that the Plaintiff signed in connection with his mortgage loans.  The written documents between the parties could be the only source of any such contractual obligations that were allegedly breached.

Lastly, the Plaintiff faults Fremont for relying on information provided by NEMCO or others in its underwriting and approval process for his mortgage loans.  How any reliance by Fremont on information provided by others during its underwriting and approval process breached a contractual obligation or actually harmed the Plaintiff is, once again, left unexplained.  What the Plaintiff is in essence arguing is that he never should have been approved for the purchase money mortgage loans at all by Fremont.  But there is no contractual duty or even implied duty of good faith and fair dealing owed by a mortgage lender to a prospective borrower to deny him or her credit even if the application information later turns out to be false or fabricated.  The Plaintiff simply has no legal authority for such a novel claim -- because no such claim is cognizable under the law.

**CONCLUSION**

For all the reasons set forth above and in Fremont's Motion and supporting memorandum, the Plaintiff's claims for damages under TILA (and its Massachusetts state counterpart), Chapter 93A, Section 9, and alleging a breach of contract and/or the covenant of good faith and fair dealing should be dismissed because there are no material issues of disputed fact and Fremont is entitled to judgment as a matter of law.  Fremont therefore respectfully requests that this Court enter judgment for Fremont, and against the Plaintiff, on Counts III, V, VI and VIII of the First Amended Complaint.

                FREMONT REORGANIZING CORP.
                f/k/a FREMONT INVESTMENT & LOAN,
                By its Attorneys,

                */s/ J. Patrick Kennedy*
                Donn A. Randall, BBO# 631590
                J. Patrick Kennedy, BBO# 565778
                Bulkley, Richardson and Gelinas, LLP
                98 North Washington Street, Suite 500
                Post Office Box 9750
                Boston, MA  02114-0016
                (617) 368-2500
                Email: pkennedy@bulkley.com

Dated:  March 22, 2010

**CERTIFICATE OF SERVICE**

I, J. Patrick Kennedy, hereby certify that a true and correct copy of the foregoing document was served on all parties or counsel of record via this Court's CM/ECF electronic filing system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on this 22nd day of March, 2010.

                */s/ J. Patrick Kennedy*
                J. Patrick Kennedy

925489-1