UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SMITH and MARIA DASILVA, <br><br> Plaintiffs, <br> v. <br><br> DWIGHT JENKINS, CHERRY JENKINS, DOREA SMITH, ROBERT E. KELLEY, R.KELLY-LAW P.C., LOUSE G. BERTUCCI, EB REAL ESTATE GROUP, INC., DORCHESTER REAL ESTATE, NEW ENGLAND MERCHANTS CORP., UNION CAPITAL MORTGAGE BUSINESS TRUST, MID CITY MORTGAGE, LLC, FREMONT INVESTMENT AND LOAN and MERITAGE MORTGAGE CORPORATION, <br><br> Defendants. | **Case No. 1:07-cv-12067 RGS** <br><br><br> **SPECIAL VERDICT QUESTIONS OF DEFENDANT NEW ENGLAND MERCHANTS CORP.** |

Pursuant to the Order Setting Civil Case for Jury Trial entered Aug. 26, 2010, Defendant New England Merchants' Corp. ("NEMCO") hereby requests that the following special verdict questions be presented to the jury.

## FRAUD (COUNT I)

1. Did Rachel Noyes insert false information on Mr. Smith's Mortgage Loan Application pertaining to the Dighton Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 2; if you answered "No," skip to next claim.

2. Did Mr. Smith rely on the false information inserted by Rachel Noyes on the Mortgage Loan Application pertaining to the Dighton Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 3; if you answered "No," skip to next claim.

3. Did Rachel Noyes intend for Mr. Smith to Smith rely on the false information inserted by Rachel Noyes on the Mortgage Loan Application pertaining to the Dighton Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 4; if you answered "No," skip to next claim.

4. Was the false information inserted by Rachel Noyes on Mr. Smith's Mortgage Loan Application one of the principal causes that resulted in Mr. Smith purchasing and mortgaging the Dighton Property?

    ___  ___
    Yes  No

   If you answered "Yes," proceed to Question Number 5; if you answered "No," skip to next claim.

5. Did Rachel Noyes intend for Mr. Smith to Smith rely on the false information inserted by Rachel Noyes on the Mortgage Loan Application pertaining to the Dighton Property?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 6; if you answered "No," skip to next claim.

6. At the time that Mr. Smith signed his Mortgage Loan Application pertaining to the Dighton Property, did Rachel Noyes know that Mr. Smith was illiterate or schizophrenic?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 7; if you answered "No," skip to next claim.

7. As a result of Rachel Noyes inserting false information on Mr. Smith's Mortgage Loan Application pertaining to the Dighton Property, did Mr. Smith suffer any damages?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 8; if you answered "No," skip to the next claim.

8. What is the dollar value of the economic losses that Mr. Smith suffered as a result of Rachel Noyes inserting false information on Mr. Smith's Mortgage Loan Application pertaining to the Dighton Property.

   $_____

   Please answer the next question.

9. Was Rachel Noyes an employee or an independent contractor of New England Merchants Corp?

___ Employee   ___ Independent Contractor

If you answered "Independent Contractor," proceed to Question Number 10; if you answered "Employee," skip to the next claim.

10. In connection with Rachel Noyes' actions concerning Mr. Smith, did New England Merchants Corp. retain the right to control her work?

___ Yes   ___ No

If you answered "Yes," proceed to Question Number 11; if you answered "No," skip to the next claim.

11. In connection with Rachel Noyes' actions concerning Mr. Smith, was Rachel Noyes acting with the actual authority of New England Merchants Corp.?

___ Yes   ___ No

If you answered "Yes," proceed to Question Number 12; if you answered "No," skip to the next claim.

12. In connection with Rachel Noyes' actions concerning Mr. Smith, was Rachel Noyes acting with the apparent authority of New England Merchants Corp.?

___ Yes   ___ No

If you answered "Yes," proceed to Question Number 13; if you answered "No," skip to next claim.

13. In purchasing and mortgaging the Dighton Property, did Mr. Smith rely on New England

Merchant Corp.'s manifestation that Rachel Noyes had apparent authority to act on its behalf

___  ___
Yes   No

If you answered "Yes," proceed to Question Number 14; if you answered "No," skip to next claim.

Go on to the next claim.

## BREACH OF FIDUCIARY DUTY (COUNT IX)

1. Did Mr. Smith repose his trust and confidence in New England Merchants Corp. so that he was dependent on New England Merchants Corp. in business affairs and property matters concerning the Dighton Property?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 2; if you answered "No," skip to the next claim.

2. Prior to the closing on the Dighton Property, did New England Merchants Corp. know that Mr. Smith had reposed his trust and confidence in New England Merchants Corp. so that he was dependent on New England Merchants Corp. in business affairs and property matters concerning the Dighton Property?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 3; if you answered "No," skip to the next claim.

3. Prior to the closing on the Dighton Property, did New England Merchants Corp. know that Mr. Smith was a novice at real estate investment or did not have the capacity to understand the underlying transaction in which Mr. Smith purchased and mortgaged the Dighton Property?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 4; if you answered "No," skip to the next claim.

4. As a result of reposing his trust and confidence in New England Merchants Corp., did Mr. Smith suffer any damages as a result of his purchase and mortgaging of the Dighton Property?

   ___ ___
   Yes  No

If you answered "Yes," proceed to Question Number 5; if you answered "No," skip to the next claim.

5. What is the dollar value of the economic losses that Mr. Smith suffered as a result of reposing his trust and confidence in New England Merchants Corp. as a result of his purchase and mortgaging of the Dighton Property.

    $_____

Go on to the next claim.

## CIVIL CONSPIRACY (COUNT X)

1. Did Mr. Jenkins defraud Mr. Smith into taking out loans and purchasing the Dighton Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 2; if you answered "No," skip to the next claim.

2. Did Mr. Jenkins and New England Merchants Corp. have an agreement or a common design to defraud Mr. Smith into taking out loans and purchasing the Whitman Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 3; if you answered "No," skip to Question No. 4.

3. Did New England Merchants Corp. engage in a fraudulent act in concert with Mr. Jenkins or in furtherance of their agreement or common design to defraud Mr. Smith into taking out loans and purchasing the Dighton Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 7; if you answered "No," proceed to Question No. 4.

4. Did New England Merchants Corp. know that Mr. Jenkins was defrauding Mr. Smith into taking out loans and purchasing the Dighton Property?

    ___  ___
    Yes  No

    If you answered "Yes," proceed to Question Number 5; if you answered "No," skip to the next claim.

5. Did New England Merchants Corp. intend to substantially assist or encourage Mr. Jenkins to defraud Mr. Smith into taking out loans and purchasing the Dighton Property?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 6; if you answered "No," skip to the next claim.

6. Did New England Merchants Corp. give assistance or encouragement to Mr. Jenkins that was a substantial factor in causing Mr. Jenkins' defrauding Mr. Smith into taking out loans and purchasing the Dighton Property?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 7; if you answered "No," skip to the next claim.

7. Did the conspiracy between Mr. Jenkins and New England Merchants Corp. to defraud Mr. Smith into taking out loans and purchasing the Dighton Property cause Mr. Smith to suffer economic losses?

   ___ ___
   Yes  No

   If you answered "Yes," proceed to Question Number 8; if you answered "No," skip to the next claim.

8. What is the dollar value of the economic losses that Mr. Jenkins and New England Merchants Corp. caused Mr. Smith to suffer by defrauding him into taking out loans and purchasing the Dighton Property.

   $_____

Go on to the next claim.

NEW ENGLAND MERCHANTS CORP.,
Defendant,
By its attorney,

/s/ Michael J. Markoff
Michael J. Markoff BBO #547590
P.O. Box 212
Falmouth, MA 02541
(508) 548-5500

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2010 I served a true and correct copy of the foregoing document was served upon all counsel of record via this Court's CM/ECF system, or if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid.

_____
Michael J. Markoff