UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
ROBERT SMITH and MARIA DASILVA,            )
                                           )
        Plaintiffs                         )
                                           )
v.                                         )
                                           )
DWIGHT JENKINS, CHERRY JENKINS,            )
DOREA SMITH, ROBERT E. KELLEY,             )
RKELLEY-LAW, P.C., LOUIS G. BERTUCCI,      )      Case No. 1:07-cv-12067-RSG
EB REAL ESTATE GROUP, INC.,                )
DORCHESTER REAL ESTATE, INC.,              )
NEW ENGLAND MERCHANTS CORP,                )
UNION CAPITAL MORTGAGE BUSINESS            )
TRUST, MID CITY MORTGAGE, LLC,             )
FREMONT INVESTMENT AND LOAN and            )
MERITAGE MORTGAGE CORPORATION,             )
                                           )
        Defendants                         )
_____)

**PLAINTIFFS' PRE-TRIAL MEMORANDUM IN COMPLIANCE WITH COURT
ORDER RESETTING CIVIL CASE FOR JURY TRIAL DATED AUGUST 26, 2010.**

1.      **Stipulated or Admitted Facts**

        None.


2.      **Plaintiffs Witnesses**


        Plaintiffs intend to call at trial the following witnesses:

1.      Robert Smith (30 Edgewood Street #2, Roxbury, MA 02119-2123)
2.      Maria Dasilva (40 Reservoir Street #507, Brockton, MA 02301)
3.      Dwight Jenkins (50 Stacey Street, Randolph, MA)
4.      Dorea Smith (50 Stacey Street, Randolph, MA)
5.      Cherry Jenkins (36 Milton Avenue Dorchester Center, MA 02124)
6.      Meredith Macharia (25 Appleton St., Arlington, MA 02476)
7.      Daniel Montrond (73 Adams Street, Boston, MA 02122-1716)
8.      Terrae Gethers (298 Green Street, Brockton, MA)
9.      Joao Gomes (247 Blue Hill Ave, Milton, MA 02186)
10.     Daniel Davis (35 Williams Avenue, Hyde Park, MA 02137)

11. Jeremy Manzay (1208 Pacific St. Apt. 4E Brooklyn, NY 11116);
12. Brooke Corbin (105 Center Street, Quincy, MA);
13. Keeper of the records/designee most knowledgeable of EB Real Estate Group, Inc. (730 Broadway Somerville, MA 02144)
14. Mark Warren (730 Broadway Somerville, MA 02144)
15. James Adamos (531 Walpole Street, Norwood, Mass)
16. John K. Richman (45 Braintree Hill Park, Suite 400 Braintree, Massachusetts 02184)
17. George Fabrizio (45 Braintree Hill Park, Suite 400 Braintree, Massachusetts 02184)
18. Linda Bryant (45 Braintree Hill Park, Suite 400 Braintree, Massachusetts 02184)
19. Keeper of the Records/ designee most knowledgeable of Mid-City Mortgage, LLC (15 Joanne Road, Stoughton, Massachusetts 02072)
20. Louis Avila (15 Joanne Road, Stoughton, Massachusetts 02072)
21. Ann Silver (15 Joanne Road, Stoughton, Massachusetts 02072)
22. Robert Kelley (Braintree Hill Office Park 1 Rockdale Street Suite 200 Braintree, Massachusetts 02184)
23. Keeper of the Records/designee most knowledgeable of RKelley-Law, P.C. (Braintree Hill Office Park, 1 Rockdale Street Suite 200, Braintree, Massachusetts 02184)
24. Louis Bertucci (1245 Hancock Street, Suite #2, Quincy, Massachusetts 02169-4320)
25. Philip J. Goodwin (199 Carl Road, Raynham, MA)
26. Keeper of the records/ designee most knowledgable New England Merchants Corporation (1173 Massachusetts Avenue, Arlington Heights, Massachusetts 02476)
27. Phil Godutti (17 Paul Revere Road, Arlington Heights)
28. Keeper of the records /designee most knowledgeable of Dorchester Real Estate, Inc. (1544 Dorchester Avenue, Dorchester, MA 02122);
29. Karin Cahill of Dorchester Real Estate, Inc., 1544 Dorchester Avenue, Dorchester, MA;
30. Keeper of the Records/ designee most knowledgeable of Fremont Investment and Loan (5404 Cypress Center Drive, Suite 300 Tampa, FL 33609)
31. Peggy Cansdale (c/o 5404 Cypress Center Drive, Suite 300 Tampa, FL 33609)
32. Eric Archambault (5 Old Colony Road, Mansfield, MA and 886 South Street, Wrentham, MA)
33. Keeper of the records/ designee most knowledgeable for the Multiple Listing Service in Massachusetts
34. Gloria Smith McCray (109 Florida St. #3 Dorchester, MA 02124)
35. Dr. Elvin Hernandez, City Hospital also known as Boston University Medical Center
36. Keeper of the Records of the Veterans Administration Medical Center
37. Massachusetts Commissioner of Banks (1000 Washington Street, 10th Floor, Boston, MA 02118)
38. Keeper of records of Fleet Bank and Bank of America
39. Lauren Boardman (61 Finlay Road, Orleans, MA)
40. John Nelson (c/o Nelson & Roach, P.C., 39 Revere Road, Quincy, MA)
41. Stanley Smith (c/o Smith Economics Group, Inc., 1165 North Clark Street, Chicago, IL 60610)
42. Carl Leppo of Leppo & Leppo, 7 Christy Drive #1, Brockton, MA
43. Keeper of the Record for People's Choice Bank
44. Aderito Andrade of 9 Lafield St. #1, Dorchester, MA 02122
45. Nicholas Depina, 17 Kahler Avenue, Milton, MA 02186-1519

3.     **Deposition pages and interrogatory responses**

(A)     Plaintiffs seek to introduce the following excerpts from the deposition of Dwight

Jenkins dated November 28, 2006 in the consolidated state court cases of <u>Macharia v. E.B. Real</u>

<u>Estate Group, et al.</u> and <u>Montrond v. E.B. Real Estate Group, et al.</u>

p. 6 ln 17-p.10 ln 19
p.11 ln. 21-p.22 ln 24
p.24 ln 13  p. 37 ln. 18
p. 41. ln 2- 12
p.42 ln. 17-48 ln 17
p. 49 ln. 13-58 ln. 8
p. 56 ln 14- p. 58 ln 19
60 ln. 7-p.63 ln 17
p. 67 ln 1-p. 67 ln. 17
p.72 p. ln18-p. 86 p.8
p.87 ln. 10-p.92 ln 20
p. 93 ln 10-p. 114 ln. 5
p. 114 ln 13-p. 115 ln. 10
118 ln. 2-p. 118 ln 17
p.119 ln 7-p. 119 ln 18
p.120 ln.2- 124 ln 10
P .126 ln 10-p.127 ln. 13
p. 128 ln 17 – p/.133 ln. 20
p.134 ln 20-p. 139 ln. 24
p. 141 ln. 20-142 ln 18
p. 143 ln 21-p.144 ln. 15
p. 173 ln. 4- p.175 ln.5
p. 176 ln. 1-175 1
p.181 ln 17-p.20
p. 188 ln. 24-p.189 ln.3
p. 192 ln 8-p. 195 ln. 3
p.209 ln 11-p.210 ln 18
p.212 ln.22-213 ln. 14
p.216 ln. 10-p.217 ln.10
p.222 ln.2-ln.3
p.227. ln.24-p.250 ln. 10
p.225 ln. 10-p.257 ln.2
p.260 ln. 23-p. 262 ln.3
p.262 ln. 21-p.263 ln 16
p. 264 ln. 15-p.265 ln. 23
p.267 ln. 3-p.271 ln. 1
p. 272 ln. 14-23

p.274 ln 8-p.275 ln. 20.

Defendant Fremont (and other defendants) object to these excerpts and to the introduction of deposition transcripts taken in the state court cases.  Counsel for Fremont asserts:

Page 83, lines 5-14:  References evidence excluded by court order on motion in limine; relevancy; lack of foundation; vague; ambiguous

Page 89, line 24-Page 95, line 10:  References evidence excluded by court order on motion in limine; relevancy; lack of foundation; vague ambiguous

Page 102, lines 5-7:  Relevancy

Page 112 [sic?], line 11-Page 150, line 15:  Relevancy; hearsay; lack of foundation; references evidence excluded by court order on motion in limine

Page 157, line 18-Page 158, line 20:  Relevancy; references evidence excluded by court order on motion in limine

Page 163, lines 1-19:  Relevancy; references evidence excluded by court order on motion in limine

Page 164, line 15-Page 170, line 2:  Relevancy; references evidence excluded by court order on motion in limine

Page 193, line14-Page 197, line 6:  Relevancy; hearsay

Page 206, lines 2-12:  Relevancy; undue prejudice

(B)      Plaintiffs also seek to introduce the following excerpts from the deposition of

Dwight Jenkins dated November 16, 2009 in this instant case.

p.10 10-p.28 ln.1
p.54 ln.22-p.56 ln.1
p.58 ln.13-p.59 ln.2
p.60 ln. 9-15
p.61 ln.17-24
p.67 ln. 10-21
p.73 ln. 10-p.77 ln. 4
p.83 ln. 5-14
p.89 ln 24-p.95 ln. 10
p.95 ln. 21-96 ln. 12
p. 96 ln 20-p.97 ln. 12
p. 98 ln. 8-101 ln. 17

p.102 ln 5-7.
p. 108 ln. 19-22
p.109 ln. 11-16.
p.121 ln. 19-p.122 ln.8
p.112-ln 11-p.150 ln. 15
p.157 ln 18- p.158 ln20
p.163 ln.1-19
p.164 ln. 15- p.170 ln 2    .
p. 174 ln.7-184 ln.5
p.188 ln. p.189 ln. 11
p.190 ln 23-p.191 ln. 16
p.193 ln. 14-p.197 ln. 6
p.198 ln.16-p.200 ln. 15
p.201 ln.1-p.203 ln 13
p.206 ln.2-12
p. 208 ln.7-p.  209 ln. 10
p.213 ln. 4-23.

Defendant Fremont (and other defendants) object to the introduction of this transcript.

Fremont's counsel asserts: "Signature/Fremont objects to the introduction of testimony from any

deposition transcript taken in a case in which Fremont was not a party, was not provided

with notice, and did not have an opportunity to attend and cross-examine the witness.  These

include your designations of a deposition of Dwight Jenkins dated November 28, 2006 (and any

Jenkins transcript other than the deposition taken in this case on November 16, 2009, for which

Signature/Fremont previously provided you with specific objections to your designations); any

depositions of Cherry Jenkins (including the deposition dated October 30, 2006); and any

depositions of Dorea Smith.  Signature/Fremont objects to the introduction of testimony from the

deposition of P.J. Goodwin on the ground that it has not been established that he is unavailable to

testify at the trial in this action; Fremont also objects to introduction of the deposition exhibits."

Further, Mid-City's counsel objects, asserting: Pursuant to Paragraph 3 of the Court's

Amended Order Setting Civil Case for Jury Trial, Defendant Mid City Mortgage, LLC ("Mid City")

hereby objects to the following portions of the transcript of the Deposition of Dwight Jenkins, dated

November 16, 2009, that Plaintiffs intend to offer at trial:

| DESIGNATION | MID CITY'S OBJECTION |
|---|---|
| p.10 10-p.28 ln.1 | 13:22 – 15:7, 15:14-20: objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.54 ln.22-p.56 ln.1 | 55:15 - 56:1: Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.67 ln. 10-21 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.73 ln. 10-p.77 ln. 4 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.83 ln. 5-14 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.89 ln 24-p.95 ln. 10 | 89:23 – 93:3, 94:7 – 95:10: Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.95 ln. 21-96 ln. 12 | Objection, subject to Order granting defendants' MIL re |

| | |
|---|---|
| | other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p. 96 ln 20-p.97 ln. 12 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p. 98 ln. 8-101 ln. 17 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.102 ln 5-7. | Objection, FRE 402, 403 |
| p. 108 ln. 19-22 | Objection, FRE 402, 403 |
| p.109 ln. 11-16. | Objection, FRE 402, 403 |
| p.121 ln. 19-p.122 ln.8 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.112-ln 11-p.150 ln. 15 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.157 ln 18- p.158 ln20 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.163 ln.1-19 | Objection, subject to Order |

| | |
|---|---|
| | granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.164 ln. 15- p.170 ln 2 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p. 174 ln.7-184 ln.5 | 180:23 – 184:5:  Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.188 ln. p.189 ln. 11 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.190 ln 23-p.191 ln. 16 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.193 ln. 14-p.197 ln. 6 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |
| p.206 ln.2-12 | Objection, FRE 402, 403, 404(b) |

(C) Plaintiffs intend to introduce deposition excerpts from Cherry Jenkins' deposition

October 30, 2006 in the Macharia v. Jenkins case:

p. 8, ln 4 – 12
p. 10 ln 16 – p. 14, ln. 7

p. 80 ln. 10 – 24
p. 92 ln. 4 – 23.

Defendant Mid City (and other defendants) object to the introduction of Cherry Jenkins'

deposition.  Counsel for Mid City asserts:  Pursuant to Paragraph 3 of the Court's Amended

Order Setting Civil Case for Jury Trial, Defendant Mid City Mortgage, LLC ("Mid City") hereby

objects to the following portions of the transcript of the Deposition of Cherry Ann Jenkins, dated

October 30, 2006, that Plaintiffs intend to offer at trial:

| DESIGNATION | MID CITY'S OBJECTION |
|---|---|
| p. 8, ln 4-12 | Objection, FRE 402, 403 |
| p. 10 ln 16 – p. 14, ln. 7 | Objection, FRE 402, 403 |
| p. 80 ln. 10-24 | Objection, FRE 402, 403 |
| p. 92 ln. 4 – 23 | Objection, subject to Order granting defendants' MIL re other straw buyers (Docket No. 297); FRE 402, 403, 404(b) |

Plaintiffs submit to this Court that the depositions of Jenkins have been conducted

interchangeably over the two state court cases and this case.  In several instances, parties to this

case have participated in depositions in the state actions.  Jenkins has been cross examined in this

case subsequent to the state court matters.

Plaintiffs reserve the right to adopt the designations by any other party to these proceedings.

(D)    Plaintiffs intend to introduce the transcript of P.J. Goodwin and the exhibits.

Defendant Union Capital (and other defendants) object to the introduction of this

transcript.  Counsel for Union Capital asserts: "The Court's August 26, 2010 Order at Para. No. 3

required a page and line designation, not a wholesale designation.  The Court's Order does not allow for lumping in deposition exhibits as a way of getting them into evidence.  Introducing the entire transcript is redundant, duplicative, confusing to the jury, unfairly prejudicial to Union Capital and the co-defendants, and for the reasons stated in Pleading No. 283, inadmissible as to the defendant, Union Capital Mortgage Business Trust, without specific foundation regarding Mr. Goodwin's reasons for asserting his Fifth Amendment privilege."

(E)     Plaintiffs intend to introduce the interrogatory responses of Meritage Mortgage Corporation.

(F)     Plaintiffs intend to introduce EB Real Estate Group's response to plaintiffs' interrogatory #22 dated June 27, 2008.

(G)     Plaintiffs intend to introduce Dwight Jenkins' responses to plaintiffs' interrogatories #4, #6, #11 and #12 dated July 23, 2008.

**6.     Motions in Limine**

None.  Plaintiffs reserve their rights to supplement.

**7.     Trial Memorandum addressing those issues as to which there are foreseeable disputes concerning issues of law**

None.  Plaintiffs reserve their rights to supplement.

**8.     Probable length of trial**

This Court has ruled that there will be 20 hours of testimony.  Plaintiffs believe that an additional three hours of testimony will be required to present their case.

**9.     Requests for jury instructions with citations to supporting authority**

Preponderance Of The Evidence

The plaintiff in this case has the burden of proving every element of his or her claim by a preponderance of the evidence. This means that the facts, as the plaintiff alleges them, are more likely true than not true. Imagine a scale. Before you hear the evidence, the scale is equally weighted. As you hear the evidence, however, that scale may tip in favor of one party or the other. If, and only if, you find that the plaintiff has presented evidence that tips the scale in his or her favor, even if slightly, you must find for the plaintiff. But if, after you hear all of the evidence, the scale remains equally weighted or tips in the defendant's favor, you must find for the defendant. Rubenstein v. Royal Ins. Co. of Am., 44 Mass. App. Ct. 842, 846, 694 N.E.2d 381, 384 (1998).

Corporate Liability

A corporation acquires knowledge from all its agents, servants and employees. As such, the corporate defendants are presumed to know that which all of their employees and agents know, and all the information that they gained within the scope of their employment. Bockser v. Dorchester Mt. Fire Ins. Co., 327 Mass. 473, 478 (1951); Union Old Lowell National Bank v. Paine, 318 Mass. 313, 323-324 (1945).

The corporate defendants are chargeable with the combined knowledge which all of their employees and agents acquired within the scope of their authority, together with legitimate inferences from all the evidence. Bockser, 327 Mass. at 478; Union Old Lowell National Bank, 318 Mass. at 323-324.

Corporations such as the corporate defendants can only act through the individuals who work for them. It is the law in Massachusetts that a corporation is liable for the

wrongdoing of its agents and employees acting within the scope of their authority. Douglas v. Holyoke Machine, Inc., 233 Mass. 573 (1919).

"If the act of the servant is performed in the course of doing his master's work, in carrying out the master's directions, or in accomplishing his master's business, then the Master will be answerable whether the wrong be merely negligent, or wanton and reckless." Id.; see also DiLorenzo v. Yellow Cab of Somerville, Inc., 359 Mass. 751, 752 (1971).

Where an officer of a corporation has apparent authority to enter into an agreement on behalf of his corporation, his agreement is binding on the corporation.  Neilson v. Malcolm Kenneth Co., 303 Mass. 437, 441 (1939) (adopting Restatement view on apparent authority); Kanavos v. Hancock Bank & Trust Co., 14 Mass. App. Ct. 326, 331 (1982); Restatement (Second) Agency, § 27 (1957).

Individual Responsibility

It is well settled that an individual is liable for his own negligence even though he may be acting on behalf of a corporation. Refrigeration Discount Corp. v. Catino, 330 Mass. 230 (1953); LaClaire v. Silberline Mfg. Co. Inc., 379 Mass. 21, 30-31 (1979); Naderv. Citron, 372 Mass. 96,102 (1977).

"A corporate officer is liable for torts in which he personally participated whether or not he was acting within the scope of his authority." LaClaire, 379 Mass. at 29.

"A ... person controlling a corporation and directing, or participating actively in ... its operations may become subject to civil … liability on principles of agency or of

causation…. This may sometimes occur where corporations are formed, or availed of, to carry out the objectives and purposes of the ... persons controlling them." <u>My Bread Baking Co. v. Cumberland Farms. Inc.</u>, 353 Mass. 614, 618 (l968); <u>see</u> <u>also</u> <u>Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.</u>, 764 F. 2d 928, 938 (1st Cir. 1985).

## Attorney's Conduct

In the course of representing a client a lawyer shall not knowingly: make a false statement of material fact or law to a third person. Mass. R. Prof. Cond. 4.1(a).

An attorney-client relationship can be implied from the conduct of the parties and need not be evidenced by an express contract.  <u>Page v. Frazier</u>, 388 Mass. 55, 62, 445 N.E. 2nd 148 (1983).

## Real Estate Broker Regulations

Massachusetts regulates the activities of real estate brokers. Brokers must adhere to these regulations. These regulations include the following. (254 CMR 3.00, <u>et</u> <u>seq.</u>)

No fee, commission or other valuable consideration shall be paid to or shared by an owner's managing agent or its employees as the result of the sale of real estate for the owner unless such agent and its employees are licensed brokers or salespersons

A broker shall not advertise in any way that is false or misleading

A broker or salesperson must act honestly and ethically and in the best interests of their client at all times.

A broker or salesperson shall not buy, sell, rent, mortgage, or acquire any interest in, or represent a client in the buying, selling, renting or exchange of real property in which the broker or salesperson or his/her kin has a personal financial interest unless the broker or salesperson shall fully disclose in writing to all parties to the transaction the nature of his/her interest and unless the parties shall provide the broker or salesperson with written acknowledgment of such disclosure.

No broker or salesperson shall advise against the use of an attorney in any real property transaction.

A real estate salesperson must be employed or affiliated with a licensed real estate broker for a minimum of twenty-five hours per calendar week under the supervision of such broker. 254 CMR 2.00 (6)(b).

Inferences From an Assertion of the Fifth Amendment

No person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. However, while one may assert their right against self-incrimination, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).

Furthermore, you may draw reasonable inferences against a corporate entity when its officers (such as loan officers) or managers refuse to testify on behalf of the entity on that ground. Shafnacker v. Raymond James & Assoc., Inc., 425 Mass. 724, 735 (1997).

Fremont

In <u>Commonwealth v. Fremont Investment and Loan</u>, 452 Mass. 733 (2008) ("Attorney General's suit"), the Supreme Judicial Court of Massachusetts has ruled that the lending practices of Fremont such as the type made to Robert Smith are unfair and violative of 93A. The SJC has found that the loans made by Fremont, the material features of which were identical to the loans made in this case, were presumptively unfair. <u>Id.</u>, at 740.

<u>Fraud</u>

As you have now heard, the plaintiffs claim that the defendants made fraudulent misrepresentations. To establish that the defendant committed fraud, the plaintiff must prove the following by a preponderance of the evidence: (1) The defendant made a false statement to the plaintiff about a material fact. A fact is material if a reasonable person under all the circumstances would consider it important in determining how to act in the transaction at issue. (2) When the defendant made the statement, he or she knew that the statement was false or willfully disregarded the statement's truth or falsity. (3) The defendant made the false statement with the intent that the plaintiff rely on that statement in determining how to act in the transaction at issue. (4) The plaintiff actually relied on the defendant's false statement when he or she acted, and the plaintiff's reliance was reasonable under the circumstances. (5) The plaintiff was harmed as a result of his or her reliance on the defendant's statement. <u>Powell v. Rasmussen</u>, 355 Mass. 117, 118–19, 243 N.E.2d 167, 168–69 (1969); <u>Zimmerman v. Kent</u>, 31 Mass. App. Ct. 72, 78, 575 N.E.2d 70, 74 (1991).

If the plaintiff has proven each of these elements by a preponderance of the evidence, you must find for the plaintiff and determine the damages to award the plaintiff. But if the plaintiff

has failed to carry his or her burden to prove any one or more of the elements, your verdict must be for the defendant.

The defendant generally cannot be liable for fraud if he or she remains silent and chooses not to speak on a matter. But if the defendant is in a position of trust and confidence with the plaintiff, the defendant must tell the plaintiff all facts that are important to the transaction at issue. In addition, the defendant can be liable for failing to speak if he or she knows of a misrepresentation made on his or her behalf by a third party and the defendant fails to correct it. Spencer v. Gabriel, 328 Mass. 1, 2, 101 N.E.2d 369, 369 (1951); Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 678, 42 N.E.2d 808, 808 (1942); Cherry v. Crispin, 346 Mass. 89, 92, 190 N.E.2d 93, 95 (1963).

The plaintiff must prove that the defendant made the statement with the intent that the plaintiff would rely on it. If you find that the defendant knew that the representation was false, you may presume that he or she intended the plaintiff to rely upon the false statement. Powell v. Rasmussen, 355 Mass. 117, 118–19, 243 N.E.2d 167, 168 (1969); 20 Golding v. 108 Longwood Ave., Inc., 325 Mass. 465, 467, 91 N.E.2d 342, 344 (1950).

The plaintiff must prove that he or she reasonably relied upon the defendant's false statement. The plaintiff's reliance is unreasonable if the defendant's misrepresentation is preposterous or palpably false, or its falsity is obvious to an ordinary observer. The plaintiff is not, however, required to investigate to determine whether the defendant's statements are true. He or she is justified in relying on the truth of the defendant's factual statements. Forman v. Hamilburg, 300 Mass. 138, 140–41, 14 N.E.2d 137, 139 (1938); Yorke v. Taylor, 332 Mass. 368, 374, 124 N.E.2d 912, 916 (1955).

The plaintiff also must show that his or her reliance on the defendant's misrepresentation caused the plaintiff harm. The plaintiff's reliance on the false statement does not have to be the only factor that motivated the plaintiff's decision to act in a manner that caused harm. It need only have materially influenced the plaintiff's decision to act. Powell v. Rasmussen, 355 Mass. 117, 118–19, 243 N.E.2d 167, 168 (1969); Forman v. Hamilburg, 300 Mass. 138, 140, 14 N.E.2d 137, 139 (1938)

If you find that the plaintiff has proven the elements of his or her fraud claim by a preponderance of the evidence, you next must determine the amount of money damages to award the plaintiff. But for you to award damages, the plaintiff must have proven—with a fair degree of certainty—the extent of his or her injury that was caused by the defendant's misrepresentation. The plaintiff does not have to show his or her injury with mathematical precision, but he or she must base the amount of his or her injury on "more than mere speculation." Pearl v. William Filene's Sons Co., 317 Mass. 529, 532, 58 N.E.2d 825, 827 (1945); Squeri v. McCarrick, 32 Mass. App. Ct. 203, 209, 588 N.E.2d 22, 26 (1992).

If you find the defendant liable for fraud, you must award the plaintiff the difference between the value of what he or she received and the actual value of what the plaintiff would have received if the defendant's misrepresentation had been true. The amount awarded by this calculation is intended to place the plaintiff in the position that he or she would have been had the defendant's misrepresentation been true. Forman v. Hamilburg, 300 Mass. 138, 143, 14 N.E.2d 137, 140 (1938).

The plaintiff may also recover any costs he or she incurred that are reasonably expected to result from the plaintiff's reliance on the defendant's misrepresentation. If you find that the

plaintiff incurred these foreseeable costs, you may add this amount to your damages award.

Spillane v. Corey, 323 Mass. 673, 676, 84 N.E.2d 5, 7 (1949).

Negligence

The plaintiffs have accused the defendants of negligence. The plaintiffs may recover on this claim if and only if he or she proves that four things are more likely than not: (1) The defendants had a duty to take reasonable care to avoid causing damage to Smith's car when it installed certain equipment into the car; (2) the defendants failed to use reasonable care during the installation and were negligent in fulfilling their duty; (3) the defendant's negligence caused the plaintiffs damage; and (4) the plaintiffs must prove the extent or amount of that damage.

Now, I will go over each one of these elements separately, in more detail.

The first thing the plaintiff has to prove is that the defendants had a duty to take reasonable care to avoid causing damage to the property of someone in the plaintiff's position.

As a matter of law, I am instructing you that a party who binds itself by contract to provide goods or services to another party to that contract owes a duty to that other party to exercise reasonable care to provide such goods or services in accordance with the terms of the contract and in a good and workmanlike manner.

You must not speculate as to what the requisite degree of skill and care are, or attempt to impose your judgment as to what the requisite degree of skill and care should be. Your finding must be based on evidence. It must have a firm foundation of proof.

The second thing the plaintiff has to prove is that the defendants were negligent in living up to that duty of reasonable care. A person is negligent if he fails to use reasonable care when

he has a duty to do so. Reasonable care means the level of attention and forethought that a reasonably careful person, a person of ordinary caution and prudence, would exercise in those particular circumstances to avoid harming other persons or property. Goldstein v. Gontarz, 364 Mass. 800, 805–06, 309 N.E.2d 196, 200–01 (1974).

Negligence may consist either in doing something that a reasonably careful person would not do under similar circumstances, or in failing to do something that a reasonably careful person would do under those circumstances. The more dangerous the potential harm, and the more likely it is that the harm might result, the more care a reasonable person would use.

The mere fact that an accident happened does not necessarily mean that any negligence was involved. The plaintiff is required to prove that it is more probable than not that the defendant was negligent.

The third thing the plaintiff has to prove is that the defendants were negligent, that their negligence proximately caused the damage to his car. Even if the defendants were negligent, they are not liable to the plaintiffs unless their negligence caused the damage. See Solimene v. B. Grauel & Co., K.G., 399 Mass. 790, 798, 507 N.E.2d 662, 667 (1987).

"Proximate cause" is a term of art that means a substantial cause. A proximate cause is an efficient, producing cause of a particular result. It is perhaps best defined as that which, in a continuous sequence unbroken by any new cause, produces a result, and without which the result would not have occurred. For a negligent act or omission to be a proximate cause of a personal injury, it must be established that the personal injury would not have occurred but for the negligent act or omission. If the plaintiff's injury would have occurred in any event regardless of the defendant's negligence, the defendant's negligence cannot be said to have been a proximate

cause of that injury. On the other hand, it must be borne in mind that there may be, and frequently is, more than one "proximate cause" of a plaintiff's injury.

Smith must prove is that it is more likely that the damage was caused by the defendants' negligence than by any other cause.

The fourth and final thing the plaintiff has to prove is that his car was damaged by the negligence of the defendants, as well as the extent and amount of that damage. McElwain v. Capotosto, 332 Mass. 1, 3–4, 122 N.E.2d 901, 902 (1954) (plaintiff has burden of proof as to damages).

If you find that the defendants were negligent, and that their negligence caused the damage to the plaintiff's property, you must then fix the amount of damages. Please understand that by instructing you on damages I am not suggesting how you ought to decide this case; that is your responsibility. I am only informing you as to what the law is with regard to calculating damages in the event that you get to that point.

If your verdict is for the plaintiff, then in calculating an award of damages you must be guided by your common sense. Computing damages may be difficult, but you must not let that lead you to engage in arbitrary guesswork. The plaintiff has the burden of proving his damages with as much definiteness and accuracy as the circumstances permit. McElwain v. Capotosto, 332 Mass. 1, 3–4, 122 N.E.2d 901, 902 (1954) (plaintiff has burden of proof as to damages).

Breach of Contract

A breach of contract is a failure to comply with one or more terms of the contract. In order to recover for breach of contract, the non-breaching party must have completely performed

his/her obligations. Where one party to a contract has failed to perform his/her obligations, then as a matter of law the other party is thereafter excused from performing his/her contractual obligations. In order to prevail on a breach of contract claim, a party must prove the following four elements by a preponderance of the evidence: (1) that there is a contract, (2) that the party performed its obligations under the contract (or is excused from performance), (3) that the other party breached the contract, and (4) that the non-breaching party suffered damages as a result of the breach of contract.

The fact that I charge you on the measurement of damages is not, and should not be considered by you, as any indication that I think damages should be awarded. I give you these instructions on damages solely because I am required to charge you on all phases of the case that you might have to consider. If the plaintiff has not proven that the defendant breached the contract, then you will not consider the issue of damages. If the defendant did breach the contract, you must then decide the amount of the plaintiff's damages, if any. Before the plaintiff can recover damages under any theory of recovery, he or she must prove that the defendant's breach caused damages. Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 397 (1992).

The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract. In order to recover damages against the defendant, the plaintiff must demonstrate that the damages complained of were caused by the defendant's conduct. If the damages were caused by the plaintiff or by someone other than the defendant, then the plaintiff is not entitled to damages from the defendant. Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492 (1997); Fernandes v. Union Bookbinding Co., 400 Mass. 27, 37–38 (1987); Sackett v. St. Mary's Church Soc'y, 18

Mass. App. Ct. 186 (1984); <u>John Hetherington & Sons, Ltd. v. William Firth Co.</u>, 210 Mass. 8 (1911).

If you determine that the plaintiff is entitled to damages, in deciding the amount of the damages, you may not include any sum for court costs or for attorney fees. <u>Int'l Fidelity Ins. Co. v. Wilson</u>, 387 Mass. 841, 856 n.20 (1983); <u>Boott Mills v. Boston & M. R.R.</u>, 218 Mass. 582, 589 (1914); 37 J. Nolan, Massachusetts Practice, § 205 at 328 (1979).

<u>Breach of Good Faith and Fair Dealing</u>

In Massachusetts, there is an implied covenant of good faith and fair dealing between the parties to a contract. The implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. <u>Anthony's Pier Four, Inc. v. HBC Assocs.</u>, 411 Mass. 451, 471–74 (1991) (<u>citing</u> <u>Druker v. Roland Wm. Jutras Assocs.</u>, 370 Mass. 383, 385 (1976)); <u>Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.</u>, 441 Mass. 376, 385 (2004); <u>Chokel v. Genzyme Corp.</u>, 449 Mass. 272, 276 (2007); <u>Warner Ins. Co. v. Comm'r of Ins.</u>, 406 Mass. 354, 362 n.9 (1990); <u>Fortune v. Nat'l Cash Register Co.</u>, 373 Mass. 96, 105 (1977). <u>Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.</u>, 412 F.3d 215, 230 (1st Cir. 2005) (applying Massachusetts law); <u>Hutchins v. Zoll Medical Corp.</u>, 430 F. Supp. 2d 24, 34 (D. Mass. 2006) (applying Massachusetts law); <u>Petricca v. City of Gardner</u>, 429 F. Supp. 2d 216, 224 (D. Mass. 2006) (absent evidence of contractual relationship between parties, claim for breach of covenant of good faith and fair dealing failed as matter of law).

<u>Conversion</u>

If you find from the evidence that as a direct result of the wrongful act of the defendant the plaintiff has been permanently deprived of funds, you should award as damages what you find from the evidence to be the amount of money deprived. Your award should also include compensation for any expenses to which plaintiff has been put as a direct consequence of the wrong, if such is shown from the evidence.

Plaintiff claims and has presented evidence to show that the defendant, without lawful justification, has so seriously interfered with the plaintiff's right to the control of his funds that the defendant should be required to pay the full value of it. If you find this to be the case, you are to award to the plaintiff the value of this money as it was at the time and place where the defendant's act occurred. <u>Koski v. Haskins</u>, 236 Mass. 346, 348 (1920).

<u>Breach of Fiduciary Duty</u>

The plaintiffs allege that the defendants breached the fiduciary duties owed to the plaintiffs. Fiduciary duties are duties imposed by the law on persons who have put themselves in a position whether another person must trust them for their personal or financial well-being. A person who owes fiduciary duties is commonly referred to as a fiduciary. The most common example of a fiduciary relationship is a power of attorney. When a person signs a power of attorney, they are commonly giving the fiduciary the power to undertake financial transactions on their behalf. This requires that the person trust that the fiduciary will not enter into transactions or undertake other conduct that will cause the person financial harm. The law imposes duties on the fiduciary to ensure that the fiduciary acts in the best interest of the person he is acting on behalf of.

There are two duties that a person with fiduciary duties must adhere to. The first is called the duty of care. A person's fiduciary must not act carelessly in such a way that it puts the person's well-being at risk. For example, a fiduciary who manages a person's investments should not put those funds into one, risky investment, but in most cases should invest in multiple, different investments with varying amounts of risk. The duty of care ensures that the fiduciary undertakes prudent acts on behalf of the person.

The second duty is called the duty of loyalty. A person's fiduciary must not act in a way that puts the benefits of the fiduciary above the needs of the person. For example, a fiduciary who manages a person's investments should not make investment transactions simply because the fiduciary earns a commission or fee for that transaction. This duty ensures that the fiduciary puts the needs of the person that the fiduciary owes the duties to ahead of his own.

Real estate brokers may owe a fiduciary duty not to act for others whose interests conflict with those of their principals. McEnvoy v. Ginsberg, 345 Mass. 733, 737, 189 N.E.2d 546, 548 (1963).

Similarly, mortgage brokers owe fiduciary duties to their clients. A mortgage broker's duty to a home buyer is "to use good faith, diligence, and reasonable skill to obtain a loan honestly." Haser v. Wright, 15 Mass.L.Rep 248 (Mass.Super.Ct. 2002), aff'd, 64 Mass. App. Ct. 1102.

Attorneys also owe fiduciary duties to their clients. They have a duty to be completely honest with them in all aspects of the attorney-client relationship and to always act for their client in their best interest and on their behalf.

It is possible, however, for a fiduciary duty to exist absent a formal relationship or express agreement to act for the benefit of another. The duty can arise where one knows, or should reasonably expect, that others will rely on certain acts or services. See Van Brode Group, Inc. v. Bowditch & Dewey, 36 Mass. App. Ct. at 516, 633 N.E.2d at 428 (attorney may have a duty to non-clients who the attorney knows will rely on his or her services); see also One Nat'l Bank v. Antonellis, 80 F.3d 606, 609 (1st Cir. 1996) (under Massachusetts law, attorney may owe duty to non-client where attorney can reasonably foresee that non-client will rely on his or her services).

In order to succeed on a claim for breach of fiduciary duty, a plaintiff must prove the following: (1) the existence of such a duty, (2) breach of that duty, (3) causation, and (4) damages. Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 164 n.18, 705 N.E.2d 279, 288 n.18 (1999); Rutanen v. Ballard, 424 Mass. 723, 731, 678 N.E.2d 133, 139–40 (1997); Bowen v. Richardson, 133 Mass. 293, 296 (1882).

Further, where a fiduciary duty exists, an omission of material fact is tantamount to an active misstatement of fact.  "The duty of honest advice and full disclosure arises where one party reposes confidence in the integrity of another and the other party in advising voluntarily assumes and accepts the confidence."  Karal v. Marken, 333 Mass. 743-745 (1956) citing Reed v. A.E. Little Co., 256 Mass. 442, 448-449 (1926); Akin v. Warner, 318 Mass. 669, 674 (1945). "When confidence is reposed and accepted, the person trusted is liable for expressing dishonest opinions upon which the other party relies and acts to his/her  damage, and she/he is also liable for concealing facts which by reason of the relationship she/he should disclose." Reed, 256 Mass. at 449.

Civil Conspiracy

The plaintiff alleges a civil conspiracy. To prove a civil conspiracy, a plaintiff must prove: first, that the defendant joined in a common design or an agreement, although not necessarily express, second, that the agreement was between two or more persons to commit a tort against a person, and third, proof of some tortious act in furtherance of the agreement. Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).

It is not necessary that the conspirators formulated a formal agreement among themselves, or that they agreed on every detail of the conspiracy, or even that they met together.

The law allows you, where it seems reasonable, to infer that there was a conspiracy from all of the circumstances. For example, if people who know each other or have been in communication with each other are shown to have been involved in concerted actions which all seem designed to accomplish a specific purpose, then it may be reasonable to conclude that those actions were not coincidental but were taken pursuant to a joint plan. However, remember that it is not enough that the defendant knew about the conspiracy or associated with conspirators. To be liable as a conspirator, the defendant must have actually joined in the conspiracy as something that he or she wished to bring about.

You are permitted to draw inferences against other parties to the conspiracy based on the statements of a co-conspirator, so long as the during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d).

Intentional Infliction of Emotional Distress

In this case, the plaintiff is claiming that the defendant intentionally or recklessly caused infliction of emotional distress when insert party's factual contentions. In order to recover, the plaintiff must prove by a preponderance of the evidence that: (1) the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his/her conduct; (2) the defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized society; (3) the defendant's conduct caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).

It is not necessary for the plaintiff to prove that physical injury resulted from the severe emotional distress. Payton v. Abbott Labs, 386 Mass. 540, 554 (1982).

In order to prove intentional infliction of emotional distress, the plaintiff must prove that the defendant acted either with the desire or knowledge that emotional distress would result from his or her conduct or that he or she should have known that his or her conduct would cause the plaintiff to suffer emotional distress. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465–66 (1997); Simon v. Solomon, 385 Mass. 91, 96–97 (1988); Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976); George v. Jordan Marsh Co., 359 Mass. 244, 255 (1971); Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 461 (2007); Korper v. Weinstein, 57 Mass. App. Ct. 433, 438–39 (2003) (plaintiff's claim for intentional infliction of emotional distress failed, "if for no other reason, because the record does not support an inference that the defendant acted with an intent to harm the plaintiff").

"Extreme and outrageous" conduct is more than just workaday insults, hurt feelings from bad manners, annoyances, or petty oppressions. "Outrageousness" means a high order of recklessness, ruthlessness, or deliberate malevolence. As such, "extreme and outrageous" encompasses particularly reprehensible conduct. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465–66 (1997); Foley v. Polaroid Corp., 400 Mass. 82, 99–100 (1987); Boyle v. Wenk, 378 Mass. 592, 595 (1979); Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976); Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 461 (2007); Korper v. Weinstein, 57 Mass. App. Ct. 433, 439 (2003) ("a consensual sexual relationship in this Commonwealth will not support a claim for intentional infliction of emotional distress"); Quinn v. Walsh, 49 Mass. App. Ct. 696, 707–08 (2000) (openly conducting adulterous affair was not sufficiently outrageous conduct to support claim); Cady v. Marcella, 49 Mass. App. Ct. 334, 341 (2000) (creditor's act of physically seizing half of a modular home for twelve days in the middle of winter was extreme and outrageous); Conway v. Smerling, 37 Mass. App. Ct. 1, 8–9 (1994); McKenzie v. Potter, C.A. No. 02-10727-DPW., 2004 WL 1932766 at *7–8 (D. Mass. Aug. 20, 2004).

Negligent Infliction of Emotional Distress

To prevail on a claim for negligent infliction of emotional distress, the plaintiff must prove each of the following five elements: (1) negligence, (2) emotional distress, (3) causation, (4) physical harm, and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Payton v. Abbott Labs, 386 Mass. 540, 557 (1982).

In order to prove the necessary physical harm, the plaintiff must produce sufficient objective evidence of physical manifestation of mental distress. Sullivan v. Boston Gas Co., 414

Mass. 129, 139 (1993). Mere upset, dismay, humiliation, grief, or anger do not constitute

sufficient physical manifestation of mental distress. Gutierrez v. Mass. Bay Transp. Auth., 437

Mass. 396 (2002).

Damages

If you find that the plaintiff has satisfied each and every element of his or her claim, you

must consider the issue of damages. The rule of damages is a practical instrumentality for the

administration of justice. Its object is to afford the equivalent in money for the actual loss caused

by the wrong of another. You must consider what amount of money would be full, fair, and

reasonable based on all the evidence. The amount of damages should be based on just and

reasonable inferences, even though there may be an element of uncertainty in your

determination. Rombola v. Cosindas, 351 Mass. 382, 385 (1966); Agoos Leather Co. Inc. v.

American & Foreign Ins. Co., 342 Mass. 603, 608 (1962); Daniels v. Celeste, 303 Mass. 148,

150 (1939); Sullivan v. Old Colony St. Ry. Co., 197 Mass. 512, 516 (1908); Homesavers

Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 461 (2007).

**Special verdict questions:**

**I.      Fraud**

1.      Did [Defendant Union Capital Mortgage Business Trust; Mid-City Mortgage, LLC; New England Merchants Corp.; RKelley-Law, P.C.; Robert Kelley; Louis Bertucci; EB Real Estate Group, Inc.; Dorchester Real Estate, Inc.; Dwight Jenkins; Cherry Jenkins; Dorea Smith] make a false representation of a material fact to [Plaintiff Robert Smith; Maria Dasilva]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Did [Defendant] know that the representation of fact was false when it made the representation to [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

3.      Did [Defendant] make a false representation of fact with the intent [Plaintiff] would rely on the fact?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

4.      Did [Plaintiff] rely on any false representation of fact made by [Defendant]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

5.      Did [Plaintiff] suffer harm as a result of the foregoing?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

6.      Please state the specific dollar amount which will compensate [Plaintiff] for the fraud committed by [Defendant]:

        $_____; (Amount in words: _____)

**II.    Breach of Fiduciary Duty**

1.      Did Defendant owe Plaintiff a fiduciary duty?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Did Defendant breach that fiduciary duty?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

3.      Did Plaintiff suffer damage a s a result of that breach of fiduciary duty?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

5.      Please state the specific dollar amount which will compensate [Plaintiff] for the Breach of Fiduciary Duty committed by [Defendant]:

        $_____; (Amount in words: _____)

## III.    <u>Fraud Where a Fiduciary Duty Exists</u>

1.      Did Defendant owe Plaintiff a fiduciary duty?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Did Defendant intentionally omit disclose of a material fact to plaintiff?

A       YES _____ NO _____

3.      Did [Defendant]  omit the disclosure of such material fact with the intent [Plaintiff] would rely on the fact?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

4.      Did [Plaintiff] rely upon [Defendants'] silence in connection with that material fact?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

5.      Did Plaintiff suffer damage as a result of that omission of the disclosure of such material fact?

6.      Please state the specific dollar amount which will compensate [Plaintiff] for the Breach of Fiduciary Duty committed by [Defendant]:

$_____; (Amount in words: _____)

**IV.     Negligence**

1.      Did [Defendant] owe a duty of care to [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Did [Defendant] breach that duty of care to [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

3.      Did that breach of duty cause [Plaintiff] damage?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

4.      What that damage foreseeable?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

5.      Please state the specific dollar amount which will compensate [Plaintiff] for the negligence committed by [Defendant]:

$_____; (Amount in words: _____)

**V.     Breach of Contract**

1.      Did [Defendant] enter into an agreement with [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Did [Defendant] breach that agreement?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

3.      Did [Plaintiff] suffer damage as a result of that breach?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

5.      Please state the specific dollar amount which will compensate [Plaintiff] for the breach of contract committed by [Defendant]:

        $_____; (Amount in words: _____)

6.      Did [Defendant] breach the covenant of good faith and fair dealing implied in the contract with [Plaintiff]?

7.      Please state the specific dollar amount which will compensate [Plaintiff] for the implied covenant of good faith and fair dealing committed by [Defendant] **in addition to the amount awarded in Question V(5), above**:

        $_____; (Amount in words: _____)

**VI.    Conversion**

1.      Did [Defendant] exercise dominion or control over property rightfully owned by [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Please state the specific dollar amount which will compensate [Plaintiff] for the conversion committed by [Defendant]:

        $_____; (Amount in words: _____)

**VII.**   **Civil Conspiracy**

1.      Do you find that two or more of the defendants entered into an agreement, either express or implied, to commit a wrongful act against [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Who are the parties who entered into the conspiracy?

A. _____

_____

_____

_____

3.      Has the Plaintiff been damaged as a result of this conspiracy?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

4.      Please state the specific dollar amount which will compensate [Plaintiff] for the conspiracy committed by [Defendants]:

$_____; (Amount in words: _____)

**VII.**   **Intentional Infliction of Emotional Distress**

1.      Did [Defendant] cause emotional distress to [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Did [Defendant] intend to cause emotional distress to [Plaintiff], or act knowing that emotional distress was the likely result of its conduct?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

3.      Did [Plaintiff] suffer damage as a result?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

4.      Please state the specific dollar amount which will compensate [Plaintiff] for the intentional infliction of emotional distress committed by [Defendant]:

        $_____; (Amount in words: _____)

## VIII.    Negligent Infliction of Emotional Distress

1.      Did [Defendant] cause emotional distress to [Plaintiff]?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

2.      Was the emotional distress caused by the Defendants' negligence or a reckless disregard of the Defendant as to whether its conduct would cause such emotional distress to Plaintiff?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

3.      Did [Plaintiff] suffer damage as a result?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

4.      Would a reasonable person have suffered such emotional distress?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

5.      Was the emotional distress manifested by objective symptomology?

A.      YES _____ NO _____

If you answered "Yes" proceed to the next question.  If you answered "No", go on to the next Section.

6.      Please state the specific dollar amount which will compensate [Plaintiff] for the negligent infliction of emotional distress committed by [Defendant]:

        $_____; (Amount in words: _____)

        Plaintiffs reserve the right to supplement, modify or amend its submission above at any time.

**Proposed voir dire questions**

        None at this time.  Plaintiffs reserve the right to supplement.

**Neutral statement summarizing the principal claims and defenses to be read to the venire during empanelment.**

        The plaintiffs in this case, Robert Smith and Maria Dasilva, claim that they were induced to purchase two parcels of real estate each as a result of scheme to defraud in which a number of the defendants were involved.  Plaintiffs allege that the defendant mortgage brokers create false and misleading mortgage applications, and the defendant closing attorneys lulled the plaintiffs into believing that it was in their best interests to sign the closing documents.  In the case of Smith, Mr. Smith states that he did not understand  that he was purchasing real estate, as he is of diminished mental capacity.  The defendants are a man from Randolph, Massachusetts named Dwight Jenkins, his wife, his sister, three mortgage brokers, two real estate brokers, two attorneys and a law firm which presided over most of the real estate closings at which the properties were purchased, and a bank which lent funds for the purchase.  The defendants deny all liability.

Plaintiffs reserve the right to supplement, modify or amend its submission above at any time.

Respectfully Submitted,

The Plaintiffs,

by their attorneys,

/s/ Jeffrey S. Baker
Jeffrey S. Baker, Esq.
BAKER & ASSOCIATES, P.C.
Two West Hill Place
Boston, MA 02114
(617) 357-9505
BBO # 544929
E-mail: bakerlaw@aol.com

and

/s/ Jonathan  D. Plaut
Jonathan D. Plaut, Esq.
CHARDON LAW OFFICES
One State Street, Suite 1200
Boston, MA 02109
(617)-451-3200
BBO # 638344
E-mail: jdplaut@chardonlaw.com

Date:   October 5, 2010

## CERTIFICATE OF SERVICE

I certify that I have served this document via Notice of Electronic Filing for parties and counsel on the date set forth below in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

/s/ Jonathan D. Plaut
Jonathan D. Plaut

Date:   October 5, 2010