UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
ROBERT SMITH and MARIA DASILVA,             )
                                            )
    Plaintiffs                              )
                                            )
v.                                          )
                                            )
DWIGHT JENKINS, CHERRY JENKINS,             )
DOREA SMITH, ROBERT E. KELLEY,              )
RKELLEY-LAW, P.C., LOUIS G. BERTUCCI,       )   Case No. 1:07-cv-12067-RSG
EB REAL ESTATE GROUP, INC.,                 )
DORCHESTER REAL ESTATE, INC.,               )
NEW ENGLAND MERCHANTS CORP,                 )
UNION CAPITAL MORTGAGE BUSINESS             )
TRUST, MID CITY MORTGAGE, LLC,              )
FREEMONT INVESTMENT AND LOAN and            )
MERITAGE MORTGAGE CORPORATION,              )
                                            )
    Defendants                              )
_____)

**PLAINTIFF, ROBERT SMITH'S STATEMENT CONCERNING THE G.L. C. 93A CLAIM PURSUANT TO THE COURT'S ORDER OF NOVEMBER 3, 2010**

NOW COMES Robert Smith ("Smith") and submits this statement concerning the G.L. c. 93A claim pursuant to the Court's Order dated November 3, 2010.

**I.     DEFENDANTS AGAINST WHOM SMITH PRESSES HIS 93A CLAIMS**

Smith demands relief pursuant to G.L. c. 93A against defendants Union Capital Mortgage Business Trust ("Union"), New England Merchants Corp ("NEMC"), Dorchester Real Estate ("Century 21"), Louis Bertucci ("Bertucci"), Dwight Jenkins ("Jenkins"), EB Real Estate Group, Inc. ("RE/MAX"), Robert E. Kelley and RKelley-Law, P.C. ("Kelley"), and Fremont Investment and Loan ("Fremont"). Smith does not press 93A claims against Meritage Mortgage Corporation, Cherry Jenkins, Dorea Smith or Mid City Mortgage, LLC.

## II.     TREBLE DAMAGES ARE APPROPRIATE IN THIS CASE

The defendants engaged in unfair and deceptive business practices which were knowing and willful in violation of G.L. c. 93A, and the jury award should be trebled.  The jury found, and judgment entered, against Union for fraud and breach of fiduciary duty, against NEMC for fraud and breach of fiduciary duty, against Century 21 for fraud and breach of fiduciary duty, against Bertucci for fraud, and against Jenkins for fraud, breach of fiduciary duty and breach of contract.  Where defendants have engaged in "callous and intentional violations of the law" and have "willfully or knowingly employed an unfair or deceptive practice", treble damages are appropriate.  See, e.g., Heller v. Silverbranch Construction Corp., 376 Mass. 621, 627 (1978).  In this case, the conduct of the defendants, coupled with the disparity of knowledge, sophistication and experience in real estate of the defendants, who are real estate professionals (all of whom except for Jenkins held a Massachusetts license), and Robert Smith, is egregious and calls for an punitive award of multiple damages.  This Court should treble the jury award.

The defendants in this case received fees totaling in the millions of dollars on the strength of their cooperation between and among themselves during the height of the subprime mortgage activity in 2004-2006.  They abused their positions of power, knowledge, education and state licensure in this case to take reckless advantage of a mentally challenged veteran by coercing him into signing important documents which everybody except Smith knew were utterly false and misleading.  They lured him into exposing himself to criminal penalties, ruination of credit, collection activity and forgiveness of indebtedness income.  As a result, every corporate defendant in the case – Fremont, Meritage, Union, New England Merchants, Re-Max, Century 21 and even Mid-City – is either no longer in business, is bankrupt is subject to cease and desist orders, has closed their franchises, or has terminated the independent contractorship of the main malfeasors.

Attorney Bertucci left his former employer. Jenkins, in turn, is incarcerated awaiting trial less than 10 years after having been released from prison for a bank fraud conviction.

As for Re-Max, Fremont and Kelley, Chapter 93A liability may be established even where no other cause of action exists. It is well settled that liability under 93A is not predicated on a common law or legal theory of relief. See, e.g., Kattar v. Demoulas, 433 Mass. 1, 12–13 (2000); Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722, 729 (1989); Patricia Kennedy & Co. v. Zam-Cul Enters., Inc., 830 F. Supp. 53, 59 (D. Mass. 1993) (Massachusetts law does not require that plaintiffs prove a separate, independent tort, such as fraud or misappropriation, to satisfy a claim under G.L. c. 93A; "[a] claim under Chapter 93A rises or falls on its own merit"). In this case, the jury found no tort liability against Re-Max, and this Court dismissed the tort claims against Fremont and Kelley. The conduct of Re-Max, Fremont and Kelley, while not giving rise to liability under common law legal theories, nonetheless was unfair and deceptive and therefore subject to 93A.

Re-Max is liable to Smith pursuant to 93A. Mark Warren of Re-Max, the owner of the franchisee and Laurice Taylor's supervising broker, provided no meaningful supervision to Taylor who lured Smith into the Re-Max office. Re-Max permitted the dissemination of several versions of flyers jointly marketing Re-Max and Jenkins' businesses to several victims, including Smith. Without Re-Max, Smith would not have been able to be victimized.

The activities of Laurice Taylor with respect to Dwight Jenkins were both known by and approved by EB Real Estate Group. At the hearing on the 93A portion of the case, Smith would introduce a real estate closing file at EB Real Estate for the 544 Saratoga Street, Dorchester property which shows: (1) Jenkins was the purchaser; (2) Jenkins had a "contract release" agreement in the EB Real Estate file; (3) Laurice Taylor identified herself as an agent for Jenkins on a purchase and sale agreement while acting as the salesperson of record for EB Real Estate; and (4)

the ultimate purchaser was not Jenkins but rather a third party which is consistent with the mode of operation of Jenkins and Taylor. At closing, Jenkins took his contract release fee. These documents were kept in the ordinary course of business records as previously authenticated by Mark Warren.

Further, Laurice Taylor was a key witness in this case, but Re-Max failed to disclose the address of Ms. Taylor until less than a month before trial and well after the discovery period had closed. See Exhibit 9 (supplemental Rule 26 disclosure of EB Real Estate Group, Inc.). This conduct hindered plaintiff's discovery of the facts in this case. While certainly Smith could have subpoenaed Ms. Taylor to trial, plaintiffs were denied the opportunity to depose her and thereby make a meaningful determination as to trial strategy.

Fremont similarly should be liable to Smith for unfair and deceptive business practices. Fremont made loans to Smith with patently insufficient loan applications and insufficient supporting documentation which were precisely the type found to be presumptively unfair and predatory by the Supreme Judicial Court of Massachusetts. See Exhibit 11 (Order in Commonwealth v. Fremont Investment & Loan, 452 Mass. 733 (2008)).

Kelley was Bertucci's sole supervising attorney and was the law office where both of the closings occurred at issue in this case where Smith was induced to borrow over $800,000 without his knowledge. Without Kelley's law office, the closings and borrowings could not have occurred. Kelley profited from the conduct of Bertucci and permitted his office to be used as the location of the fraudulent loan activity. According to Bertucci, Kelley's office was the *situs* of more than 8 closings where Jenkins received a so-called "contract release fee". This conduct was unfair and deceptive towards Smith.

### III. ATTORNEYS FEES

Attorney Jeffrey Baker and Attorney Jonathan Plaut are both solo practitioners in Boston. Attorney Baker has been practicing civil litigation for 25 years since his admission to the bar in 1985. Attorney Plaut has been practicing litigation for 13 years since his admission to the bar in 1997. Both Attorney Baker and Attorney Plaut have devoted the majority of their law practices over the past four years to the diligent, thorough and careful preparation of this case and the companion state court cases.

This case has been extraordinarily time consuming. Both Attorneys Baker and Plaut have forgone numerous other cases and sacrificed many other opportunities over the past three years to effectively bring this case through the two dispositive motion stages and to trial. Moreover, given the enormous breadth of the issues that the Defendants have presented in this case, the Plaintiffs' counsel have sacrificed numerous other opportunities at a substantial cost in order to properly present the case. Baker and Plaut expended thousands of hours to oppose the well-heeled insurance firms who spared no expenses or legal fees in discovering this case, and forcing Smith all the way to and through a two week jury trial. At last count there are over 450 docket entries on this case. Baker and Plaut should be awarded their full attorneys fees of $1,650,000 and will submit a detailed fee affidavit upon instruction by the Court. The affidavit will identify the amount of time expended, counsel's billable rates, their level of experience, the difficulty of the case, the results achieved, the amount of work necessary, and all other factors necessary for this Court to consider in accordance with the so-called "Lodestar" method those fees which should be awarded pursuant to Chapter 93A.

Uncovering the fraud of the defendants was an enormous task which was compounded by the intentionally misleading and false testimony at deposition of several witnesses including John K. Richman of Union Capital and Dwight Jenkins, the failure of Re-Max, Century 21 and Fremont to disclose address information of key witnesses and documents (such as Laurice Taylor's address

until three weeks before trial, the failure to disclose the contact information for two former Fremont employees who marketed Fremont's loan packages, and Century 21's disclosure of important personnel documents only weeks before trial), and the outright refusal of several witness to render deposition testimony on key points (Philip J. Goodwin and Linda Bryant, both of Union).

The attorneys fee provision of Chapter 93A has a public policy component. That provision was specifically designed to enable and even encourage attorneys to bring cases where the single damages awardable at trial would simply not justify the expense of attorney time, energy, effort and out-of-pocket expenses required to bring the case. Even where one dollar in damages is awarded, the attorneys fee provision ensures that the lawyer will not have championed the meritful – but low damages – case without fair compensation. "Like other statutes containing multiple damage provisions, §§ 9 and 11 reflect "the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits." International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 857 (1983), quoting McGrath v. Mishara, 386 Mass. 74, 85, 434 N.E.2d 1215 (1982). These sections also seek to promote reasonable settlements, which clearly did not occur in this case. See Nader v. Citron, 372 Mass. 96, 100, 360 N.E.2d 870 (1977). 93A is designed to make it "unprofitable" for a defendant to ignore meritorious claims. Heller v. Silverbrach Constr. Co., 376 Mass. 627, 627 (1978). Without such an incentive, experienced attorneys would not take on complicated and time consuming litigation matters, and the Smith matter is consistent with the policy objectives of the award of an attorney's fee pursuant to G.L. c 93A.

### IV.  DEMAND LETTERS AND PROOF OF SERVICE

Smith sent timely demand letters to each defendant pursuant to G.L. c. 93A. On December 5, 2006, which was more than 30 days prior to the filing of the suit, Smith sent a letter to defendants RE/MAX, Fremont, Kelley, Century 21, New England Merchants, Union and Jenkins setting forth a

6

written demand for relief, identifying the claimant and reasonably describing the unfair and deceptive acts and practices and the injuries suffered.  See the Demand Letter, attached hereto as Exhibit 1.  On February 21, 2007 Smith sent a 93A demand letter to Bertucci which similarly complied with the statute.  Exhibit 2.

    Each of the defendants received the letters more than 30 days prior to the filing of the suit.  Attached hereto as Exhibit 3 are copies of the certified return receipts from Union, RE/MAX, NEMC, Bertucci and Kelley.  On February 21, 2007 the undersigned resent the December 5, 2006 93A letter by First Class Mail, postage prepaid, to Jenkins, RE/MAX, Century 21, Fremont, Rachel Noyes, James Adamos, Laurice Taylor and NEMC.  See the File Memorandum dated February 21, 2007, attached hereto as Exhibit 4; see also the Affidavit of Jonathan Plaut, attached hereto as Exhibit 5.  None of the 93A letters sent by First Class Mail were returned as undeliverable, as having insufficient postage, as having an incorrect address, or for any other reason.  See Exhibit 5.

### V.    SUFFICIENCY OF SERVICE

    Union, Century 21 and Fremont argued in their motions for summary judgment that service of the demand letter was insufficient.  This is untrue.

    As for Union, the demand letter was sent to the address of Union's Registered Agent, George Fabrizio, at 37 Orchard Street, Randolph, Massachusetts, the precise address identified by Union at the Secretary of the Commonwealth.  See Exhibit 6 (summary screen printout from the Commonwealth of Massachusetts, showing the address for its registered agent in Massachusetts).  The letter was received.  See Exhibit 3, which is the certified green card receipt showing receipt by a person identified as "Fabrizio".  Accordingly, the letter was mailed to and delivered to the intended address, in compliance with the statute.

    In Union's motion for summary judgment, Union asked this Court to read Bassi v. Julian Crane & Equip. Corp., 20 Mass.L.Rptr. 184, 2005 WL 3105676, * 6, (Mass.Super. Oct. 26, 2005),

and Weber v. Zurich Financial Services Group, 18 Mass.L.Rptr. 544, 2004 WL 3091635, * 2, (Mass.Super. Nov. 30, 2004) to support the proposition that service of 93A demand letter requires compliance with Mass. R. Civ. P. 4. However, this language appears nowhere in either of those cases, nor does it appear in the 93A statute itself. Rule 4 addresses service of the summons and the complaint, not a 93A demand letter.[1]

As for Century 21, the letter was sent to Century 21, to James Adamos and to Ivana Foley, both of whom were licensed real estate salespersons whose supervising broker was Century 21. See Exhibit 1. Adamos and Foley were Century 21's agents. The law is clear that delivery of a 93A demand letter to an agent of a defendant constitutes sufficient service. Whelihan v. Markowski, 37 Mass. App. Ct. 209, 215 (1994).[2]

Further, even if (as Century 21 alleged in its summary judgment motion) Adamos and Foley were no longer employed by Century 21 at the time the letter was sent), the letter was sent directly to 1544 Dorchester Avenue, Dorchester, MA 02122, which is precisely the address Century 21 identifies on the Secretary of the Commonwealth's website as its principal location. See Exhibit 7. The letters were clearly received by Century 21 because they were not returned to undersigned counsel. See Exhibit 5.

Fremont, in turn, argues that it did not receive the letter. Plaintiffs, however, sent the letter and it was not returned. Exhibit 4 and Exhibit 5. Mailing a letter by First Class Mail, postage prepaid, as is the case here, is *prima facie* evidence that it was received by the addressee. Thus,

---

[1] See Mass. R. Civ. P. 4: "(a) Summons: Issuance. Upon commencing the action the plaintiff or his attorney shall deliver a copy of the complaint and a summons for service to the sheriff, deputy sheriff, or special sheriff… ; (c) By Whom Served. ... service of all process shall be made by a sheriff, by his deputy or by a special sheriff…; (d) "Summons: Personal service within the Commonwealth. The summons and a copy of the complaint shall be served together…." Id. (emphasis added).

[2] As the Court held: "Neither of the well-established purposes of a demand letter (see Slaney v. Westwood Auto, Inc., 366 Mass. 688 , 704 [1975]; York v. Sullivan, 369 Mass. 157 , 162 [1975]; Spring v. Geriatric Authy. of Holyoke, 394 Mass. 274 , 288 [1985]) were frustrated or compromised by the fact that the plaintiff sent her demand to the defendants, who resided in Connecticut, in care of their Massachusetts attorney, who had been active counsel of record for over ten months. We, therefore, conclude that the prerequisite to suit under c. 93A, Section 9, was met."

notwithstanding Fremont's assertions, the Court may find that the letter was sent, delivered and received. <u>Kenney v. Boston Mutual Life Ins. Co.</u>, Mass 28 NE2d 490; <u>City of Boston v. Boston Port Development Co.</u>, 308 Mass. 72 (1941).

## VI. DAMAGES SOUGHT AGAINST EACH DEFENDANT

Smith demands treble damages, attorneys fees and costs. G.L. c. 93A § 9(3A), (4) ("If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action…"). Smith's legal fees are $1,650,000 and his costs are $40,546. Smith will submit a detailed affidavit of attorney's fees and costs in accordance with the "Lodestar" method and standards upon instruction from the Court. Smith also demands he be awarded his outstanding tax liability of $213,000 as he testified to at trial.

Smith demands that the attorneys fees, costs and outstanding tax liability be awarded to him jointly and severally, with each defendant having the rights of contribution against the other defendants pursuant to G.L. c. 231B. The defendants acted in concert and as joint tortfeasors. The defendants filed numerous motions and pleadings jointly. Further, there is a substantial risk in this case that if the award of costs and attorneys fees is not made jointly and severally, the award will be uncollectable: Jenkins is incarcerated awaiting trial, Union's owners, John K. Richman and George Fabrizio, have terminated the trust and have dissipated the assets, NEMC has ceased doing business, and Bertucci has informed the undersigned that he has insufficient assets to pay the judgment in this case. Furthermore, counsel to at least one of the defendants in this case has informed the undersigned that *he has exhausted his client's entire insurance policy in legal fees alone*. Accordingly, there is a substantial risk that if Smith is not permitted to obtain his 93A damages from any of the 93A defendants that he will be left without a meaningful recovery.

### A.     Union Capital Mortgage Business Trust

Smith demands $2,053,546 plus interest against Union.  This figure is calculated as follows:

(i)      The jury awarded $50,000 to Smith against Union for Fraud and Breach of Fiduciary Duty.  Smith demands that the award be trebled to $150,000.

(ii)     Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000.  The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

### B.     New England Merchants Corp.

Smith demands $2,053,546 plus interest against NEMC.  This figure is calculated as follows:

(i)      The jury awarded $50,000 to Smith against NEMC for Fraud and Breach of Fiduciary Duty.  Smith demands that the award be trebled to $150,000.

(ii)     Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000.  The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

### C.     Dorchester Real Estate, Inc.

Smith demands $2,053,546 plus interest against Century 21.  This figure is calculated as follows:

(i)      The jury awarded $50,000 to Smith against Century 21 for Fraud and Breach of Fiduciary Duty.  Smith demands that the award be trebled to $150,000.

(ii)     Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000.  The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

**D.     Louis Bertucci**

Smith demands $1,978,546 plus interest against Bertucci. This figure is calculated as follows:

(i)     The jury awarded $25,000 to Smith against Bertucci for Fraud. Smith demands that the award be trebled to $75,000.

(ii)    Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000. The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

**E.     Dwight Jenkins**

Smith demands $2,209,746 plus interest against Dwight Jenkins. This figure is calculated as follows:

(i)     The jury awarded $85,000 to Smith against Jenkins for Fraud, Breach of Contract and Breach of Fiduciary Duty. Smith demands that the award be trebled to $255,000.

(ii)    Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000. The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

(iii)   Smith also demands that Jenkins be disgorged the $81,500 he took in "contract release fees" which Smith was induced to borrow at the closings of the properties.

**F.     Re-Max**

Smith demands $1,903,546 against Re-Max. This figure is calculated as follows:

Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000. The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

### G.     Fremont Investment and Loan

Smith demands $1,903,546 against Fremont.  This figure is calculated as follows:

Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000.  The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

### H.     Robert Kelley and RKelley-Law, P.C.

Smith demands $1,903,546 against Kelley.  This figure is calculated as follows:

Smith demands his costs in the amount of $40,546, his attorneys fees in the amount of $1,650,000, and compensation for his tax burden in the amount of $213,000.  The award of costs, attorney fees and tax liability should be subject to contribution by the other 93A defendants.

## VII.    ADDITIONAL DISCOVERY AND TESTIMONY

Smith intends to introduce the 93A letters sent to each defendant (Exhibit 1 and Exhibit 2), the certified green card returns (Exhibit 3) and the File Memorandum (Exhibit 4).  Should this court seek additional evidence with respect to the steps undertaken to mail and deliver the 93A letters, undersigned counsel, Jonathan Plaut, will testify on point.  He will testify that on February 21, 2007 he sent to Dwight Jenkins, ReMax of America, Century 21, Fremont Investment and Loan, Rachel Noyes, Ivana Foley, James Adamos, Laurice Taylor and New England Merchants Corp via First Class Mail, postage prepaid, a demand letter pursuant to G.L. c. 93A dated December 5, 2006, and that none of those letters were returned to his office as undeliverable, as having insufficient postage, as having an incorrect address, or for any other reason.  See Exhibit 5.

Smith also seeks to introduce at the hearing the loan application which P.J. Goodwin, on behalf of Union Capital, submitted to lenders and which Mr. Smith countersigned for the West Cottage Street property.  See Exhibit 8.

Smith seeks leave to conduct the deposition of Laurice Taylor and to call her as a witness at the 93A portion of this case. Plaintiffs were notified on September 21, 2010 that Re-Max had the address of contact information for Laurice Taylor, a material witness in this case. See Exhibit 9. Smith anticipates adducing testimony that the activities of Laurice Taylor with respect to Dwight Jenkins were both known by and approved by EB Real Estate Group. Through Laurice Taylor and Terrae Gethers, Smith also will introduce into evidence the additional flyer which was distributed by EB Real Estate Group and Dwight Jenkins. See Exhibit 10. Plaintiff also seek to introduce a real estate closing file at EB Real Estate for 544 Saratoga Street, Dorchester which shows: (1) Jenkins was the purchaser; (2) Jenkins had a "contract release" agreement in the EB Real Estate file; (3) Laurice Taylor identified herself as an agent for Jenkins on a purchase and sale agreement while acting as the salesperson of record for EB Real Estate; and (4) the ultimate purchaser was not Jenkins but rather a third party which is consistent with the mode of operation of Jenkins and Taylor. At closing, Jenkins took his contract release fee. These documents were kept in the ordinary course of business records as previously authenticated by Mark Warren.

Finally, Smith will call Timothy Mahoney, CPA MBA as a witness to testify that the tax liability is $213,000 on Smith's forgiveness of indebtedness income as a result of the foreclosures. Mr. Mahoney will testify as to the calculation of this tax liability and will provide a written analysis as to this liability.

Plaintiffs anticipate that the time necessary to conduct additional testimony will not exceed one hour in total.

## **CONCLUSION**

WHEREFORE, Smith respectfully requests the foregoing relief pursuant to G.L. c. 93A.

Respectfully submitted,

ROBERT SMITH and MARIA DASILVA

By their attorneys:

/s/ Jonathan D. Plaut
_____

Jonathan D. Plaut
BBO#: 638344
CHARDON LAW OFFICES
One State Street Suite 1200
Boston, MA 02109
(617) 451-3200

/s/ Jeffrey S. Baker
_____

Jeffrey S. Baker
BBO#544929
Two West Hill Place
Boston, MA 02114
(617) 357-9505
BBO#544929

Dated: November 11, 2010

## CERTIFICATE OF SERVICE

I certify that I have served this document via Notice of Electronic Filing for parties and counsel who receive electronic notice. I have served this document on any parties and counsel who do not receive electronic notice in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

/s/ Jonathan D. Plaut
Jonathan D. Plaut

Date:   November 11, 2010