UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
ROBERT SMITH and MARIA DASILVA,             )
                                            )
    Plaintiffs                              )
                                            )
v.                                          )
                                            )
DWIGHT JENKINS, CHERRY JENKINS,             )
DOREA SMITH, ROBERT E. KELLEY,              )
RKELLEY-LAW, P.C., LOUIS G. BERTUCCI,       )   Case No. 1:07-cv-12067-RSG
EB REAL ESTATE GROUP, INC.,                 )
DORCHESTER REAL ESTATE, INC.,               )
NEW ENGLAND MERCHANTS CORP,                 )
UNION CAPITAL MORTGAGE BUSINESS             )
TRUST, MID CITY MORTGAGE, LLC,              )
FREEMONT INVESTMENT AND LOAN and            )
MERITAGE MORTGAGE CORPORATION,              )
                                            )
    Defendants                              )
_____)

## AFFIDAVIT OF JEFFREY S. BAKER IN SUPPORT OF PETITION FOR ATTORNEY'S FEES

    I, Jeffrey S. Baker, being duly sworn and under oath, do hereby depose and state under the pains and penalties of perjury upon person knowledge as follows:

    1.    I am counsel to the plaintiff, Robert Smith ("Smith"). I have been counsel to Mr. Smith since the inception of this case along with my co-counsel, Jonathan D. Plaut.

    2.    This affidavit is submitted to substantiate our petition for attorney's fees pursuant to G.L. c. 93A in the amount of $1,587,850 and costs in the amount of $42,818.

    3.    The following "lodestar" factors are addressed herein in support of our petition: (1) the time and labor required for our services to Mr. Smith; (2) the novelty and difficulty of the questions present in the case; (3) the skill requisite to perform the legal services properly and thoroughly; (4) the preclusion of other employment by Mr. Plaut and me due to acceptance of the case; (5) our customary legal fees; (6) the nature of our fee with Mr. Smith (fixed or contingent); (7)

1

the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results we obtained for Mr. Smith; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of our professional relationship with Mr. Smith; and (12) the size of awards in similar cases.[1]

### (1)   Time and Labor Required

4. Mr. Smith first entered our offices in approximately October, 2006. From October, 2006 until October, 2010, Attorney Plaut and I represented Mr. Smith throughout the pleading stage, the discovery stage, trial and post-trial motion practice.

5. Representing Mr. Smith was a complicated and difficult legal endeavor. Mr. Smith has serious mental and cognitive challenges which rendered it substantially more difficult to work with him than with most clients. Attorney Plaut and I spent significant time explaining the meaning of documents to Mr. Smith, working with Mr. Smith to uncover the facts relating to the various defendants, and ensuring that Mr. Smith understood the litigation process. In addition to Mr. Smith, we spent significant time working with Mr. Smith's sister, Gloria Smith McCray, so that she was apprised of the work we were doing on Mr. Smith's behalf. She was involved as the closest family member to Mr. Smith, and her involvement was important to ensure that those closest to Mr. Smith were in agreement with the legal process that was occurring.

6. The case itself was, without exception, the most complicated and time consuming case of my entire career, and Attorney Plaut's career as well. Attorney Plaut's affidavit, submitted contemporaneously herewith, confirms this. Attorney Plaut and I devoted ourselves to the vindication of Mr. Smith's rights for over four years to the exclusion of many other cases and business opportunities.

---

[1] Coutin v. young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 227 (1st Cir. 1997); de Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 233-34 (1st Cir. 1990).

7. The case was rendered more complex and time consuming because of the complicated network of fraud that existed among the defendants. Regarding the time and labor required, attached hereto as <u>Exhibit 1</u> is a detailed itemization of time that Attorney Plaut and I spent in furtherance of Mr. Smith's case from the inception of our representation of him in October, 2006 through the trial in October, 2010. The dates the work performed, the tasks performed, and the time entries are correct to a high degree of accuracy. Due to the sheer volume of documents, pleadings, filings, correspondence, drafting, discovery and research there is a small margin of error. Attorney Plaut's affidavit, submitted contemporaneously herewith, confirms that time indicated for his work is accurate. There is no duplication of effort or work; in many instances this case required the participation of both Attorney Plaut and I to prepare for or to complete certain tasks.

8. There were numerous people involved in both of Mr. Smith's real estate purchases. As itemized in <u>Exhibit 1</u>, Attorney Plaut and I interviewed numerous witnesses. We did an enormous amount of legal research. We took the depositions of numerous parties and third party witnesses. We investigated Mr. Smith's background, psychological history and history of medical treatments and developed his testimony in this regard in advance of trial. We spent many hours working with Mr. Smith to ensure that he understood the nature of the deposition process, the contents of his affidavits, the contents of the complaints, his interrogatory responses, the nature of the legal proceedings that were occurring and to prepare him for the two-week trial.

9. Attorney Patrick Groulx assisted us as well commencing in February, 2010. His time is included in the affidavit as well. Attorney Groulx's affidavit, submitted contemporaneously herewith, confirms that the time indicated for his work is accurate as well.

10. No time is indicated in the attached sheet for time spent on solely Maria Dasilva's claims, and no claim is made herein for such time. Time spent on the case which was intended to benefit both Mr. Smith and Ms. Dasilva is included in the attached itemization, because such work

was necessary to advance Mr. Smith's claims. All of the time indicated in <u>Exhibit 1</u> was reasonable and necessary for the effective preparation of Smith's case. None of the time indicated was duplicative, unproductive or excessive.

11. All time set forth in the itemization is for legal work actually undertaken by the counsel identified. No time is indicated or charged for administrative duties such as photocopying, collating, mailing, affixing postage, preparing pleading binders, financial accounting or other non-legal tasks. No time is recorded for tasks which relate solely to the companion state cases, <u>Macharia v. Jenkins</u> and <u>Montrond v. Jenkins</u>.

12. Each time entry in which both my time and Attorney Plaut's time are itemized and charged reflects work actually conducted by both attorneys which was reasonably necessary, in our opinion, for the successful advancement of Robert Smith's case. Where tasks were undertaken by both attorneys and indicated on the itemization, such as documents reviewed by both attorneys, meetings attended by both attorneys, and depositions and trial prepared for by both attorneys, both of our time is indicated because both of our time and participation was reasonably necessary for the successful advancement of Smith's case.

13. For deposition preparation, time itemized by the attorney not taking the deposition is for his time spent in preparing the attorney who took the deposition regarding question preparation and decisions regarding documents to be used at the deposition. For depositions defended by either myself or Attorney Plaut, time spent by the attorney who did not defend the deposition is indicated only for that time actually incurred in preparing the client for the deposition.

14. For the thousands of electronic mails transmitted between co-counsel, opposing counsel and third-party witnesses in this case, 1/5 of an hour per e-mail is itemized. This figure of 1/5 per hour <u>also incorporates</u> the regular and routine telephone follow-up communications with counsel and witnesses. Stated differently, <u>no</u> additional time is indicated or charged for telephone

communications between counsel. All of such communication time is incorporated in the e-mail correspondence calculations. Due to the sheer volume of e-mail and telephone communication, 1/5 of an hour was selected as a uniform amount of time required for each, which is a conservative undervaluation of the time actually incurred in drafting, reviewing, reading, and conferring between counsel on the issues raised therein.

15. The complexity of the legal issues and the time incurred by myself and Attorney Plaut is well known to the Court, in light of the over 450 separate docket entries and the numerous complicated and time-consuming motions filed by many of the defendants, including six summary judgment motions[2]. Our opposition to the six summary judgments alone comprised 100 pages and was thorough in its treatment of the issues presented.

16. Attorney Plaut and I spent virtually every day in August and September of 2010 preparing for trial almost full time, which occurred over two weeks in October. This includes weekends. All of this time is reflected in the attached itemization.

17. <u>Exhibit 1</u> also includes a calculation of $42,818 in out of pocket expenses, for which Smith seeks reimbursement. Each of those expenditures was reasonably necessary for the furtherance of Smith's case.

18. The sheer number of opposing counsel and parties also required additional time. Opposing Attorney Plaut and I were thirteen (13) defendants and twenty-three (23) defense attorneys on this case. Dwight Jenkins, Cherry Jenkins and Dorea Smith were represented by Attorney Domenico, RKelley-Law, P.C. and Robert Kelley were represented by Attorney McLaughlin, Louis Bertucci was represented by Attorney Fein, Re-Max was represented by Attorney King, Attorney Feeherry, Attorney Hillygus and Attorney Azzarito, Century 21 was represented by Attorney Gregory and Attorney McCraw, New England Merchants Corp was

---

[2] In fact, at the pretrial conference on October 6, 2010, the Court stated that this case "set the record for pretrial motions and motions in limine".

represented by Attorney Markoff, Union Capital was represented by Attorney Brighton, Attorney Robertson, Mid-City Mortgage was represented by Attorney Bauer, Attorney Baez, Attorney Pelletier, Attorney Newton, Attorney Kayatta, Attorney Cremins and Attorney Moser, Fremont was represented by Attorney Randall, Attorney Leonardo and Attorney Kennedy, Meritage was represented by Attorney Charet. The number of parties and their counsel increased the time necessary to conduct discovery including depositions, arrange schedules, confer prior to filing discovery motions, and manage the pre-trial preparation.

19. The jury trial lasted nine days. Every day of the jury trial Attorney Plaut and I worked from early morning starting (for me at 4 a.m., and approximately 6:00 for Attorney Plaut) until very late at night. After the trial Attorney Plaut and I opposed several motions for judgment notwithstanding the verdict, and that time is incorporated in Exhibit 1.

**(2)      The Novelty and Difficulty of the Issues**

20. This case involved numerous complicated issues of both fact and law. The facts were extremely complicated. The defendants operated under a cloud of deception, conspiracy, and illegal conduct. In certain circumstances, the defendants rendered misleading and untruthful testimony at deposition, they obfuscated facts, and they failed to provide the contact information for essential witnesses. Moreover, virtually each such Defendant was either a licensed professional or a highly experienced and seasoned real estate investor who knew precisely how to manipulate the rules of fair lending and brokerage so that the defendant Smith would be harmed without obvious detection. The legal issues were complicated. There were myriad issues raised throughout the course of the case, some of which were undoubtedly novel in application, ranging from the competency of Mr. Smith to testify, the duties owed by mortgage brokers to borrowers, the duties owed by mortgage lenders to borrowers, the duties owed by real estate brokers to borrowers, and

the duties owed by closing attorneys to borrowers. Each of these issues, both factually and as to the state of the law, was fully investigated, researched and briefed.

21. Uncovering the fraud of the defendants was an enormous task which was compounded by the intentionally misleading and false testimony at deposition of several witnesses including John K. Richman of Union Capital and Dwight Jenkins, the failure of Re-Max, Century 21 and Fremont to disclose address information of key witnesses and documents (such as Laurice Taylor's address until three weeks before trial which precluded the discovery of her testimony and therefore the ability to call her as a witness, the failure to disclose the contact information for two former Fremont employees who marketed Fremont's loan packages, and Century 21's disclosure of important personnel documents only weeks before trial), and the outright refusal of several witness to render deposition testimony on key points (Philip J. Goodwin and Linda Bryant, both of Union).

22. Preparing the case involved taking the depositions of the defendants and third-party witnesses. There were many thousands of pages of discovery materials furnished by the plaintiffs, and many thousands of pages of discovery materials furnished by the defendants to the plaintiffs.

23. Seven of the defendants filed motions to dismiss. Six defendants filed summary judgment motions. Our memorandum of law in opposition to the summary judgment motions alone spanned 100 pages, which was necessary to brief the court on all of the complex factual and legal issues raised by the defendants. We hired an out-of-state expert witness from Chicago to fly in to the trial to testify as to a relatively novel issue regarding damages. We worked extensively with our expert to prepare his report and prepare him for trial.

**(3)** **The skill requisite to perform the legal services properly**

24. There was substantial skill required to perform the legal services for Mr. Smith properly. This was a highly complex business litigation and fraud case with which required the combined efforts and experience of Attorney Plaut and myself to properly handle and prepare.

Moreover, there were numerous defendants all of whom interacted to perpetrate the fraud upon Mr. Smith which took substantial time and effort to successfully accomplish.

25. This case required the combined experience of myself and Attorney Plaut, a former criminal prosecutor, to properly prepare and try. The files generated in this case spanned easily twenty five (25) standard "banker's box" file boxes plus four file cabinets, and tens of thousands of pages all of which required precision analysis and organization.

26. Almost all of the thirteen defendants were experienced real estate professionals who operated in a network with each other and they had a direct financial incentive to obfuscate the true nature of their interrelationships and their fraud of Mr. Smith. The defendants were highly skilled and trained in the nuances and art of real estate transactions. The Defendants were familiar with the forms and the undertakings in the various documents ad therefore knew precisely how to avoid any clear explanation of the precise nature of the transactions. The Plaintiff on the other hand, had no knowledge of any such documentation or the nature of these transactions. Moreover, given Mr. Smith's handicaps, he was virtually incapable of explaining except in the most general terms exactly what had happened. It was, therefore, up to me and attorney Plaut to figure out the scheme and then to piece together the various pieces and testimony to make the case understandable.

27. Further, most of the twenty-three defense attorneys had virtually unlimited financial resources and insurance policies with which to attempt to defeat Mr. Smith. The defendants filed numerous motions *in limine*, motions to dismiss, motions for summary judgment, motions for appointment of a guardian, and a variety of trial briefs, and discovery motions. There was, in short, no end to the motions and strategies deployed by the Defendants' counsel.

28. Attorney Plaut and I filed a contempt motion, a motion for an injunction against Jenkins, trial motions, motions for leave to file amended complaints, motions to compel. It is clear that Jenkins committed contempt as the record proved, but given the fact that the case was removed

from state court, this Honorable court was reluctant to find that the contempt was against the Order in the Federal Court proceeding, as opposed to the state court action.

**(4)** **The preclusion of other employment by the attorneys due to acceptance of the case.**

29. Attorney Plaut and I sacrificed our personal time and other law cases in order to thoroughly prepare for this case. We forwent other potential paying clients and sacrificed tens of thousands of dollars in expected legal fees in other potential cases in order to properly plead, discover, prepare and try Mr. Smith's case. Both Attorney Plaut and I have devoted the majority of our law practices over the past four years to the diligent, thorough and careful preparation of this case and the companion state court cases. The sacrifice of both myself and attorney Plaut cannot truly be expressed in the limitations of an affidavit. I maintain a fulltime law practice as my sole income, as does Mr. Plaut. In order to adequately prepare for this case I deferred my entire practice with some limitation. We both sacrificed numerous weekends and many days in the summer of 2010 to prepare for the various motions and the trial itself. I maintain an absolutely complete and fulltime law practice that required that I work virtually nonstop in order to fulfill the obligations of this case. This sacrifice was at a very high cost both from a professional standpoint and a personal standpoint.

**(5)** **Our customary legal fees.**

30. My standard billable rate is $450 per hour. I have charged this rate since 2006 on commercial litigation matters. Attorney Plaut's standard billable rate is $350 per hour. Please see Section 9, below, for analysis regarding these hourly charges.[3]

---

[3] Attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate. See <u>People Who Care v. Rockford Bd. Of Educ.</u>, 90 F.3d 1307, 1310 (7th Cir. 1996). The best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work. Spegon v. Catholic Bishop, 175 F.3d 544, 550 (1st Cir. 1999).

**(6)     The nature of the fee.**

31.     Mr. Smith, as a homeless veteran, had no assets with which to fund this case. Attorney Plaut and I decided to represent Mr. Smith on a strictly contingency fee basis, and to fund the case which cost $42,818 in out of pocket expenses to try.  See Exhibit 1.

**(7)     The time limitations imposed by the client or the circumstances.**

32.     This case required an enormous commitment of time, given the totality of the circumstances including: Mr. Smith's particular personal challenges and circumstances, the complexity and interwoven nature of the facts of the conspiracy in this case, the myriad legal issues raised by the facts, the attempts by the defendants and their counsel to inundate Mr. Smith with discovery obligations and motion defense practice, and the length of the trial.

**(8)     The amount involved and the results obtained.**

33.     Attorney Plaut and I obtained substantial results for Mr. Smith.  We prevailed in this case against both of the mortgage brokers who brokered loans on Mr. Smith's properties, against Dwight Jenkins, against Century 21 and against Louis Bertucci.

34.     The jury awarded $50,000 to Smith against Union for Fraud and Breach of Fiduciary Duty.  The jury awarded $50,000 to Smith against NEMC for Fraud and Breach of Fiduciary Duty. The jury awarded $85,000 to Smith against Jenkins for Fraud, Breach of Contract and Breach of Fiduciary Duty.  The jury awarded $50,000 to Smith against Century 21 for Fraud and Breach of Fiduciary Duty. The jury awarded $25,000 to Smith against Bertucci for Fraud.  To the extent that the most critical factor in determining the reasonableness of the award is the degree of success obtained, Attorney Plaut and I are entitled to the full measure of the fees we request hereunder.[4]

---

[4] Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1166 (7th cir. 1997) (success may be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked).

10

**(9)     The experience, reputation, and ability of the attorneys**

35.     My standard billable rate is $450 per hour. I routine charge this hourly fee to my clients. This hourly fee is commensurate with those attorneys in the Greater Boston legal community who practice in the same areas that I do and that have the commensurate skill and experience levels that I have.

36.     I have been practicing law in Massachusetts since my admission to the Bar 25 years ago, in 1985. I have been in good standing with the Bar at all times since my admission. I graduated from Trinity College, Hartford, CT, in 1981 and Suffolk University School of Law in 1984. Upon my graduation from law school, I immediately joined a law firm in Boston called Caviston and McArdle, where I worked in both real estate and civil litigation. Shortly thereafter, in 1986, I joined the firm of Gargill, Sassoon and Rudolph, of Boston, MA, in the litigation and bankruptcy department. I remained as an associate at that firm until I left and started my own firm in 1987. My practice focuses upon business litigation, which includes claims brought under G.L. c. 93A. I have tried cases in state and federal courts all over the country. I have appeared and argued in a number of Appeals courts, primarily in Massachusetts. I have appeared before the United States Supreme Court on an amicus curiae brief. I have represented numerous individuals, corporations, unincorporated businesses and partnerships in a wide variety of disputes throughout my career. Most attorneys who practice business litigation as I have charge a similar fee, or more, per hour for their work with similar or commensurate experience and expertise.

37.     I believe that I have a very good reputation in the Greater Boston legal community for hard work, legal competence and ability. I comport myself at all times with the highest ideals of legal integrity and I believe my reputation in the community reflects this.

38.     Attorney Plaut has been practicing law in Massachusetts since 1997 and has been licensed to practice law in New York since 2009. He is a former criminal prosecutor and has tried

upwards of 100 cases in his career. He focuses primarily on business litigation cases, including business disputes, attorney malpractice cases, professional licensure cases, banking litigation and others. His standard rate is $350 per hour and he has numerous clients which pay his fees at those rates. I have personal knowledge that in some cases he charges and is paid $400 per hour. Those rates are standard for an attorney with Attorney Plaut's legal experience and skill in the Greater Boston community.

39.     I know that Attorney Plaut has a very good reputation in the Greater Boston legal community for hard work, legal competence and ability. I have observed that he comports himself at all times with the highest ideals of legal integrity, and his reputation in the community reflects this.

40.     Patrick Groulx passed the Massachusetts Bar on his first attempt in 2008. He has a good reputation in the local legal community, of which I am personally aware. He regularly charges $150 per hour for his services, which I believe is fair and reasonable.

**(10)     The undesirability of the case.**

41.     Attorney Plaut and I were not the first attorneys Robert Smith approached with his case. At least two other attorneys were offered the case but rejected it before Mr. Smith was referred to Attorney Plaut and me by the Massachusetts Attorney General. Moreover, this case is difficult to undertake given the fact that most of the Defendants were represented by insurance defense counsel with virtually limitless resources. Conversely, Mr. Smith is a man of no assets, resources and no money and therefore it was necessary to take this matter on without payment on an ongoing basis.

**(11)     The nature and length of the professional relationship with the client.**

42.     Attorney Plaut and I only have a relationship with Mr. Smith by and through this case. We have no other interactions with Mr. Smith other than through this case.

12

**(12)   The size of awards in similar cases.**

43.   Upon information and belief, this case is the first case of its type to be tried in the United States. Attorney Plaut and I are unaware of any case where a mentally challenged man was induced to purchase real property without his full knowledge or understanding, based upon a conspiracy of licensed mortgage and real estate professionals. In light of this, we are unaware of any comparable awards in similar cases.

44.   We received no settlement offers from any of the defendants which were substantial or realistic. No settlement offers were made which approached the value of the case, as determined by the verdicts returned.

45.   We also seek interest on the attorney's fee award from the date of judgment, November 1, 2010 until the date the attorney's fee award is paid.[5]

46.   To the extent an attorney's fee may be measured by the "harm checked" by a successful prosecution of a case, Attorney Plaut and I are entitled to an award of our requested fees. In this case, the conduct of the defendants, coupled with the disparity of knowledge, sophistication and experience in real estate between Robert Smith and themselves, is egregious. The defendants in this case received fees totaling in the millions of dollars on the strength of their cooperation between and among themselves during the height of the subprime mortgage activity in 2004-2006. They abused their positions of power, knowledge, education and state licensure in this case to take reckless advantage of a mentally challenged veteran by coercing him into signing important documents which everybody except Smith knew were utterly false and misleading. They lured him into exposing himself to criminal penalties, ruination of credit, collection activity and forgiveness of indebtedness income. As a result, every corporate defendant in the case – Fremont, Meritage, Union, New England Merchants, Re-Max, Century 21 and even Mid-City – is either no longer in

---

[5] Edge, supra at 30.

business, is bankrupt is subject to cease and desist orders, has closed their franchises, or has terminated the independent contractorship of the main malfeasors. Attorney Bertucci left his former employer. Jenkins, in turn, is incarcerated awaiting trial less than 10 years after having been released from prison for a bank fraud conviction. We have earned our fee by, among other reasons, the harm we have checked.

47. In summary, the attorneys fee provision of Chapter 93A has a public policy component. I understand that that provision was specifically designed to enable and even encourage attorneys to bring cases where the single damages awardable at trial would simply not justify the expense of attorney time, energy, effort and out-of-pocket expenses required to bring the case. Even where one dollar in damages is awarded, the attorneys fee provision ensures that the lawyer will not have championed the meritful – but low damages – case without fair compensation. The fees and costs requested herein reflect the amount of work, effort and time Attorney Plaut and I invested in this case.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 4th DAY OF FEBRUARY, 2011.

/s/ Jeffrey S. Baker

_____

Jeffrey S. Baker