UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-CV-12067-RGS

ROBERT SMITH, et al.

v.

DWIGHT JENKINS, et al.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS
FOR JUDGMENT AS A MATTER OF LAW

April 11, 2011

STEARNS, D.J.

In this Chapter 93A decision, the court will resolve the threshold jurisdictional issue of whether plaintiff Robert Smith made proper service on all defendants of the demand letters required by Mass. Gen. Laws ch. 93A, § 9(3), as well as the merits of the claim against EB Real Estate Group, Inc. (RE/MAX).

BACKGROUND

On November 1, 2010, after a jury returned a verdict largely favorable to Smith on his mortgage fraud-related claims against certain defendants, the court entered the following judgments: $50,000 each against Dorchester Real Estate (Dorchester), New England Merchants Corp. (NEMC), and Union Capital Business Mortgage Trust (Union) (counts of fraud and breach of fiduciary duty); $25,000 against defendant Louis Bertucci (fraud); and $85,000 against defendant Dwight Jenkins (counts of fraud,

breach of contract, and breach of fiduciary duty). *See* Judgment (Dkt. # 452). The court reserved a decision on Smith's Chapter 93A claims.[1]

On October 29, 2010, Fremont renewed its Motion for Judgment as a Matter of Law on the remaining Chapter 93A count. On November, 18, 2010, Union joined the motion, followed by Louis Bertucci on November 19, 2010, and Dorchester on November 29, 2010.[2] A hearing was held on February 7, 2011, after which the court requested supplemental briefing on the issue of the sufficiency of service of Smith's Chapter 93A demand letters. For reasons to be stated, the court will allow the motion as to defendants Fremont, Union, Dorchester, and RE/MAX, and deny the motion as to Bertucci.

---

[1] At the close of plaintiffs' case, the court directed a verdict in favor of defendants Robert Kelley, RKelley-Law, P.C., Mid City Mortgage, LLC, Signature Group Holdings, Inc. (Fremont), Cherry Jenkins, and Dorea Smith on all of the non-Chapter 93A counts. *See Acushnet Fed. Credit Union v. Roderick*, 26 Mass. App. Ct. 604, 606 (1988) ("This joining of a common law action with one based on statute put to the judge the choice of letting the jury find the facts for both claims, reserving to himself all aspects of the c. 93A claim, or asking the jury for a non-binding advisory as to whether the Credit Union had acted unfairly or deceptively in procuring Mrs. Roderick's signature on the note."). The court also directed a verdict against plaintiff Maria DaSilva on all claims. Also, the jury found in favor of defendant RE/MAX on all common-law claims presented to it.

[2] The court notes that although NEMC also filed for judgment as a matter of law on November 19, 2010, it did not address the Chapter 93A claim in its brief. At the hearing, Smith offered in evidence a signed certified mail "green card" dated December 8, 2006, suggesting service on NEMC. *See* Feb. 7, 2011 Hr'g - Ex. 2.

## DISCUSSION

To prevail on a Chapter 93A claim, a plaintiff must show that a defendant engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in business transactions." Mass. Gen. Laws ch. 93A, § 2. The statute, however, has a jurisdictional prerequisite: "At least thirty days prior to the filing of any such [unfair practices] action, a written demand letter for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." *Id*. § 9(3). *See Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 287 (1985) ("We have often held that '[a] demand letter listing the specific deceptive practices claimed as a prerequisite to suit and as a *special element that must be alleged and proved . . . .*'"); *Lingis v. Waisbren*, 75 Mass. App. Ct. 464, 469 (2009) (where there was no evidence "that the [demand] letter had been sent, received, or replied to," plaintiff's Chapter 93A claim necessarily failed). *See also Thorpe v. Mut. of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir. 1993) ("The twin reasons for the demand letter are, first, to encourage negotiation and settlement, and second, to control the amount of damages recoverable by the plaintiff."); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975) (same). The demand letter must describe the complained-of acts with reasonable specificity. *See Piccuiro v. Gaitenby*, 20 Mass. App. Ct. 286, 291-292 (1985). Consistent with the

purposes of the demand letter, there is no right to obtain relief for any wrongful act that is not described in the letter. *Bressel v. Jolicoeur*, 34 Mass. App. Ct. 205, 211 (1993).

### *Fremont*

Fremont argues that because Smith's demand letter was delivered to the wrong postal address, the requirement of section 9(3) that the letter be "mailed or delivered to any respective respondent" was not met. It is undisputed that Smith's attorney, Jonathan Plaut, mailed two copies of the demand letter intended for Fremont, the first by certified mail in December of 2006, and the second by first class mail in February of 2007. It is also undisputed that Plaut mailed both copies of the letter to the address "272 E. Imperial Highway, Brea, California." Hr'g - Ex. 1. Finally, it is undisputed that in 2006 and 2007, Fremont's office was actually located at "2727 E. Imperial Highway, Brea, California," Hr'g - Exs. 12, 13, which is approximately 2,500 addresses and two miles away from the address that Plaut used. Plaut testified that the copy sent by certified mail had been returned as "undelivered or unclaimed"; however, he had lost or misplaced the returned original. He also testified that the copy that he had sent by first class mail was never returned.

Smith argues that because the demand letter sent by first class mail was not returned, the so called "mailbox rule" should apply, and the court should presume that the letter was delivered. The presumption, however, is of no help to Smith as the issue

4

is not whether the letter was delivered, but whether it was delivered to Fremont (which Fremont vigorously denies). *See Univ. Emergency Med. Found. v. Rapier Invs., Ltd.*, 197 F.3d 18, 23 (1st Cir. 1999) (a party loses the benefit of the mailbox rule if it sent the document "to the *wrong address* and there was no delivery [to the intended recipient]"). *See also Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009) (noting the "almost uniform[]" rule that "'[m]ailing is not presenting; there must be receipt[,]'" quoting *Drazan v. United States*, 762 F.2d, 56, 58 (7th Cir. 1985)). Because there is no evidence that the demand letter was ever received by Fremont, its motion for judgment as a matter of law will be allowed.

### *Union*

Union also challenges the sufficiency of the service of the demand letter. Under the Massachusetts Rules of Civil Procedure, proper service on a domestic corporation requires delivery to a corporate officer, a managing or general agent, or the person in charge at its principal place of business within the Commonwealth. Mass. R. Civ. P. 4(d)(2).[3] Plaut testified that he sent the demand letter by certified mail to "Union

---

[3] While Chapter 93A, § 9(3) does not specifically reference Rule 4, there is no reason to believe that service of a demand letter does not fall under Rule 4, given the fact that the Legislature did not provide any other rule governing service besides the requirement that the demand letter "shall be mailed or delivered to any prospective respondent." *But cf. Caisse v. DuDubois*, 346 F.3d 213, 217 (1st Cir. 2006) (excusing an inmate plaintiff's failure to make service on the Commonwealth in compliance with Mass. R. Civ. P. 4(d)(3), and noting that the Rules of Civil Procedure "yield to specific

Capital M[ortgage] Business Trust, 37 Orchard St., Randolph, [MA], 02368."[4] Hr'g - Ex. 2. The Massachusetts Superior Court interprets Mass. R. Civ. P. 4(d)(2) as requiring that a demand letter be addressed to a designated individual. *See Weber v. Zurich Fin. Servs. Grp.*, 2004 WL 3091635, *2 (Mass. Super. Ct. Nov. 30, 2004). In this case, that individual would have been George Fabrizio, the Registered Agent of Union Capital. Instead, the demand letter was addressed to Union Capital as an entity without specifying George Fabrizio or any other person as the designated recipient. The certified mail receipt was signed by Charleen Fabrizio (George Fabrizio's wife), who is not an authorized agent of Union Capital. Union argues that "[u]pon receipt of a returned certified mail card bearing a signature by someone not a registered agent of the business, the plaintiff could have resent the letter, this time addressed to Mr. Fabrizio as the registered agent, or mailed the letter by certified mail to Mr. Fabrizio at the business address in Braintree, or had the letter served on the person in charge of the business in Braintree." Union's Mem. at 21 (Dkt. # 209). Plaut elected to do none of these things, and instead rested his efforts to make service on Charleen Fabrizio's signature.

---

statutes [like the Tort Claims Act] which establish special service requirements"). Chapter 93A, § 9(3), unlike the Tort Claims Act, contains no special provision for service.

[4] The address is that of George Fabrizio's residence.

Smith's contention that Charleen Fabrizio as George Fabrizio's wife is his "authorized signatory" or "designee" is based on no law or fact other than the ancient common-law fiction that the wife's personality has no existence apart from her husband. *See* WILLIAM BLACKSTONE, COMMENTARIES *442 (1765) ("By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage . . . [and] she performs every thing . . . under the protection and influence of her husband . . . ."). The fiction has long been discarded in the common law. *See, e.g.*, Married Women's Property Act of the English Parliament, 45 & 46 Vict., c. 75, s 12 (1882).  Smith argues that because Plaut mailed the demand letter to the address listed for Union Capital on the Massachusetts Secretary of State's website, and because Charleen Fabrizio never contacted Plaut to tell him that the demand letter had not been delivered to George Fabrizio, any omission in making service should be excused.[5] The court sees no reason to do so. Because Smith's demand letter was neither addressed to George Fabrizio nor delivered to a person with authority to negotiate or settle the claim, the Chapter 93A delivery requirement was not satisfied, and Union's motion for judgment as a matter of law will

---

[5] At the time the letter was delivered to his home, George Fabrizio was incarcerated on matters unrelated in any direct sense to this case.

be allowed.[6]

### *Dorchester*

Dorchester similarly contends that any demand letter Smith may have attempted to send it was neither properly addressed nor ever received. The letters Plaut mailed in the case of Dorchester were addressed to James Adamos and Evana Foley "c/o Century 21." Adamos and Foley were independent contractors, neither of whom was employed by Dorchester at the time the letters were mailed. Another copy of the demand letter was addressed to "Century 21 of New England, Inc." in Burlington, Massachusetts, an entity that is not affiliated with Dorchester or a party to these proceedings. *See* Hr'g - Exs. 1, 2. Dorchester contends that the sending of the demand letter to two persons that it no longer employed and to an unrelated entity[7] does not

---

[6] By way of pertinent analogy, under the Massachusetts Tort Claim Act, Mass. Gen. Laws ch. 258, § 4, presentment is also a "statutory condition precedent to recovery." *Vasys v. Metro. Dist. Comm'n*, 387 Mass. 51, 55 (1982). Presentment must be made to the executive officer of the municipality or agency who has the authority "to fully investigate 'arbitrate, compromise or settle' [the] claim . . . ." *Garcia v. Essex Cnty. Sheriff's Dep't*, 65 Mass. App. Ct. 104, 107 (2005). The requirement is strictly construed. *See Daveiga v. Boston Pub. Health Comm'n*, 449 Mass. 434, 436-437 (2007) (presentment to the Mayor of Boston was deemed ineffective where the agency being sued, even though under pervasive City control, was nonetheless chartered as a legally distinct "body politic and corporate").

[7] During the February 7, 2011 hearing, Plaut conceded that he was unaware of any affiliation between "Dorchester Real Estate" and "Century 21 of New England," aside from the fact that they are both franchisees of the same parent corporation. Plaut testified that he was uncertain about the appropriate defendant to be named at the time

comply with Chapter 93A.[8] *See DiBona v. Furnace Brook Office Condo. Assoc.*, 2000 WL 804648, at *3 (Mass. Super. Ct. Jan. 4, 2000) (Chapter 93A requires that a demand letter be "sent to the *defendant* as required by the statute.") (emphasis added). This court agrees. Because Smith failed to serve the demand letter on Dorchester, its motion for judgment as a matter of law on the Chapter 93A claim will be allowed.

### *Louis Bertucci*

Bertucci testified during the jury trial that he had never received a demand letter from Smith. *See also* Bertucci's Mem. at 2 (Dkt. # 458). The evidence, however, contradicts his testimony. Plaut testified that he sent Bertucci a demand letter by certified mail on February 21, 2007, and offered the signed "green card" in evidence as proof of having made service. *See* Hr'g - Ex. 2. Moreover, Bertucci's counsel, Christopher Fein, wrote back to Plaut on March 16, 2007. *See id.* - Ex. 10. The opening paragraph of Fein's letter states: "This letter is a response to your correspondence ('Demand') which purports to be a demand in accordance with

---

he sent the demand letters in December of 2006, and again in February of 2007. As Dorchester points out, despite his doubts, Plaut took no steps to cure the presentment error even after learning the name of the correct legal entity and its address for purposes of serving the Complaint.

[8] Dorchester contends that the demand letter should have been sent to "Dorchester Real Estate, Inc.," "Dorchester Real Estate Associates," or to Karin Cahill individually as the owner, broker, and registered agent.

Massachusetts General Laws c. 93A."[9] *Id.* Bertucci's denial of having received the demand letter is simply not credible. Bertucci's motion for judgment as a matter of law as to the Chapter 93A claim will be denied.

**RE/MAX**

As I agree with the jury's verdict that RE/MAX committed no acts of fraud, breached no contract, and abused no trust with respect to Smith, its motion for judgment as a matter of law on the Chapter 93A claim will be allowed.[10]

ORDER

For the foregoing reasons, the motions for judgment as a matter of law on Smith's Chapter 93A claim by defendants Fremont, Union, Dorchester, and RE/MAX are <u>ALLOWED</u>. The motion by Bertucci for judgment as a matter of law is <u>DENIED</u>. NEMC, Jenkins, and Bertucci will have fifteen (15) days from the date of this Order to file a response to Smith's Chapter 93A request for multiple damages and attorneys' fees. Smith will have ten (10) days thereafter to file a reply.

---

[9] Bertucci argues that the demand letter was addressed to the wrong legal entity because "The Law Office of Lou Bertucci" did not come into existence until after the events described in the demand letter. The argument is unavailing. Consistent with the rule under Chapter 258, the court is confident that Massachusetts would recognize an "actual notice" exception to the Chapter 93A demand letter requirement as well. *See Bellanti v. Boston Pub. Health Comm'n*, 70 Mass. App. Ct. 401, 407 (2007).

[10] The court will treat RE/MAX's February 4, 2011 Response to Smith's Chapter 93A Statement (Dkt. # 455) as a motion for judgment as a matter of law.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE