UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-CV-12067-RGS

ROBERT SMITH, et al.

v.

DWIGHT JENKINS, et al.

MEMORANDUM AND ORDER ON MOTIONS OF DEFENDANTS
DORCHESTER REAL ESTATE, INC., UNION CAPITAL MORTGAGE
BUSINESS TRUST, and NEW ENGLAND MERCHANTS CORP. FOR
JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL

May 3, 2011

STEARNS, D.J.

The motions will be denied in part and allowed in part. "A federal court may not set aside a jury verdict and direct the entry of a contrary verdict unless no reasonable jury could have returned a verdict adverse to the moving party." *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1483 (1st Cir. 1994). *See also Acevedo-Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir. 1993) (a verdict will be set aside under Rule 50(b) only on a "determination that the evidence could lead a reasonable person to only one conclusion."). A court is to "examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant," and in doing so, the court does "not consider credibility of witnesses, resolve conflicts in testimony, or

evaluate the weight of the evidence." *Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir. 1987).

A new trial under Rule 59 will be granted only "'if [the court] believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.'" *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 731 (1st Cir. 1999), quoting *Velazquez v. Figueroa-Gomez*, 996 F.2d 425, 427 (1st Cir. 1993). A district judge "'cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial.'" *Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996), quoting *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir. 1988). "[T]he trial judge's discretion, although great, must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir. 1982).

Defendants set out the relevant standards fairly, acknowledging that the hurdles are "high" and that the court must give Smith "the benefit of every legitimate inference." Dorchester Real Estate (Century 21) objects to the verdicts on the fraud and breach of fiduciary duty counts, arguing generally that they are against the weight of the trial evidence, although noting that the jury did not find it liable for breach of contract. More specifically, with respect to the misrepresentation claim, Century 21

2

argues that there was no evidence that it (through Adamos) made an "unqualified statement of fact" with the intent of inducing reliance by Smith to his detriment, or that Smith in fact relied on any statements that were made. It also argues that there was no evidence on which Adamos (described variously by Century 21 in its memorandum as an "independent contractor" and as its "sales agent") could have been found to have acted with its actual or apparent authority. The record, read with the indulgence that is due to Smith, simply does not support the argument. As Smith points out, Adamos worked closely with Century 21, represented himself as an agent of Century 21, and despite owner Karin Cahill's knowledge of Adamos's transactions with Jenkins and Smith, she did nothing to correct the impression that he was acting on behalf of Century 21.[1]

With respect to the breach of fiduciary duty claim, Century 21 does not quarrel with the court's instruction that a fiduciary relationship between a broker and a borrower, while it is not imposed by law, can be created by a defendant's "tak[ing] advantage [of a plaintiff's] reliance to the plaintiff's detriment." At bottom, Century 21 takes issue with the jury's interpretation of the considerable evidence that Smith suffers from many vulnerabilities (including intelligence deficits and functional

---

[1] It is undisputed that Ivana Foley, another Century 21 sales agent, attended the Cottage Street closing, while Adamos was involved in the Dighton transaction. It is also undisputed that Century 21 received a commission on the Cottage Street sale.

3

illiteracy) and the credibility that it evidently gave to Smith's testimony that he reposed his trust in Century 21.

Finally, Century 21 adopts New England Merchants Corporation (NEMCO)'s argument that Smith's damages were based solely on the expert testimony of Dr. Stanley Smith, a forensic economist (who is not related to the plaintiff), which defendants argue should not have been admitted.[2] It is true that Dr. Smith's testimony was hardly a model of exactitude, and in retrospect, it perhaps should have been excluded, but it is equally true that from every appearance, the jury did not base its damages award on those portions of Dr. Smith's relatively brief testimony that veered from the mundane into the purely speculative. (The court instructed the jury to disregard Dr. Smith's attempt to import a wholly conjectural potential tax liability into his "willingness to pay" econometric model and refused to admit his written report in evidence). It appears rather that the jury based its far less ambitious awards against those defendants it found liable on a common-sense assessment of the impact that the ruin of Smith's credit had (and will have) on his emotional health and future earning

---

[2] The court denied a motion brought by defendants prior to (and during) trial to exclude or strike Dr. Smith's testimony on *Daubert* grounds. *See* Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 592 (1993). The motion relied principally on Magistrate Judge Neiman's decision to preclude Dr. Smith's testimony in *Saia v. Sears Roebuck & Co.*, 47 F. Supp. 2d 141 (D. Mass. 1999). In Magistrate Judge Neiman's view, Dr. Smith's "willingness to pay" method of calculating hedonic damages "includes assumptions that cannot be validated." *Id.* at 146.

prospects.[3] In any event, the ability of the court to order a new trial or enter a judgment of law simply because it may disagree with the size of a damage award is limited and rarely exercised. *See Gil de Rebollo v. Miami Heat Ass'ns, Inc.*, 137 F.3d 56, 62 (1st Cir. 1998).

NEMCO makes similar arguments with respect to the jury's finding that it was also liable on the fraud and breach of fiduciary duty claims. NEMCO contends that it did not know of the factual misstatements regarding Smith's income and assets that were made in the loan application underlying the Dighton purchase and blames the misrepresentations on Rachel Noyes, a former NEMCO employee who was not called as a witness. Finally, NEMCO argues that there is no evidence that Noyes was acting as its agent, but was at all times instead functioning as an independent contractor. The

---

[3] Century 21's argument that the verdict against it is invalid as internally inconsistent is based on the mistaken assumption that the claim of fraudulent misrepresentation is subsumed in the contract claim. While the suggestion that the "substance of the alleged contract . . . is the same as the substance of the alleged misrepresentation" may be true insofar as it goes, the elements of the causes of action of misrepresentation and contract in fact bear little resemblance. A contract requires an agreement and consideration (which the jury found absent as between Century 21 and Smith). Misrepresentation requires a showing of reliance (which the jury did find). Nor is there any weight to the argument that the verdict is inconsistent because another defendant was found not liable for a similar misrepresentation while Century 21 was. Not only is there a "substantial reluctance" to consider internal inconsistency in civil jury verdicts as a basis for a new trial, *Connelly v. Hyundai Motor Co.*, 351 F.3d 535, 540 (1st Cir. 2003), but objections to inconsistences in the verdict must be lodged "while the jury is still in the box," or the issue is forfeited. *Correia v. Fitzgerald*, 354 F.3d 47, 57 (1st Cir. 2003). No objection was lodged here.

5

court in its instructions carefully explained to the jury the law of agency without objection, including the instruction that a broker "cannot use the label independent contractor to escape the duty imposed on her by law to supervise the junior brokers in her employ." Finally, NEMCO makes a more amplified argument that the damages testimony of Dr. Smith was unreliable and should have been excluded on *Daubert* grounds. As the court is of the view that Dr. Smith's testimony (to the extent the jury was permitted to consider it) had no pernicious influence on the damages award, it will reject this argument for the same reasons as in the case of Century 21.[4]

Defendant Union Capital also moves for judgment as a matter of law on the fraud and breach of fiduciary duty claims. Union Capital argues that because no evidence was offered at trial that its agent, P.J. Goodwin, or anyone else from Union Capital, ever met with or had a conversation with Smith, it is impossible that it could have made a statement *to Smith* upon which Smith could have reasonably relied to his detriment or that it could have known that Smith had "reposed a high degree of trust

---

[4] The court disagrees with NEMCO's final suggestion of error in the admission of the 2007 cease and desist order of the Commissioner of Banks that found NEMCO to have systematically violated a 2005 consent order to cease engaging in the very types of fraudulent practices that enmeshed Smith. The Commissioner's order was probative of a pattern of conduct on NEMCO's part. Philip Goduti, the owner of NEMCO, acknowledged the cease and desist order in his testimony and made clear his unflattering view of the effectiveness of the Commissioner's surveillance of the mortgage financing industry.

6

and confidence" in it of which it took advantage, again to Smith's detriment. Smith acknowledges that he never met Goodwin, but argues that it is of "no moment" because Bertucci appeared at the Cottage Street closing as Union Capital's attorney and "represented to him . . . that the documentation presented to him was accurate, complete, truthful and in order." Similarly, Smith argues "that he was led to believe that all of the persons at the closing [including Bertucci] would act in his best interests."

In fact, the evidence does not bear out Smith's assertion. Bertucci did not testify that he was Union Capital's attorney; nor could he have been. It is a hornbook principle of conveyancing law that the professional duty of the attorney for the lender-mortgagee, in this case Meritage Mortgage Corporation (Meritage), is owed exclusively to the client and not to the other parties to the transaction, including the borrower, in this case Smith. *See Real Estate Bar Ass'n for Massachusetts, Inc. v. Nat'l Real Estate Info. Servs.*, 459 Mass. 512, 2011 WL 1520142, at * 12 n.39 (Mass. Apr. 25, 2011) (noting statutory exceptions not applicable here); *Page v. Frazier*, 388 Mass. 55, 60-63 (1983) (noting the inherent conflict between mortgagee and mortgagor requiring independent representation). The most pertinent testimony was that of John Richmond, one of the two principals of Union Capital, who stated that the RKelley-Law Office, of which Bertucci was a member, did closings in which Union Capital was involved,

but always as the attorney for the lender. With respect to the Cottage Street loan, Richmond testified that he had questioned the contract release fee being paid to Jenkins and was told by Bertucci that his client Meritage had given its approval. While, as Smith points out, there is ample evidence that Union Capital was engaged in mortgage fraud, the evidence at trial established, at best, that Meritage,[5] and not Smith, was the victim of that fraud.[6] Therefore, Union Capital's motion for judgment as a matter of law on the misrepresentation and breach of fiduciary duty claim will be allowed.

ORDER

For the foregoing reasons, the motions by Century 21 and NEMCO for Judgment as a Matter of Law or, in the alternative, for a New Trial, are <u>DENIED</u>, while the motion by Union Capital for Judgment as a Mater of Law is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[5] Whether Meritage itself was engaged in fraud against the next level lender was not a matter for the trial of this case to resolve.

[6] Also, as Union Capital points out, given that the original loan application that Goodwin prepared was never entered in evidence at trial, Smith has, at best, only the most remote circumstantial evidence that Union Capital in fact submitted false statements to Meritage.