UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-12067-RGS

ROBERT SMITH

v.

DWIGHT JENKINS, LOUIS G. BERTUCCI, EB REAL ESTATE GROUP, INC., DORCHESTER REAL ESTATE, INC., NEW ENGLAND MERCHANTS CORP., and UNION CAPITAL MORTGAGE BUSINESS TRUST.

MEMORANDUM AND PROVISIONAL ORDER ON DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF CERTAIN TYPES OF DAMAGES AT JURY TRIAL

February 21, 2014

STEARNS, J.

Defendant Dorchester Real Estate, Inc. (a/k/a Century 21) moves to preclude plaintiff Robert Smith from offering evidence of certain categories of damages against Century 21 for fraud and breach of fiduciary duty.[1]  *See* Dkt. # 600.  Plaintiff Robert Smith lists seven specific theories of damages, evidence of which he seeks to offer at trial.[2]  *See* Dkt. #620.

---

[1] These are: (1) alleged lost rents; (2) contract release fees; (3) putative tax liability; (4) hedonic damages; and (5) lost credit expectancy damages.
[2] These are: (1) putative tax liability; (2) lost rental income; (3) contract release fees; (4) sales commissions; (5) inflation of property value (as an alternative theory to recover the contract release fees); (6) a paid water bill; and (7) loss of time.

INTRODUCTION

The court is guided by Justice Cutter's opinion in *Rice v. Price*, 340 Mass. 502 (1960), and his discussion of the two accepted theories of recovery in an action of deceit. Justice Cutter noted that "Massachusetts decisions, in awarding damages in actions of deceit, have followed, at least in appropriate cases, the 'benefit of the bargain' rule," under which "the plaintiff is entitled to recover the difference between the value of what he has received and the actual value of what he would have received if the representations had been true." *Id.* at 507. Nonetheless, this rule "has not been rigidly followed," and "may be modified or supplemented to prevent injustice." *Id.* at 509. The alternative is the "so called 'out of pocket' rule embodied in *Restatement: Torts*, §§ 525, 549," which "permits recovery of 'the pecuniary loss which results from the falsity of the matter misrepresented, including (a) the difference between the value of the thing bought and the value of the thing exchanged for it, and (b) pecuniary loss suffered otherwise as a consequence of reliance upon the truth of the representation." *Id.* at 507, n. 4. The out-of-pocket rule, according to Justice Cutter, is to be applied "[w]here the proof is so vague as to cast virtually no light upon the value of the property had it conformed to the

representations, damages will be awarded equal to the loss sustained." *Id.* at 510, quoting *Prosser on Torts* (2d ed.) 570. [3]

This is such a case. As the First Circuit noted, "[t]he circumstances of this case are truly exceptional . . . Smith did not even know that he was purchasing two properties, let alone that he was obligating himself to repay nearly $850,000 . . . . Indeed, Century 21 agents and their cohorts kept Smith entirely blind as to the nature of the purported investments." *Smith v. Jenkins*, 732 F.3d 51, 63 (1st Cir. 2013). Because the liability in this case rests, in large part, on Smith's compromised mental capacity and Century 21's exploitation of his lack of comprehension of the two transactions at issue, it is virtually impossible to determine with any degree of certainty, what "benefit" Smith believed he was "bargaining for" or what he understood as represented to him regarding the ultimate value of the transactions. The primary misrepresentation by Century 21's agents that ultimately caused harm to Smith was the assurance that "everything will be all right" and that he was making an "investment" that would cost him nothing. As it turned out, everything was not "all right." After the

---

[3] The *Price* court went on to note that "[w]here the damages under the benefit-of-bargain rule are proved with reasonable certainty, that rule will be employed. In addition the plaintiff may recover for consequential damages, such as expenses to which he has been put, provided that they are regarded as 'proximate' results of the misrepresentation." *Id.*

meltdown occurred, Smith found himself hounded by creditors seeking overdue mortgage payments and by tenants demanding repairs on "his properties."

Because there is no real evidence that Smith actually relied on any representation of the actual value of the transactions, attempting to apply a benefit of the bargain theory of damages would invite a level of speculation certain to lead to error. Consequently, the court proposes to apply the "out of pocket" rule, along with the possibility that the evidence may establish calculable consequential damages that can be shown to have been "'proximate' results of the misrepresentation." *Rice,* 340 Mass. at 510.

With respect to Century 21's breach of fiduciary duty, the court is open to a theory of disgorgement that would require Century 21 to forfeit as an equitable manner any commissions or other emoluments it earned at Smith's expense. *See* Restatement (2d) of Torts § 874 (1979) (noting that a fiduciary may be liable for "profits that result to the fiduciary from his breach of duty"). *Cf. Chelsea Indus., Inc. v. Gaffney*, 389 Mass. 1, 12-13 (1983) (affirming an award of forfeiture of defendants' compensation in breach of fiduciary duty, and acknowledging cases supporting forfeiture even absent a showing of actual injury in that amount to the plaintiff).

DISCUSSION

With this framework in mind, the court will address the specific theories of damages that are in contention.

**(1)   Smith's tax liability resulting from the fraud**

There are two problematic issues with respect to Smith's claim to $213,000 in potential tax liability for the 2006 forgiveness by Fremont of debt on the underlying mortgage for the Dorchester property that Smith signed. First, if Century 21 is (severally or jointly) liable for a tax payment, the real party in interest is not Smith, but the United States Treasury (unless Smith can show that he had already paid the tax, which is extremely doubtful).

Second, there is no real evidence produced by Smith that the Internal Revenue Service (IRS) has assessed a tax liability at all (either by virtue of Smith filing an accurate tax return listing his cancellation of indebtedness income and corresponding tax liability owed, or by virtue of an addition to tax assessed by the IRS on examination). All that can be deduced from the documents provided to the court by counsel at the pretrial conference is that a 1099-C Cancellation of Debt Form was generated for Smith by Fremont listing Smith's cancellation of indebtedness income at

$336,140.00, and that this figure was included by the IRS on a "Wage and Income Transcript" generated by the IRS at the request of Smith's attorneys.

The documents also include an "Account Transcript" for tax year 2006 for Smith. The Account Transcript provides no further information other than that Smith did not timely file a tax return for 2006, and that on April 7, 2008, the IRS recorded the filing of a tax return for that year (though it is unclear whether Smith filed a late return or whether this entry reflects a "substitute for return" assessment by the IRS). Moreover, the Account Transcript states that, as of May 17, 2010, Smith's balance for tax year 2006 was $0.00. Because there is no evidence of an actual or threatened tax assessment, or of any payment of taxes by Smith on the debt forgiveness, the court proposes to exclude all evidence of a "tax liability."[4]

**Lost Rents**

Century 21 cannot be held liable for any rents Smith could have potentially collected on the properties as the jury in the first trial of this case found for Century 21 on the issue of whether it "breached an agreement to manage and/or sell the Dighton and/or West Cottage Street

---

[4] This disposes of any issue regarding the testimony of Timothy Mahoney (Smith's proposed tax expert), even if the court were inclined to allow the late supplementation of the witness list.

properties." Dkt. #448, at 5. The First Circuit left this aspect of the verdict undisturbed, and, as such, this court under the law of the case has no authority to revisit it.

### (2)   Hedonic Damages

The hedonic damages theory put forward by Smith at the first trial was rejected by the First Circuit on appeal and is, in any event, precluded (with respect to Century 21) by the economic loss rule enforced under Massachusetts law. *See Garweth Corp. v. Boston Edison Co.*, 415 Mass. 303, 305 (1993).

### (3)   Contract Release Fees

In each of the two transactions, Jenkins received a "contract release fee," which was generated from the inflation of the price of the properties that Smith unknowingly purchased. The inflation, Smith argues, was a direct result of the actions of Century 21, and occurred with Century 21's knowledge. Even if this is the case, there are three problems with Smith's claim to the value of the fees. First, viewed from the perspective of "out of pocket loss," there is no evidence that Smith personally paid the contract release fees or that he was personally harmed by their payment. Second, the parties that are actually out of pocket for the inflation of the value of the

properties are the mortgage lenders, and not Smith. And third, under a disgorgement theory, there is no allegation that Century 21 profited from the contract release fees.

### (4) Ill-gotten gains of Century 21

To the extent that these can be proved (Smith's proffer is that Adamo may testify to kickbacks paid to Century 21), they are admissible and recoverable under a disgorgement theory.

### (5) Bills/expenses Smith paid in connection with the fraud

This evidence, including the payment of a water bill to the city of Boston for $500 on the Dorchester property, is admissible.

### (6) Credit Expectancy Loss

This theory of damages was rejected by the First Circuit as a matter of law and fact, the Court noting that "there was no evidence that Smith tried to or had the intention to borrow" anything close to the amounts that the expert witness, Dr. Smith, had used for purposes of his testimony. *Smith*, 732 F.3d at 68. Smith's only testimony on the point was "that he 'applied for credit cards, and they wouldn't give it to me,'" *Id.* at n. 5. This theory of damages is therefore precluded.

## (5) Value of lost time as a direct result of the fraud or spent in reliance on fraud

The First Circuit left open the possibility that Smith could be compensated for the time he spent dealing with the consequences of the fraud. *Id.* at 68.[5] The court is inclined to allow Smith to testify to the amount of time he spent dealing with the consequences of the fraud and breach of fiduciary duty, including phone calls from lenders, attempts to contact the parties he believed were "looking out for him" in the transaction, and personal endeavors to rectify the mortgage mess.

### ORDER

For the foregoing reasons, defendant's *motion in limine* to preclude Evidence Concerning Types of Damages is <u>GRANTED</u> in-part and <u>DENIED</u> in-part.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE

---

[5] While the First Circuit was assessing the issue of "loss of time" for conformity with Rule 702, because it was evaluating the admissibility of Dr. Smith's testimony, this does not preclude the admissibility of such a theory without expert testimony if Smith can prove with reasonable certainty the amount of hours he spent dealing with the fraud and can put forth a quantification of such time based on how much he is paid for the work that he otherwise was performing as a trash collector.