UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-12067-RGS

ROBERT SMITH

v.

RKELLEY-LAW, P.C.

September 15, 2014

STEARNS, J.

Plaintiff Robert Smith and defendant RKelley-Law, P.C., have each brought motions for summary judgment. The sole issue to be decided on remand is the question of RKelley-Law's vicarious liability for the conduct of its attorney-employee, Louis Bertucci. In deciding this issue, the court is bound by the second branch of the law-of-the-case doctrine, which "stringently precludes a lower court from contravening the rulings of a higher court made at an earlier stage of the same controversy." *Conley v. United States*, 323 F.3d 7, 12 (1st Cir. 2003) (en banc).

While determining that "the district court correctly entered judgment in [Robert] Kelley's favor," the First Circuit concluded that "[s]ufficient evidence was presented to warrant a finding that the firm was vicariously liable for Bertucci's fraud." *See Smith v. Jenkins,* 732 F.3d 51, 72 (1st Cir.

2013).[1]  Specifically, the Court offered the following guidance on the issue of vicarious liability.

> Under Massachusetts law, an employer may be held vicariously liable for an intentional tort committed by an agent or employee within the scope of the employment. *Worcester Ins. Co. v. Fells Acres Day Sch., Inc.,* 408 Mass. 393, 558 N.E.2d 958, 967 (1990). "[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer." *Wang Labs., Inc. v. Bus. Incentives, Inc.,* 398 Mass. 854, 501 N.E.2d 1163, 1166 (1986) (internal citations omitted).
>
> **The evidence would have permitted a jury to find that all three elements were satisfied**: that Bertucci's acts as the closing agent were within the purview of his job, that both closings took place at the RKelley–Law office during regular business hours, and that Bertucci's participation in the fraudulent closings was motivated, at least in part, by a desire to serve RKelley–Law's interests (the firm received fees as the closing agent on both transactions).

*Id.* at 72-73 (emphasis added).

An examination of the statements of undisputed facts offered in support of the parties' cross-motions makes clear that the three elements of the "scope of employment" test articulated by the First Circuit are

---

[1] On appeal, Smith also argued that the question of Attorney Robert Kelley's personal liability should have been submitted to the jury. The First Circuit rejected this argument, noting that "Kelley's signature on a couple of forms is simply not enough to show that Kelley made false statements to Smith upon which Smith relied to his detriment." *Id.* at 72.

undisputed in any material respect, and no rational trier of fact could find otherwise.

## UNDISPUTED FACTS

The facts related to Bertucci's participation in the fraud against Smith and his employment at RKelley-Law are either affirmatively admitted by RKelley-Law,[2] or RKelley-Law has failed to respond to assertions of fact set out in Smith's 56.1 statement.[3]

---

[2] *See generally* Def.'s Mem., Dkt. #635; Def.'s Stmt. of Facts, Dkt. #636; *see also* Tr. Trans. Day 7, 47:8-61:4 (Testimony of Robert E. Kelley, Esq.).

[3] *See* Dkt. #643. While RKelley-Law, P.C. filed its motion for summary judgment along with a statement of facts, in accordance with L.R. 56.1, s*ee* Dkt. #636, RKelley failed to file any opposition papers responding to Smith's subsequent cross-motion for summary judgment and responsive statement of facts. (Smith did file an opposition to RKelley-Law's motion and filed a direct response to each of RKelley-Law's asserted facts). While the court will construe RKelley-Law's initial motion and memorandum as an "opposition" to Smith's motion for procedural purposes, any material facts of record set forth in Smith's 56.1 statement "will be deemed for purposes of the motion to be admitted." *See* L.R. 56.1 ("Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. . . . Material facts of record set forth in the [56.1 statement] will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

3

## *Job Purview*

RKelley-Law, P.C. is a professional corporation that employed Bertucci as a full-time associate during both of the real estate closings at issue. Bertucci worked for RKelley-Law from the time he passed the bar exam in 2001 until August of 2005, when he left RKelley-Law to start his own law practice. RKelley-Law has acknowledged that conducting closings on behalf of the firm was among Bertucci's duties as an associate, and that Bertucci performed the majority of the firm's closings during the time period at issue, while RKelley-Law earned a fee for each closing. Tr. Trans. Day 7 (Kelley), 47:19-48:3. Real estate closings on behalf of mortgage lenders remained part of the practice at RKelley-Law through the trial of this case in 2010. *Id.* at 58:17-23. Until his departure, Bertucci was "a paid W-2 employee" of the firm. *Id.* at 48:9-12. Bertucci testified that he closed roughly between sixty to eighty transactions per month and ten to fifteen transactions with Dwight Jenkins while he was employed at RKelley-Law. *See* Tr. Trans. Day 6 (Bertucci), 177:14-20; Tr. Trans. Day 7 (Bertucci), 11:6-9.

Given the parties' statements of fact and the testimony of Kelley and Bertucci at the initial trial, it is clear that Bertucci's performance of the

functions of a "closing agent" was "the kind of conduct he was employed to perform."

Nevertheless, RKelley-Law asserts that "[t]he indisputable record here is devoid of facts showing that Kelley Law gave express or implied authority to Bertucci to close loans involving straw buyers . . . . or [] to engender the firm into a mortgage fraud scheme." Def.'s Mem. at 8. However, "[t]his argument misapprehends the test for scope of employment." *McIntyre v. United States,* 447 F. Supp. 2d 54, 110 (D. Mass. 2006), *aff'd and remanded sub nom., McIntyre ex rel. Estate of McIntyre v. United States*, 545 F.3d 27 (1st Cir. 2008) ("Taken to its logical conclusion, the argument [] is that if the conduct is wrongful, [] it is beyond the [employee's] scope of employment, because the employee was not hired to engage in wrongful conduct."). The *McIntyre* court aptly pointed out that the tautology inherent to the argument would make certain vicarious liability laws (in the case of *McIntyre,* the application of those laws to the government via the FTCA) "entirely pointless." *Id.*

### *Time and Place*

RKelley has acknowledged that the closing meetings at which Bertucci presided all took place at RKelley-Law during regular business hours, and that they constituted Bertucci's *only* interactions with Smith.

5

Def.'s Stmt. of Facts, ¶¶ 2 & 4. (RKelley also admitted that the closing meetings were "a necessary part of the ruse to [induce financing]" Def.'s Mem. at 8-9). Thus, any actions of Bertucci for which the jury could have possibly found him liable for fraud necessarily occurred "within the authorized limits of time and space" (at the Law Offices of RKelley-Law, during regular employment hours). The fact that "[t]he mortgage fraud was perpetrated almost exclusively outside the offices of Kelley Law," Def.'s Mem. at 8, is therefore irrelevant to the question of whether RKelley-Law is vicariously responsible for the actions of *Bertucci*. The subsequent events that RKelley-Law points to also bear no relationship to the question of vicarious liability (namely that Bertucci left employment at RKelley-Law roughly six months after the transactions to start his own firm, and that Smith showed up at the Re/Max office after defaulting on the loans and did not subsequently contact RKelley-Law). As noted, it is undisputed that both property closings took place at the RKelley-Law offices during daytime business hours, and thus the second element of the three-prong test is satisfied.

### *RKelley-Law's Interests*

The only question left, therefore, is whether Bertucci's participation in the closings was motivated, at least in part, by a desire to serve his

employer's interests.  Bertucci and Robert Kelley testified at trial that the firm received a fee when a property closed, and Bertucci himself then received a portion of those fees, while RKelley-Law (and therefore Bertucci) was only paid if the transaction actually closed.  RKelley-Law did receive compensation for the Dighton and Boston property closings.  Additionally, Robert Kelley and RKelley-Law are identified as the closing agents for both properties, and Bertucci (and Robert Kelley) signed the closing documents on behalf of "RKelley-Law."  *See* Closing Docs., Dkts. #643-11, #643-12, #643-13.

Certainly Bertucci may have also been motivated by any number of other factors, including personal gain and career enhancement, but only "[i]f an employee 'acts from purely personal motives . . . *in no way connected with the employer's interests*, [is] he [] considered in the ordinary case to have departed from his employment, and the master is not liable." *Pinshaw v. Metro. Dist. Comm'n*, 402 Mass. 687, 694-95 (1988) (emphasis added), quoting W. Prosser & W. Keeton, Torts 506 (5th ed. 1984); *see also Operation Rescue Nat'l v. United States,* 975 F. Supp 92, 109 (quoting same).

RKelley-Law additionally argues that "[t]he indisputable record here is devoid of facts showing that Kelley Law gave express or implied authority

7

to Bertucci to close loans involving straw buyers, which was to serve the business interests of the firm." Def.'s Mem. at 8. This may be true, insofar as it goes, but, again, the argument fails to address the First Circuit's clear enunciation of the three prongs of the scope of employment test. *See Smith* at 72-73. *See also McIntyre ex rel. Estate of McIntyre v. United States*, 545 F.3d 27, 47 (1st Cir. 2008) (noting that a finding of vicarious liability does not "suggest that such an outcome was desired or even contemplated by [the employer]" nor is it "a judgment that the [employer's] interests were *in fact* advanced" by the conduct) (emphasis added).[4]

No reasonable jury could find that Bertucci was not at least *partially* motivated by a desire to receive commissions from the firm's fees, which necessarily incorporates a desire to generate fees for the firm. *Wang Labs,* 398 Mass. at 859-860 ("The fact that the predominant motive of the agent is to benefit himself does not prevent the act from coming within the scope

---

[4] It will be remembered that the First Circuit upheld the dismissal of any direct liability claims against Robert Kelley because there was no allegation that he personally ever dealt with Smith, and thus whether or not Smith ever met with Kelley is irrelevant to the issue of vicarious (employer) liability. The same is true with respect to RKelley-Law's assertion that after Smith defaulted on the loans, "Smith appeared at the Remax office for help, not at RKelley-Law, P.C." Def.'s Mem. at 3. This fact is irrelevant to whether or not Bertucci's participation in the closings in this case was within the scope of his employment at RKelley-Law.

of employment as long as the act is otherwise within the purview of his authority.").

Because the court finds the absence of any material dispute as to the three elements of vicarious liability, RKelley-Law is liable for the harm that resulted from Bertucci's fraud and his violations of Mass. Gen. Laws ch. 93A.

## DAMAGES

Bertucci was found liable for damages in the amount of $25,000 for fraud, and $185,000 for Chapter 93A violations. Under general principles of vicarious liability, an employer is legally responsible for the harm caused by its agent. The parties have filed briefs on damages for this case, and the court will schedule an oral argument regarding the question of the extent of damages attributable to RKelley-Law.[5]

---

[5] While the principle of vicarious liability is "based on the concept that a corporation may 'be held both civilly and criminally responsible . . . for actionable wrongs committed by its responsible officers,' . . . includ[ing] liability for unfair and deceptive trade practices committed in violation of [Chapter 93A]," *Grand Pac. Fin. Corp. v. Brauer,* 57 Mass. App. Ct. 407, 420 (2003), quoting *Beaupre v. Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 494 (2000), the court notes that the multiple damages provision of 93A is "designed to impose a penalty that varies with the culpability of the defendant." *Kansallis Fin. Ltd. v. Fern,* 421 Mass. 659, 675 (1996), citing *Int'l Fid. Ins. Co. v. Wilson*, 387 Mass. 841, 856 (1983). It is thus not clear that RKelley-Law would be liable, jointly or severally, for the full extent of the Chapter 93A damages found against Bertucci.

ORDER

For the foregoing reasons, the clerk will enter judgment against RKelley-Law on the issue of vicarious liability and will schedule a hearing on the assessment of damages.

SO ORDERED.

/s/ Richard G. Stearns             
UNITED STATES DISTRICT JUDGE